**Below is an Opinion of the Court.**

*Elizabeth L Perris*
—————————————————
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In Re:                    )   Bankruptcy Case
                         )   No. 04-37154-elp11
ROMAN CATHOLIC ARCHBISHOP OF   )
PORTLAND IN OREGON, AND SUCCESSORS, )
A CORPORATION SOLE, dba the      )   AMENDED MEMORANDUM OPINION RE
ARCHDIOCESE OF PORTLAND IN OREGON, )   ESTIMATION AND PLAN CONFIRMATION
                         )   ISSUES
              Debtor.     )

     The court held a hearing on February 14, 2006 on various motions and

other matters preliminary to consideration of debtor Roman Catholic

Archbishop of Portland's (debtor) chapter 11[1] plan of reorganization.

Having read the submissions of the parties and heard oral argument, it

appears that there are two major matters presented at this point in the

confirmation process: issues relating to estimation of certain claims and

the issue of whether debtor's plan could be confirmed as a matter of law

in light of the fact that it categorically disallows punitive damages.

---

[1]     Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

Page 1 -   AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
           ISSUES

1. **Estimation and temporary allowance of claims**

    A. **Unresolved present child sex abuse tort claims**[2]

        (i) **Purpose of the estimation/temporary allowance**

A bankruptcy claim may be estimated or temporarily allowed in an estimated amount for a number of different purposes in a chapter 11 case. Currently at issue in this case is estimation or temporary allowance of claims for purposes of voting upon and resolving issues related to confirmation of debtor's proposed plan of reorganization. The parties disagree about whether the debtor also seeks estimation for purposes of distribution on the claims.

Debtor says that it seeks estimation of all unresolved present child sex abuse tort claims "for temporary allowance for purposes of voting and confirmation" of debtor's chapter 11 plan. Debtor's Motion to Estimate Unresolved Present Child Sex Abuse Tort Claims at 1. Various parties, including the Tort Claimants Committee (TCC) and the Future Claims Representative (FCR), object, arguing that debtor is actually seeking estimation for purposes of distribution, which is beyond the jurisdiction of this court.

Bankruptcy Code § 502 governs allowance of claims in a bankruptcy case. Section 502(c) provides, as relevant, that the court shall estimate "for purpose of allowance" "any contingent or unliquidated

_____

    [2] In its Motion to Estimate Unresolved Present Child Sex Abuse Tort Claims, debtor defines "present child sex abuse tort claims" as "all claims based upon allegations of child sex abuse listed in the Debtor's schedules or for which the holder thereof has timely filed his or her own individual Proof of Claim by April 29, 2005 (the 'Bar Date')." Debtor's Motion to Estimate Unresolved Present Child Sex Abuse Tort Claims at 1.

Page 2 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
        ISSUES

claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]" § 502(c)(1).  When actual liquidation of claims would unduly delay administration of the bankruptcy estate, estimation is mandatory.  See, e.g., In re Bison Resources, Inc., 230 B.R. 611, 618 (Bankr. N.D. Okla. 1999)(no estimation required where liquidation would not unduly delay case administration); In re Apex Oil Co., 107 B.R. 189 (Bankr. E.D. Mo. 1989)(same).

The bankruptcy court has core jurisdiction to estimate claims for purposes of confirming a chapter 11 plan.  28 U.S.C. § 157(b)(2)(B).  However, "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" in a bankruptcy case is a non-core proceeding.  28 U.S.C. § 157(b)(2)(B).  Unless all parties consent, bankruptcy judges may not finally determine non-core matters; those matters must be determined by the federal district court.  28 U.S.C. § 157(b)(c).

Bankruptcy Rule 3018(a) allows the court to temporarily allow a claim for purposes of voting on a reorganization plan.

Debtor claims that it seeks estimation only for purposes of voting and confirmation of its plan; it argues that it does not seek estimation for distribution purposes, which it recognizes would be beyond the jurisdiction of this court.

The first question is whether the estimation of unresolved present child sex abuse claims debtor seeks is in fact for purposes of distribution rather than simply for purposes of voting and plan confirmation.  The answer requires a review of the provisions of debtor's

proposed plan of reorganization.

Debtor's proposed plan provides that debtor will form a corporation to act as a claims resolution facility (CRF). Debtor's liability on all present tort claims[3] will be transferred to the CRF, and debtor will be discharged from all liability for those claims.

Debtor will fund the CRF with an amount sufficient to pay in full the amount of the unresolved present tort claims, as estimated by this court. Actual liquidation of the claims will be through arbitration or trial. Once claims are liquidated, there will be periodic payments in full of the liquidated claims from the CRF. If the amount of the estimated claims exceeds the actual amount of the claims as liquidated, any excess funds in the CRF will be returned to debtor. The plan does not provide for any additional payment into the CRF if the estimate turns out to be too low. The CRF agreement does provide that, if funds are insufficient for a full distribution on the liquidated claims, the claimants will receive a pro rata share of whatever is left in the CRF. This means that, if the estimate of the value of the claims turns out to be too low, liquidated claims will not be paid in full, despite plan language that requires payment of the claims in full. It also means that the longer it takes a claimant to have his or her claim liquidated, the higher the risk that the funds remaining in the CRF will be insufficient

---

[3] Debtor's estimation motion deals with unresolved present child sex abuse claims, which are a subset of "present tort claims," which is a defined term in debtor's proposed plan. Debtor proposes to transfer all liability on all present tort claims, including present child sex abuse claims, to the CRF.

Page 4 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

1   to pay the liquidated claim in full.

2        In other words, debtor proposes to use the claim estimation process

3   to create a limited fund for payment of all present tort claims,

4   including child sex abuse claims, thereby limiting the liability debtor

5   will have on those claims.

6        Despite debtor's insistence that the estimation it seeks is for

7   confirmation and voting purposes only, I conclude that, in fact, the

8   estimation it seeks could also significantly affect distribution.

9            (ii) <u>Procedure re estimation for purposes of limiting</u>

10                <u>distribution on present tort claims</u>

11       Debtor is correct that the distribution to all of the tort claimants

12  will be based on actual liquidated amounts, not on the estimated amounts.

13  However, debtor's proposed plan provides that the estimation will provide

14  a cap on the amount of money that will be made available to pay the tort

15  claims.  This effectively limits the amount that will be distributed,

16  thereby causing the estimation of the claims to be for distribution

17  purposes, not merely for voting and confirmation purposes.

18       Debtor argues that the cap on liability is a red herring, based on

19  its argument that the estimation methodology it proposes for present

20  child sex abuse claims is so accurate as to remove any risk of error.

21  According to debtor, the estimation of those claims based on prepetition

22  settlements will be a "highly accurate" reflection of what the actual

23  present child sex abuse claims will be, and therefore any assertion that

24  the amount transferred to the CRF will be inadequate to pay the claims in

25  full is speculative.

26

Page 5 -   AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
           ISSUES

1    However, debtor acknowledges that none of the values of the
2   prepetition child sex abuse claims were based on trials, but only on
3   settlements.  Although I do not question that counsel for the tort
4   claimants who settled those claims are highly skilled and fulfilled their
5   ethical duty of representation for their clients, it is important for
6   estimation purposes to consider the value of the child sex abuse claims
7   as determined by a jury as well as the settlement value of claims, where
8   the claimants have a right to jury trial.  I do not find that debtor's
9   methodology of estimation would provide such a highly accurate indication
10  of the value of the claims as to make any concern about a cap on
11  liability "speculative."

12   Debtor's proposal to use estimation to cap the amount of the fund
13  available to pay all tort claimants is similar to that proposed in In re
14  Dow Corning Corp., 211 B.R. 545 (Bankr. E.D. Mich. 1997).  In that case,
15  the debtor proposed to deposit into a trust a certain amount for payment
16  of pending personal injury claims.  It sought estimation of the claims to
17  establish the feasibility of the plan.  As in this case, Dow Corning's
18  strategy behind its request for "estimation of the aggregate value of
19  tort claims is to limit the amount it will ultimately have to pay on
20  account of tort liability."  211 B.R. at 566-67.  The Michigan bankruptcy
21  court explained that Dow Corning "assumes that estimation will lead to a
22  discharge of all liability and that individual post-confirmation
23  liquidation can only be had against a trust fund established as part of a
24  plan of reorganization regardless of whether such liquidation proves that
25  the estimate was too low."  Id. at 567.

26

Page 6 -  AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
          ISSUES

In <u>Dow Corning</u>, the debtor's plan proposed to set aside funds to pay settlements and litigation of personal injury claims, which funds it believed would be sufficient to pay the claims in full.  However, if the debtor's estimate turned out to be too low, the claims would have to share the fund pro rata, and any unpaid portion would be discharged.

The court said:

> [A]llowing a bankruptcy judge to estimate the aggregate value of all claims for the apparently benign reason of determining feasibility of a plan of reorganization, when combined with the effects of 11 U.S.C. § 1141(d), can create the result that the estimation was actually for purposes of distribution as well.

<u>Id.</u> at 569.  The court pointed out that the claimants had a right to a jury trial, and said that, "if estimation for plan confirmation purposes results in <u>de facto</u> estimation for distribution purposes via the effects of the plan of reorganization and the discharge provisions of § 1141(d), a claimant's right to a jury trial for purposes of liquidating her claim becomes hollow."  <u>Id.</u>

Debtor here is attempting to do something similar to what Dow Corning tried to do.  It wants this court to estimate in the aggregate the amounts of the present child sex abuse claims,[4] for the purported purpose of confirmation and voting.  In fact, it intends to use the estimation, along with estimation of other present tort claims, to put an upper limit on the amount it will pay on all of the tort claims, while discharging any actual liability in excess of the estimated amount.  This court does not have jurisdiction to estimate personal injury tort claims

---

[4]    Debtor seeks a different methodology for estimation of the present child sex abuse claims than for estimation of other present tort claims.

Page 7 –  AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

for purposes of distribution, which is in effect what debtor asks this court to do.

Debtor argues that Dow Corning is distinguishable, because the court there did not have the prepetition settlement data that debtor has. Further, debtor argues, in Dow Corning, the debtor's plan was ultimately confirmed. See In re Dow Corning Corp., 244 B.R. 721 (Bankr. E.D. Mich. 1999), rev'd on other grounds, 255 B.R. 445 (E.D. Mich. 2000). My determination that the estimation debtor seeks is for purposes of distribution and therefore must be done by the district court, not the bankruptcy court, is not based on the adequacy of the data for estimating the claims. Also, the court's ultimate confirmation of a different, jointly proposed chapter 11 plan in Dow Corning does not affect the Dow Corning court's earlier holding on estimation for purposes of distribution.

Because I conclude that the estimation debtor seeks is at least in part for the purpose of distribution, I cannot make that estimation. If debtor decides that it wants to proceed with a plan of reorganization that depends on an aggregate estimation of present child sex abuse claims for purposes of capping the fund from which tort claims will be paid, I will at the appropriate time prepare a report and recommendation to the district court.

In an effort to advance the confirmation process, I will comment on some of the issues briefed by the parties regarding whether estimation for distribution purposes should be recommended, and if so, what methodology should be employed.

Page 8 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
         ISSUES

Estimation is required only if liquidation would unduly delay administration of the bankruptcy estate. "Undue delay" is not defined in the Bankruptcy Code. "[I]t is a problem 'whose solution ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question.' 3 <u>Collier on Bankruptcy</u> ¶ 502.03, p. 502-73 (15th ed. 1991)." <u>In re Interco Inc.</u>, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992).

Both debtor and the TCC have filed plans of reorganization. Neither plan provides a simple path to payment of all tort claims, including child sex abuse claims, as they are allowed. Debtor's plan requires estimation of all tort claims before confirmation and before a fund is created to pay them. The fund is limited, and claims are paid in full as they are allowed. This raises the possibility that tort claims that are allowed early will be paid in full, while those allowed later will be paid only partially or not paid at all.

The TCC's plan is conceptually simpler, but more complex to implement. It creates a trust to pay claims and requires debtor to transfer $42 million cash to the trust plus such additional amounts as are necessary to pay claims, including punitive damages, once they are liquidated. The trustee of this trust is granted a trust deed on all debtor's real estate, including all churches and schools, which the trustee may foreclose if debtor fails to make deposits as required. The TCC's plan glosses over the facts that there are significant legal issues pending regarding the extent of the property of the estate; it is likely

to take several years before the litigation over property of the estate is resolved; and if the litigation is resolved adversely to the TCC's position, there may not be enough money to pay all claims. Nonetheless, the TCC's plan proposes to pay liquidated punitive damage claims before all compensatory damage claims have been liquidated and paid. In a chapter 7 liquidation, nothing would be paid on punitive damages unless compensatory damages were paid in full. § 726(a).

If debtor pursues a plan that includes a cap on liability based on estimation of the tort claims, I may recommend to the district court that the amount of the present tort claims, including present child sex abuse claims, be estimated for purposes of considering debtor's plan. This case has been pending for more than nineteen months. Estimation would avoid undue delay in moving the case forward toward confirmation.

According to debtor's Motion to Estimate Unresolved Present Child Sex Abuse Tort Claims, there are approximately 129 unliquidated present child sex abuse claims in varying stages of liquidation. A significant number of those claims are at the very beginning of the process. Discovery in connection with the claims has been slow and complex, in part because most of the claims are decades old.

Estimation of claims will be useful under both proposed plans. Under either plan, the amount of the individual and total unliquidated claims will need to be estimated before there is any distribution, in order to assure that no claimant is paid more than his or her pro rata share of the available funds. With respect to calculating appropriate distributions under the TCC's plan, the universe of available funds will

need to be limited to property of the estate. Given the unique issues presented in the property of the estate adversary proceeding, the potentially serious impact on church operations if churches, schools, or certain other assets are liquidated before the conclusion of the litigation (including all appeals), liquidation or use of assets that are the subject of the litigation may be stayed until final resolution of the appeals.

I agree with the FCR that the type of proceeding necessary for estimation varies depending on the purpose for which estimation is being used. A claimant's right to a remedy for tortious behavior could be substantially and irreversibly affected by the estimation, where estimation is being used to establish a cap on the fund that will be available to pay liquidated claims, and that fund could prove to be inadequate if the estimate is too low. In that circumstance, due process likely requires an individualized estimation of claims, as opposed to the aggregate estimation process debtor proposes for present child sex abuse claims, which divides the claims into a few groups and uses the same estimated amount for each claim in the given group.

I do not agree with the TCC that this necessarily requires mini-trials for each claim. Before recommending a methodology to the district court, I would explore with the parties methods for individualizing the estimation process that would not require mini-trials for every claim but that would address the lack of pertinent Oregon jury verdicts. For example, one possibility would be for the court to appoint an expert pursuant to FRE 706 who would (1) develop a matrix for both settlement

value and jury trial value of claims that is based on the relative severity of the conduct, the extent of the damages, and the issues affecting liability (such as the availability of witnesses and statute of limitations issues), and (2) develop a form questionnaire that would have to be completed by pertinent parties under penalty of perjury that could be used to determine where on the matrix the claimant's claim fits. Because of the purpose for which claims are being estimated, I would likely recommend to the district court that estimation of the claims for compensatory damages should err on the high side of the probable range, to assure an adequate fund for payment of liquidated claims.

Another possibility would be to conduct a few advisory summary jury trials such as are used in alternative dispute resolution, to obtain some indication of how Oregon juries might evaluate these claims.

At this point, it is premature to choose a method of estimation. That issue will be left to a time when the court and the parties can explore the options.

(iii) <u>Estimation for purposes of voting and plan confirmation</u>

Debtor also seeks estimation of the present child sex abuse claims for purposes of voting on the plan and plan confirmation issues under § 1129. There does not seem to be opposition to estimation for voting purposes. The TCC argues that these claims should not be estimated for plan confirmation purposes, because debtor cannot show that liquidation of the claims would unduly delay the administration of the case. The TCC's argument is based on its view that the estate is solvent, so debtor will be required to pay all claims in full, which requires liquidation.

Page 12 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
ISSUES

I conclude that estimation of present tort claims, including the present child sex abuse claims, is appropriate in order to avoid undue delay in determining confirmation of debtor's plan.  Liquidation of the claims is not necessary for purposes of determining confirmation issues under § 1129.  Confirmation issues such as the best interests test require a determination of the value of property of the estate and of the claims against the estate.  Requiring debtor to wait until all claims were liquidated to obtain a determination of these types of confirmation issues would be an undue delay.

The consequences of estimation for purposes of voting and confirmation issues only are much less drastic than of estimation for purposes of distribution.  Therefore, I think the methodology to be used for estimation could be different for these purposes.  Because the estimation of the claims of the claimants for these purposes will not affect distribution, the concern about an erroneous estimation is much less serious, and the procedure could be less exacting.

However, it makes no sense to engage in a dual system of estimation, one in this court for voting and confirmation purposes and the other in district court for distribution purposes.  Because estimation in district court will be necessary if debtor pursues a plan of reorganization that uses estimation of claims to provide a cap on the amount it will make available to pay tort claims, and in order to further judicial efficiency, I will defer to the district court's estimation of the claims for all purposes.  If debtor revises its plan to eliminate the use of estimation to cap distributions, debtor's proposed estimation methodology

may be satisfactory for purposes of estimation for purposes of voting and § 1129 confirmation determinations.

(iv) <u>Conclusion</u>

Debtor has indicated that it intends to file a modified plan. A further preliminary hearing on the motion to estimate will be set for a date that falls after the deadline for the debtor to file its modified plan, to determine whether debtor seeks district court estimation, to discuss the exact methodology to be used, and to schedule the deadlines for submissions and for further hearings.

B.  <u>Temporary allowance of claims</u>

A number of claimants filed motions for temporary allowance of claims for voting purposes, pursuant to Rule 3018. Those claims are included in the group of present child sex abuse claims that I have addressed with regard to debtor's motion to estimate. Therefore, I need not consider those motions further.

C.  <u>Estimation of other claims</u>

Debtor also filed a motion to estimate the claims of certain co-defendants (Order of Friar Servants of Mary, Redemptorist Society of Oregon, St. Mary's Home, Mt. Angel Abbey, Franciscan Friars of California, and Franciscan Friars of Oregon) at zero. I will take up this motion at the evidentiary hearing set on debtor's motion to estimate the present child sex abuse claims.

Debtor also filed a motion to estimate claims # 473, 474, and 475 (Nathan DuFresne, Paul DuFresne, and Deborah DuFresne) at $5,000 each. Those claimants' complaint seeks damages for intentional infliction of

Page 14 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
        ISSUES

emotional distress, fraud, breach of contract, civil conspiracy, negligence, and breach of fiduciary duty, arising from Nathan DuFresne's attendance at and expulsion from St. Thomas More School.  Although I indicated at the hearing on this motion that I was inclined to include Nathan DuFresne's claim with the group of unresolved present child sex abuse claimants, based on my further review of the complaint and the evidence submitted in support of and in opposition to the estimation motion, I do not think that including his claim with the child sex abuse claims is appropriate.

None of the claims are for damages arising from child sex abuse, nor would any of the allegations of the complaint or the evidence submitted to this court support a claim for child sex abuse.  Therefore, it is appropriate to consider the claims of these three claimants separately from the child sex abuse claims.

The parties have submitted evidence and argument about the value of these three claims.  At the hearing, counsel for the DuFresnes agreed to estimation of Paul and Deborah DuFresne's claims based on the evidentiary record currently before this court.  He did not agree to estimation of Nathan DuFresne's claim based on that record.  Therefore, estimation of Nathan DuFresne's claim will be set for hearing at the same time as the hearing on the estimation of the unresolved child sex abuse claims.  The procedure for that estimation will be as follows: the parties should submit to the court no less than 14 days before the date of the hearing

declarations or affidavits setting forth any direct testimony.[5] No less than seven days before the date of the hearing, the parties shall advise the court and opposing counsel whether they intend to cross-examine the declarants.

Although the parties do not address the issue, it appears that the claims of Paul and Deborah DuFresne include tort claims for which they have a right to jury trial. Under debtor's proposed plan, the estimated amount of present tort claims that would be used to cap the fund available to pay present tort claims would include the estimated amount of Mr. and Mrs. DuFresne's claims. Therefore, estimation of those claims presents the same issue as estimation of the present child sex abuse claims, in that estimation is being used for distribution purposes. That estimation must be done by the district court, and I should submit a report and recommendation.

Because the parties have submitted evidence about estimation, I conclude that I have sufficient information available to make a recommendation about the value of these claims.[6] Based on my review of the evidence and taking into consideration the argument of the parties, I would recommend that Paul and Deborah DuFresne's claims be estimated at $10,000 each. Despite the DuFresnes' and their counsel's insistence that

---

[5] Declarations submitted in connection with the present motion to estimate shall be considered part of the record and need not be resubmitted.

[6] If debtor's modified plan does not include a cap on liability based on estimation of tort claims, I will not need to make a report and recommendation to the district court, but instead can make the estimation myself.

Page 16 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
        ISSUES

the conduct of debtor, Father Johnston, and Mr. Murray was outrageous and breached contracts and fiduciary duties, the actual evidence provides little support for the claims. For example, the evidence claimants provided does not show that defendants' conduct was "an extraordinary transgression of the bounds of socially tolerable conduct," which is necessary to establish a claim for intentional infliction of emotional distress. See Sheets v. Knight, 308 Or. 220, 236 (1989)(setting out elements for claim of intentional infliction of emotional distress). Although the existence of a special relationship between the parties is relevant in determining whether the alleged conduct is outrageous, Rockhill v. Pollard, 259 Or. 54 (1971), the conduct of which there is proof in this case is unlikely to support a finding of outrageous conduct, even given the relationship between the parties as priest/school official and parents of a student. Thus, the value to be placed on those claims for purposes of voting and plan confirmation is much lower than the amount they seek in damages.

2. Plan confirmation issues

A. Disallowance of punitive damages

The primary preliminary plan confirmation issue[7] is whether debtor

_____

[7] There was also an issue as to whether debtor's plan could properly treat consortium claims as cumulative of the claims of the primary tort claimants, and provide that the consortium claims "shall be deemed released by the treatment afforded the Claims of the Primary Claimants under this Plan." Debtor's Plan of Reorganization ¶ 7.5.5.

"[A] claim for loss of consortium is based on injuries peculiar to the plaintiff that were the consequence of tortious injury suffered by the plaintiff's spouse." Shoemaker v. Mgmt. Recruiters Int'l, Inc., 125

(continued...)

Page 17 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

can categorically disallow all punitive damages claims. Debtor's plan provides that "[n]o Claims for punitive or exemplary damages will be Allowed to any Claimant." Debtor's Plan of Reorganization ¶ 7.5.6.

The objecting parties argue that the plan cannot as a matter of law categorically disallow punitive damages, based on the Supreme Court's decisions in <u>United States v. Noland</u>, 517 U.S. 535 (1996), and <u>United States v. Reorganized CF&I Fabricators of Utah, Inc.</u>, 518 U.S. 213 (1996). In those cases, the Supreme Court held that a bankruptcy court cannot categorically equitably subordinate claims for postpetition noncompensatory tax penalties (<u>Noland</u>), or for prepetition penalty claims (<u>CF&I</u>). The problem, according to the Court, was that the bankruptcy court's application of equitable subordination to the tax penalty claims occurred "at the level of policy choice at which Congress itself operated in drafting the Code." <u>Noland</u>, 517 U.S. at 543.

Debtor argues in its disclosure statement that disallowance of punitive damages is appropriate for three reasons: (1) an allowance of punitive damages would potentially result in the claimants receiving less than full payment of their compensatory damages; (2) under Oregon law, 60

[7](...continued)
Or. App. 568, 572 (1993). Although in some states consortium claims are derivative of the injured spouse, in Oregon, a cause of action for loss of consortium is "an independent action which stands on its own footing." <u>Wolff v. Du Puis</u>, 233 Or. 317, 319, 320 (1963), <u>overruled on other grounds in</u> <u>Bahler v. Fletcher</u>, 257 Or. 1 (1970); <u>Shoemaker</u>, 125 Or. App. at 572. Debtor has agreed to change its plan provision regarding consortium claims, apparently recognizing that there is no basis under the Bankruptcy Code for collapsing one person's loss of consortium claim into another person's claim for child sexual abuse, nor for categorically disallowing consortium claims. Therefore, I will not discuss consortium claims further.

Page 18 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
         ISSUES

percent of punitive damages are paid to the state, not to claimants, so there would be little economic benefit to claimants from allowing punitive damages; and (3) debtor has already taken reasonable steps to prevent further child abuse, so punitive damages would not serve as a deterrent to future misconduct, and would raise First Amendment concerns. Disclosure Statement Regarding Debtor's Plan of Reorganization at 29-30. In its response to the objecting parties' arguments, it says that punitive damages can be disallowed because (1) Oregon law does not support punitive damages against debtor under the circumstances of this case; (2) allowing punitive damages would potentially impair an equitable distribution, would not be fair and equitable, and would frustrate the goals of a chapter 11 reorganization, and (3) allowing punitive damages would raise constitutional issues.

A creditor's entitlements under non-bankruptcy law are enforced in bankruptcy, unless they are modified by some provision of the Bankruptcy Code. In re A.G. Fin. Serv. Ctr., Inc., 395 F.3d 410, 413 (7th Cir. 2005)(citing Butner v. United States, 440 U.S. 48 (1979)). "Bankruptcy courts lack authority to alter rules of state law, or depart from those in the Code, to implement their own views of wise policy." Id. at 413-414. If a claimant can prove an entitlement to punitive damages under state law, that entitlement cannot be affected by bankruptcy except as allowed in the Bankruptcy Code.

Allowance of claims is governed by § 502(b), which provides that the court shall allow a claim except as provided in that subsection. Nothing in § 502(b) provides for disallowance of punitive damages. Therefore,

Page 19 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

punitive damages may not be categorically disallowed under § 502.

Section 105(a) provides, in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The court's exercise of that equitable power must be exercised within the confines of the Bankruptcy Code; it cannot be used to vary the provisions of the Code.  E.g., In re Saxman, 325 F.3d 1168, 1174-75 (9th Cir. 2003); In re Munoz, 287 B.R. 546, 552 n.5 (9th Cir. BAP 2002).

Nothing in chapter 11 deals specifically with punitive damages. However, in order to meet the best interests test for confirmation set out in § 1129(a)(7), the plan must provide that an impaired class receive at least as much as the class would receive in a chapter 7 liquidation. Debtor's plan classifies the tort claims, but excludes from classification any claim for punitive damages, which claims will be disallowed under the plan.  Debtor's Plan of Reorganization at ¶¶ 6.4, 6.5.  Thus, under the plan, claims for punitive damages would receive nothing.

In a liquidation under chapter 7, however, punitive damages are given fourth priority, and are paid before a debtor can retain any portion of the estate.  § 726(a)(4), (6).  Thus, to the extent a debtor would have a solvent chapter 7 estate that would have assets available to pay punitive damages after other unsecured claims are paid, categorical disallowance of punitive damages claims would violate the best interests test.

I agree with Judge Easterbrook, who said that "the Supreme Court has

Page 20 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
        ISSUES

rejected the contention that tax penalties may be disfavored categorically, strongly implying that case-by-case administration of the Code's authority for equitable subordination is the right way to deal with all punitive financial claims." A.G. Fin. Serv. Ctr., Inc., 395 F.3d at 414 (citation omitted). His conclusion was that, "if state law allows punitive awards against insolvent parties, there is no federal bar -- though whether a punitive award should be subordinated to other claims is open to independent consideration under the terms of the Bankruptcy Code." Id. So too with respect to punitive damages of a debtor whose estate would be solvent in a chapter 7 case.[8]

Debtor's arguments for disallowance do not withstand scrutiny. First, there is no indication that allowance of punitive damages claims must affect payment of the compensatory damages on the tort claims. Given the different legal treatment of the two types of claims in chapter 7, there is no reason why the plan could not pay compensatory claims in full before paying any punitive damages claims. It is the structure debtor has chosen, not the law, that results in the possibility that payment of punitive damages might result in payment of less than the full

---

[8] Debtor cites a number of cases for the proposition that courts have recognized the power of the bankruptcy court to disallow punitive damages in chapter 11. All but one of those cases are pre-Noland, and so are of limited if any use. The one case cited that follows Noland is In re Dow Corning Corp., 244 B.R. 721 (Bankr. E.D. Mich. 1999). In that case, the court disallowed punitive damages because the evidence on the best interests question established that punitive damages would not have been paid by a chapter 7 trustee. Therefore, the chapter 11 plan did not need to provide for punitive damages. The determination was very fact-specific, and so is not helpful where the debtor has not asserted that, in a chapter 7 liquidation, no funds would be available to pay punitive damages.

Page 21 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

amount of allowed compensatory damage claims.[9]

Second, although debtor makes its proposal so that it does not need to obtain a determination of the extent of property of the estate, it does not propose to compromise that dispute as part of its plan. Debtor's proposal to pay no punitive damages is not premised on an assertion that there would be insufficient assets available to pay such damage claims in a chapter 7 case.

Further, the fact that 60 percent of any punitive damage award must be paid to the state of Oregon, ORS 31.735(1)(b), does not support disallowance of punitive damages across the board. Debtor argues that, because claimants would receive only approximately 10 percent of any punitive damage award (after payment to the state, to the claimant's attorney, and taxes), there would be little or no economic benefit of such damages to the claimants. The purpose of punitive damages is not to provide an economic benefit to claimants, however; the purpose of punitive damages is to deter and punish the wrong-doer. Honeywell v. Sterling Furniture Co., 310 Or. 206, 210 (1990). Any economic benefit to the claimants is not relevant to those purposes.

Debtor's constitutional argument is more difficult to understand. It seems to argue that the requirement that a percentage of any punitive damages award would be paid to the state of Oregon would result in excessive entanglement of government with religion, in violation of the First Amendment. It does not explain why that is so; presumably state

---

[9] The TCC's plan suffers from the same defect, as it requires payment of compensatory and punitive damages claims as allowed.

Page 22 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

government may enforce its laws against religious institutions, including possibly obtaining judgments against such institutions, without necessarily becoming excessively entangled in religion.

Debtor further argues that there is some undefined constitutional impediment to imposing punitive damages on religious institutions for what it calls "historical acts." It does not explain, and I do not see, what the constitutional issue is. If debtor establishes at trial that any conduct supporting an award of punitive damages is purely historical and has been remedied, it can make the argument to the jury and the trial court that punitive damages are not required to deter future misconduct. That is, however, a question for trial on the claims, not for plan confirmation.

Debtor also argues that the liquidation of churches and religious schools for the purpose of paying punitive damages would raise problems under the Religious Freedom Restoration Act (RFRA). This is not, of course, a constitutional issue. In any event, the fact that schools and churches might be sold to pay punitive damages creates no greater RFRA issues than the liquidation of church and school property for purposes of paying compensatory damages. Further, the determination of whether RFRA would in fact be implicated by sale of Archdiocesan church and school property is still pending, as set out in my ruling on the TCC's motions for partial summary judgment in the property of the estate adversary proceeding.

Debtor argues that it has taken all reasonable steps to prevent further child abuse, and that imposition of punitive damages would punish

parishioners, who will end up funding the plan, rather than debtor.
Those arguments do not provide a legal basis under the Bankruptcy Code
for categorical disallowance of punitive damages; they are for the jury
that is determining punitive damages.[10]

Debtor next argues that punitive damages can be disallowed under
§ 502(b)(1), which provides that a claim shall be allowed except to the
extent the "claim is unenforceable against the debtor and property of the
debtor, under any agreement or applicable law for a reason other than
because such claim is contingent or unmatured[.]"  According to debtor,
punitive damages should be disallowed through the plan, because punitive
damages are not necessary to deter further misconduct or punish debtor,
punitive damages are not available on the claims asserted against debtor,
and imposition of punitive damages would raise constitutional questions.

Section 502(b)(1) makes available to a trustee "any defense to a
claim that might have been available to the debtor."  4 Lawrence P. King,
Collier on Bankruptcy ¶ 502.03[2][b] (15th ed. Rev. 2003).  Plan
confirmation is not the time for the court to rule on disallowance of
individual claims under § 502(b); that determination should be made in
the context of objections to claims.  And, by statute, this court does
not have the authority to liquidate personal injury tort claims for
distribution purposes.  28 U.S.C. § 157(b)(2)(B).

Debtor next argues that punitive damages are not available for the
claims made against it by the tort claimants.  First, it asserts that

---

[10]    The same arguments may be pertinent to estimation of punitive
damages, if such estimation occurs.

Page 24 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
         ISSUES

there can be no punitive damages for the claims of negligent supervision. Under Oregon law, punitive damages are not awardable for simple negligence. <u>Wilson v. Tobiassen</u>, 97 Or. App. 527 (1989). Gross negligence, however, may be sufficient to support an award of punitive damages. <u>Andor v. United Air Lines</u>, 303 Or. 505 (1987). I do not have sufficient information about the claims to know whether any of them assert gross negligence.

Debtor also argues that there can be no award of punitive damages against it under the theory of respondeat superior, because, under Oregon law, a principal is liable for punitive damages for the acts of its agents only if (1) the agents were acting within the scope of their employment or, (2) if the agents were acting outside the scope of their employment, the principal knew of and ratified the agent's misconduct.

Oregon law allows awards of punitive damages against employers held vicariously liable for the intentional torts of their employees if (1) the employee was acting within the scope of employment, <u>Stroud v. Denny's Restaurant, Inc.</u>, 271 Or. 430, 437 (1975), or (2) if the employee was not acting within the scope of employment, the employer "was aware of, approved of, ratified, or countenanced" the employee's misconduct. <u>Badger v. Paulson Inv. Co., Inc.</u>, 311 Or. 14, 28 (1991).

In <u>Fearing v. Bucher</u>, 328 Or. 367 (1999), the Oregon Supreme Court recognized that a priest's sexual assault on a plaintiff was outside the scope of the priest's employment. It held, however, that the employer, the Archdiocese of Portland, could nonetheless be vicariously liable for the priest's intentional act, "if acts that were within [the priest's]

scope of employment 'resulted in the acts which led to injury to [the] plaintiff.'" 328 Or. at 374. The court concluded that a jury could find that the acts of the priest in gaining the confidence of the plaintiff and providing the opportunity for the sexual assault were motivated by a desire to fulfill "his priestly duties" and so were within the scope of his employment. Id. at 375. If the jury found that the priest's "performance of his pastoral duties with respect to plaintiff and his family were a necessary precursor to the sexual abuse and that the assaults thus were a direct outgrowth of and were engendered by conduct that was within the scope of [his] employment," the Archdiocese could be held vicariously liable for the subsequent sexual assault. Id. at 377.

Under the law in this state, an employer can be held liable for punitive damages if it knew of or ratified the employee's behavior, even when that behavior was outside the scope of employment. Badger, 311 Or. at 28. Because there are allegations in these tort claims that debtor knew of the priests' behavior and did nothing to stop it, I cannot say that punitive damages would be unavailable as a matter of law. It is a matter that would have to go to the trier of fact.

Finally, debtor argues that, if punitive damages cannot be disallowed in full, the court must estimate those damages for confirmation purposes,[11] and for determining the amount that debtor must

---

[11] Nothing in this discussion should be construed as suggesting that debtor could not propose to compromise the property of the estate adversary proceeding as part of the plan of reorganization. If punitive damages claims were subordinated and if the finite sum available was insufficient to pay punitive damages, issues relating to punitive damages
(continued...)

Page 26 – AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION ISSUES

pay into a fund to cover those damages. The same reasoning applies to punitive damages as to compensatory damages: while this court can estimate claims for purposes of confirmation and voting, it is not appropriate for this court to estimate the claims for purposes of limiting the fund available to pay those claims. If debtor makes such a proposal, estimation will have to be referred to district court, after the parties present evidence necessary to allow this court to make a report and recommendation.

B.  Absolute priority rule

The TCC argues that the plan is unconfirmable, because it does not meet the absolute priority rule under the fair and equitable test of § 1129(b)(2). Debtor responds that the absolute priority rule does not apply, because debtor is a non-profit corporation, and the Archbishop does not have an equity interest in debtor's property that he will retain.

I will not resolve this issue at this time. Debtor's plan proposes to pay all claims in full. If it does that, the absolute priority rule will not be triggered. Further, the absolute priority rule will not apply if creditors vote to accept the plan. The issue is one for confirmation, and I will address application of the absolute priority rule if and when it becomes necessary to do so.

CONCLUSION

This court cannot estimate the unresolved tort claims, including

---

[11](...continued)
might be moot.

present child sex abuse claims, for purposes of establishing a cap on the fund to be made available to pay those claims.  If debtor pursues such estimation, this court will make a report and recommendation to the district court after further discussion with the parties about methodology and considering appropriate evidence.  If debtor does not pursue estimation for purposes of capping liability, this court can estimate the claims for purposes of voting and plan confirmation.

When and if the time comes to send claims estimation to the district court, this court will recommend that the claims of Paul and Deborah DuFresne be estimated at $10,000 each.  If debtor decides not to pursue district court estimation, debtor should submit an order for this court's signature estimating these claims at $10,000 each.

As a matter of law, debtor cannot obtain confirmation of a plan that categorically disallows punitive damages.

Ms. Ford shall serve a copy of this Memorandum Opinion on all persons who have requested special notice or have filed a motion for temporary allowance of their claim.

###

cc:  Susan Ford
     David Foraker
     Albert Kennedy
     Erin Olson
     Karl Mullen
     UST

Page 28 - AMENDED MEMORANDUM OPINION RE ESTIMATION AND PLAN CONFIRMATION
         ISSUES