Charles F. Hinkle, OSB No. 71083
cfhinkle@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone:  (503) 294-9266
Facsimile:  (503) 220-2480

Attorneys for Oregonian Publishing Company

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, and successors, a corporation sole, dba the ARCHDIOCESE OF PORTLAND IN OREGON,<br><br>Debtor. | No. 04-37154-elp11<br><br>MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS |

Oregonian Publishing Company, publisher of *The Oregonian*, a daily newspaper in Portland, and Ashbel Green, a reporter for *The Oregonian* (collectively, "Oregonian"), submit this memorandum in support of their motion for an order permitting them to intervene in this proceeding, for the purpose of seeking access to court hearings and documents. In particular, Oregonian is seeking an order allowing public access to the planned Estimation hearings now set

for March 12-16, 2007, or, in the event no such hearings take place, an order allowing public access to all documents on which the court will make the estimation required by Section 502(c) of the Bankruptcy Code.

### I. Statement of Facts

According to Claimant M.M.'s Motion to Open Estimation Proceedings, filed in this court on February 22, 2007, Estimation Hearings will be held in this case during the week of March 12-16, 2007. The hearings will be held pursuant to Bankruptcy Code 502(c), which provides in part that "[t]here shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; ***." It has been reported that settlement discussions have been held to resolve many of the claims against the debtor, and it is possible that one purpose of the Estimation hearings is to determine whether a settlement fund that has been proposed as part of the resolution of the debtor's bankruptcy proceedings will be adequate to compensate persons whose claims against the debtor have not been settled. It is also Oregonian's understanding that if Estimation Hearings are not held, the court will make the required estimation on the basis of documents already in the record.

### II. Oregonian Should Be Permitted to Intervene To Seek Access to Bankruptcy Court Proceedings and Documents.

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." *San Jose Mercury News v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999). Bankruptcy courts have a similar provision for permissive intervention: "In any case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr. P. 2018(a).

Page 2  -  MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

Even in the absence of a rule allowing intervention, "[u]nder the first amendment, the press and the public have a presumed right of access to court proceedings and documents." *Oregonian Pub. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462, 1464 (9th Cir. 1990), *cert. denied*, 501 U.S. 1210 (1991). Newspapers have been allowed to intervene in civil cases to assert that right of access in *Phillips ex rel. Estates of Byrd v. G.M. Corp.*, 307 F.3d 1206 (9th Cir. 2002) (reviewing trial court disclosure order that had been sought by intervenor *Los Angeles Times*); *Confederated Tribes of Siletz Indians v. Weyerhaeuser Co.*, 340 F. Supp.2d 1118, 1121 (D. Or. 2003) (court considered "letter-briefs" from *The Oregonian* and the *Register-Guard* "seeking 'access to exhibits that were received into evidence under seal during the trial in this case.'"); *United States v. State of Oregon*, Civ. No. 86-961-MA, 1991 WL 331673 at *1 (D. Or. 1991) (granting Oregonian's motion to intervene in Fairview litigation and granting its "motion to vacate all prior sealing orders on the condition that documents under seal be redacted to delete all identifying information about clients"). That same principle has been applied in the bankruptcy context: "'The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records.'" *In re Symington*, 209 B.R. 678, 690 (D. Md. 1997) (citation omitted).

### III. The Estimation Hearings Should be Open to the Public.

As noted above, "[u]nder the first amendment, the press and the public have a presumed right of access to court proceedings and documents." *Oregonian Pub. Co.*, 920 F.2d at 1464. *Accord, U.S. v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 942 (9th Cir. 2006). This "strong presumption in favor of access," *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995), applies equally to trials and hearings in civil cases. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178 (6th Cir. 1983) ("The Supreme Court's analysis of the

Page 3 - MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

justifications for access to the criminal courtroom apply as well to the civil trial."); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) ("the First Amendment does secure to the public and to the press a right of access to civil proceedings"); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) ("we hold that 'the First Amendment embraces a right of access to [civil] trials'") (citation omitted; brackets in original).

This right of access can be overcome only by "an overriding right or interest 'based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Oregonian Pub. Co.*, 920 F.2d at 1465 (citation omitted). Closure or sealing can be justified only if three substantive elements are demonstrated:

> "(1) closure serves a *compelling* interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest."

*Id.* at 1466 (emphasis added). Moreover, "the burden is upon the proponent of closure to justify a closure order." *Id.* at 1467.

These principles are fully applicable to hearings in bankruptcy court. In *In re Blackwell*, 263 B.R. 505, 509 (W.D. Tex. 2000), for example, the court cited *In re Foundation for New Era Philanthropy*, 1995 WL 478841, at *2 (Bankr. E.D. Pa. 1995), for the proposition that a "court begins with [the] presumption that bankruptcy proceedings will be open and documents will be public." That presumption was applied in *Symington, supra*, in which the court held that Rule 2004 examinations relating to the financial relations between the debtor, a former Governor of Arizona, with his deceased mother, were public proceedings that should be open to public, and in *In re Astri Inv., Management & Securities Corp.*, 88 B.R. 730 (D. Md. 1988), in which the court applied the presumptive First Amendment right of access to creditors meetings.

Page 4  -  MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

Countless newspaper and magazine articles, scores of court cases, and innumerable news and investigative reports on radio and television have focused public attention on the matter of abuse of minors by clergy of the Roman Catholic Church in several parts of the United States, and in Oregon in particular. The manner in which this court resolves the many claims of clergy abuse that are pending before it is of enormous public importance and enormous public interest. The Ninth Circuit has reiterated that "[w]e do well to remember that 'People in an open society do not demand infallibility from their institution, but it is difficult for them to accept what they are prohibited from observing.'" *Oregonian Pub.*, 920 F.2d at 1465, quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S. Ct. 2814, 65 L.Ed.2d 973 (1980).

Oregonian therefore urges the court to enter an order allowing public access to any Estimation hearings that are held in this proceeding. If the court holds Estimation hearings and determines that such hearings will not be open to the public, then Oregonian requests the court to make specific findings of fact to support that decision. "'The interest [that justifies closure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Oregonian Pub.*, 920 F.2d at 1464 (citation omitted). "'After taking all relevant factors into consideration, the district court must base its decision [to deny public access] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (quoting *Hagestad*, 49 F.3d at 1434).

### IV. If no Estimation hearings are held, then the court should allow public access to all documents on which the court bases its estimation.

Many of the principles set out above, relating to access to court hearings, apply equally to access to court records. "Under the first amendment, the press and the public have a presumed right of access to court proceedings *and documents*." *Oregonian Pub.*, 920 F.2d at 1464

Page 5  -  MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

(emphasis added). "In this circuit, we start with a strong presumption in favor of access to court records." *Foltz*, 331 F.3d at 1135.

If the court does not hold Estimation hearings, it is Oregonian's understanding that the court will make the estimation required by Section 502(c) of the Bankruptcy Code on the basis of documents, including transcripts of depositions and exhibits. Whether the court proceeds by way of hearing or by way of review of documentary evidence, it will be making significant decisions that will have a material effect on the outcome of the bankruptcy proceedings and on the substantive rights of the parties. The public should have access to the evidence on which the court makes those decisions, for "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).

> "What happens in the federal courts is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification. The Supreme Court issues public opinions in all cases, even those said to involve state secrets."

*Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). See also *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (judicial records on which court bases decisions affecting "substantive rights" are subject to the "strong presumption of access to judicial records").

These principles are fully applicable in bankruptcy proceedings. Section 107(a) of the Bankruptcy Code provides:

Page 6  -  MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

> "Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."

This section "creates a presumption in favor of public access to court records filed in bankruptcy cases." *In re Muma Services Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002). Subsection (b) of that section, which "provides a narrow statutory exception to public accessibility in bankruptcy cases," *id.*, reads in part:

> "On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> "* * *
>
> "(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."

The exception in Section 107(b) does not justify sealing of the documents at issue in this case. "The exception was intended to avoid 'affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor,'" *In re Muma Services Inc.*, 279 B.R. at 484 (quoting *In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. BAP 1982)), and it "'was not intended to save the debtor or its creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns.'" Id. (quoting *In re Foundation for New Era Philanthropy*, 1995 WL 478841, *4 (Bankr. E.D. Pa. May 18, 1995)). *Accord, In re FiberMark, Inc.*, 330 B.R. 480, 508-09 (Bankr. D. Vt. 2005).

Page 7 - MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

These principles were illustrated in *In re Analytical Systems, Inc.*, 83 B.R. 833 (Bankr. N.D. Ga. 1987), in which the debtor and one of its creditors asked the court to seal their settlement agreement, on the grounds that

> "their joint willingness to maintain the confidentiality of the Agreement under seal was a material and critical inducement to the settlement of the litigation; that disclosure of the Agreement may expose [the creditor] to annoyance, embarrassment, oppression and undue burden and expense; that further required cooperation between these parties would be made more difficult by disclosure of the Agreement to third parties; and that entry of the requested protective order would promote an orderly and prompt final termination of this litigation."

*Id.* at 834. The court sealed the agreement, but an interested person then filed a motion to unseal it. The court granted the motion to unseal, holding that "possible embarrassment" to the creditor "is not a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records." *Id.* at 836.

The conclusion that the documents at issue here should be made available for public review is supported by the leading court decision that has dealt with the question of public access to court documents in a clergy abuse case. In *Globe Newspaper Company v. Clerk of Suffolk County Superior Court*, 2002 WL 202464 (Mass. Superior Ct. 2002), judicial records in five civil cases involving "allegations that members of the clergy sexually abused children" (*id.* at *1) had been sealed (or, to use the terminology of the Massachusetts courts, "impounded"). A Boston newspaper filed a complaint seeking termination of the sealing orders. The court recognized the "presumption that court records in civil proceedings are available to the general public," *id.* at *2, and noted that the presumption is rooted in both the common law and the First Amendment. *Id.* at *2-*3. It stated that sealing can be justified only by "good cause," the meaning of which "must be understood in light of [the] compelling interest/narrowly tailored standard." *Id.* at *4.

Page 8 - MEMORANDUM IN SUPPORT OF OREGONIAN PUBLISHING COMPANY'S MOTION TO INTERVENE AND FOR ORDER ALLOWING PUBLIC ACCESS TO ESTIMATION HEARINGS AND DOCUMENTS

With respect to the documents at issue, the court held that "[t]he mere potential for 'embarrassment' or the fear of 'unjustified adverse publicity' is not sufficient to show good cause." *Id.* at *5. Further, the interests of the clergy defendants "in remaining anonymous" were not great enough to overcome the presumption of access, *id.* at *8, and there was "no [other] interest so compelling as to override the common law and constitutional presumption of public access to court records." *Id.* at *9. The court therefore ordered the records to be unsealed, subject only to redaction to protect the identities of the plaintiff victims of abuse. *Id.* (A month later another Superior Court judge in neighboring Middlesex County reached the same conclusion, and expressly "adopt[ed] the reasoning and rationale" of the court in the Suffolk County case. *Globe Newspaper Company v. Clerk of Middlesex County Superior Court*, 2002 WL 562658 (Mass. Superior Ct. 2002).)

As noted above, "the party seeking access is entitled to a presumption of entitlement to disclosure," *Oregonian Pub.*, 920 F.2d at 1467, and the burden is on the proponent of sealing to demonstrate the "overriding right or interest" that must be shown in order to justify sealing. *Id.* at 1465. The same thing is true under Section 107 of the Bankruptcy Code: "the Seal Proponents have the burden of proof to demonstrate grounds for an exception under § 107(b)." *In re FiberMark, Inc.*, 330 B.R. 480, 496-97 (Bankr. D. Vt. 2005).

Proponents of closing a hearing or sealing documents in this bankruptcy proceeding must demonstrate a compelling reason for preventing the public from knowing the basis on which the court will determine whether any settlement fund in this case is sufficient to satisfy the claims asserted against the debtor by persons who have not agreed to the settlement. In assessing the strength of that showing, "[t]he court must not base its decision on conclusory assertions alone, but must make specific factual findings." *Oregonian Pub. Co.*, 920 F.2d at 1466.

## IV. Conclusion.

Oregonian should be permitted to intervene in order to seek access to the Estimation Hearings and to the unsealing of any and all documents that the court considers in making the estimation required by Section 502(c) of the Bankruptcy Code. The court should enter an order that the Estimation Hearings will be open to the public, and that all documents that have been submitted to the court in connection with the Estimation proceedings will be unsealed and made available for public inspection.

DATED: February 26, 2007.

Respectfully submitted,

*Charles F. Hinkle*
Charles F. Hinkle
Stoel Rives LLP
Attorneys for Oregonian Publishing Company
and Ashbel Green