Thomas W. Stilley, OSB No. 88316
Susan S. Ford, OSB No. 84220
Howard M. Levine, OSB No. 80073
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail:  tom@sussmanshank.com
            susanf@sussmanshank.com
            howard@sussmanshank.com

Attorneys for Debtor and Debtor-In-
Possession

David A. Foraker, OSB No. 81228
GREENE & MARKLEY, P.C.
1515 SW 5th Avenue, Suite 600
Portland, OR 97201
Telephone: 503-295-2668
Facsimile: 503-224-8434
E-Mail: david.foraker@greenemarkley.com

Attorneys for Future Claimants
Representative

Albert N. Kennedy, OSB No. 82142
Timothy J. Conway, OSB No. 85175
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
Telephone: 503-221-1440
Facsimile: 503-274-8779
E-Mail:  al@tonkon.com
            tim@tonkon.com

Attorneys for Tort Claimants Committee

Steven M. Hedberg, OSB No. 84244
Douglas R. Pahl, OSB No. 95047
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503-727-2000
Facsimile: 503-727-2222
E-Mail: shedberg@perkinscoie.com
            dpahl@perkinscoie.com

Attorneys  for  Parish  and  Parishioners
Committee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>**ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba ARCHDIOCESE OF PORTLAND IN OREGON,**<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-37154-elp11<br><br>THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007) |

# TABLE OF CONTENTS

1.   DEFINITIONS ................................................................................................. 1

2.   TREATMENT OF UNCLASSIFIED CLAIMS ................................................ 21

2.1 Administrative Claims ................................................................................. 21

2.2 Priority Tax Claims ..................................................................................... 22

3.   CLASSIFICATION OF CLAIMS .................................................................. 22

4.   TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS ............................ 23

4.1 Class 1:  Non-Tax Priority Claims .............................................................. 23

4.2 Class 2:  Umpqua Bank .............................................................................. 23

4.3 Class 6:  Settled Known Tort Claims .......................................................... 23

4.4 Class 9:  Retiree Benefit Claims ................................................................ 24

5.   TREATMENT OF IMPAIRED CLASSES OF CLAIMS ................................. 24

5.1 Class 3:  Perpetual Endowment Fund Secured Claim ................................ 24

5.2 Class 4:  Key Bank Guaranty Claims ......................................................... 24

    5.2.1 Assumption Village ........................................................................... 24

    5.2.2 Trinity Court ...................................................................................... 25

    5.2.3 Villa St. Margaret ............................................................................. 25

5.3 Class 5:  General Unsecured Claims .......................................................... 26

5.4 Class 7:  Unresolved Known Tort Claims ................................................... 26

    5.4.1 Satisfaction of Debtor's and Reorganized Debtor's Obligation
           to Pay Unresolved Known Tort Claims ..................................... 26

    5.4.2 Resolution of Unresolved Known Tort Claims .......................... 27

    5.4.3 Satisfaction of Unresolved Known Tort Claims Solely from
           Known Tort Claims Trust ........................................................... 28

    5.4.4 Deliverables to Known Tort Claims Trustee at Closing ............ 29

5.5 Class 8: Future Claims ....................................................................... 29

    5.5.1 Satisfaction of Debtor's and Reorganized Debtor's
    Obligation to Pay Future Claims ..................................................... 29

    5.5.2 Resolution of Future Claims ..................................................... 30

    5.5.3 Satisfaction of Future Claims Solely from Future Claims Trust ................. 31

    5.5.4 Future Claims Collateral ......................................................... 32

    5.5.5 Deliverables to Future Claims Trustee at Closing .................................. 33

5.6 Class 10: Donor and Beneficiary Claims .......................................... 33

6.    PROVISIONS GOVERNING RESOLUTION AND PAYMENT OF
UNRESOLVED TORT CLAIMS .......................................................... 33

6.1 Replenishment of Cash Deposits for Unresolved Tort Claims ........................... 33

6.2 Post-Petition Interest ............................................................... 34

6.3 Mediators Settlement Offers ......................................................... 34

6.4 Resolution of Unresolved Tort Claims ................................................ 34

    6.4.1 Litigation Procedures ............................................................ 34

    6.4.2 Litigation of Claims ............................................................. 34

    6.4.3 Future Claimants, and Known Tort Claimants Asserting a Right
    to Punitive Damages, Must Have their Claims Resolved in
    the District Court ................................................................. 35

    6.4.4 Jurisdiction ..................................................................... 35

    6.4.5 Settlement of Claims ............................................................ 35

    6.4.6 Withdrawal of Claims ........................................................... 35

6.5 Known Tort Claims Trust and Future Claims Trust .................................... 35

    6.5.1 Purposes ........................................................................ 35

    6.5.2 Beneficiaries .................................................................... 36

    6.5.3 Trustees ......................................................................... 36

6.5.4  Resignation ........................................................................................ 37

6.5.5  Removal ............................................................................................. 37

6.5.6  Successor Trustee ............................................................................ 38

6.5.7  Deposit and Payment of Funds ........................................................ 38

6.5.8  Financial Management of Trust Assets ............................................ 39

        6.5.8.1 Establishment of Accounts ........................................... 39

        6.5.8.2  Investment ..................................................................... 39

6.5.9  Tax Matters ....................................................................................... 40

6.5.10 Exclusive Jurisdiction and Venue in District Court ........................... 41

6.5.11 Irrevocability ..................................................................................... 41

6.5.12 Recordation ....................................................................................... 42

6.5.13 Termination/Dissolution .................................................................... 42

        6.5.13.1  Known Tort Claims Trust Termination/Dissolution ....... 42

        6.5.13.2  Future Claims Trust Termination/Dissolution .............. 42

        6.5.13.3  Winding Up/Distribution of Excess Funds ................... 43

6.5.14  No Execution .................................................................................... 43

6.6  Insurance Claims Against Non-Settling Insurance Companies ......................... 43

6.7  Contribution and Indemnity Claims of St. Mary's Home
and Catholic Charities ........................................................................................ 45

7.    MEANS FOR IMPLEMENTATION OF THE PLAN ................................................ 45

7.1  Settlement of Estate Property Litigation ........................................................... 45

7.2  Structure of Reorganized Debtor ...................................................................... 45

7.3  Closing .............................................................................................................. 46

7.4  Termination of Tort Claimants Committee ......................................................... 47

7.5  Continuation of Future Claimants Representative ............................................. 47

7.6  Performance of  Obligations of the Reorganized Debtor ................................... 48

7.7  Objections to Claims ........................................................... 49

7.8  Provisions Governing Distributions ..................................... 49

    7.8.1  Distribution Only to Holders of Allowed Claims ........................ 49

    7.8.2  Transmittal of Distributions ....................................... 50

    7.8.3   Timing of Distributions .......................................... 50

    7.8.4  Form of Distributions ............................................. 51

    7.8.5  Tax Identification Numbers ........................................ 51

    7.8.6  No Professional Fees or Expenses .................................. 51

7.9  Closing of the Case ............................................................ 52

8.   CONDITIONS PRECEDENT ............................................ 52

8.1  Conditions to Effectiveness ................................................ 52

8.2  Waiver of Conditions ......................................................... 53

9.   EFFECTS OF PLAN CONFIRMATION ............................. 53

9.1  Discharge ......................................................................... 53

9.2  Vesting ............................................................................. 54

9.3  *Exculpation And Limitation Of Liability* .............................. 54

9.4  *Injunction Against Prosecution of Claims Against Settling*

    *Insurance Companies* ..................................................... 55

9.5  Term of Injunctions or Stays and Confirmation of Settlements

    With Settling Insurance Companies .................................... 56

9.6  Dismissal of Appeals from Bar Date Order and FCR Order ............... 56

9.7  Release of Fraudulent Transfer Claims ................................ 57

10.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... 57

10.1 Assumed Employee and Retiree Benefit Plans and Collective

    Bargaining Agreements ...................................................... 57

10.2 General; Assumed if Not Rejected ..................................... 57

10.3 Claims for Contract Rejection ................................................................ 58

11. MISCELLANEOUS PROVISIONS ............................................................. 58

11.1  Retention of Jurisdiction ..................................................................... 58

11.2  Modification of Plan ............................................................................ 59

11.3  Severability ........................................................................................ 60

11.4   Post-Confirmation Professional Fees and Expenses ....................... 60

11.5  Headings ............................................................................................ 60

11.6  Computation of Time Periods ............................................................ 60

11.7  Notices ............................................................................................... 60

11.8  Post-Confirmation Court Approval .................................................... 61

11.9  Election Pursuant to Section 1129(b) of the Bankruptcy Code ....... 62

11.10 Consummation of the Plan ................................................................. 62

11.11 Exemption from Transfer Taxes ......................................................... 63

11.12 Waivers .............................................................................................. 63

11.13 Setoffs, Recoupments and Defenses ................................................. 63

11.14 Compromise of Controversies ........................................................... 64

11.15 Withdrawal or Revocation of the Plan ............................................... 64

11.16 Default ................................................................................................ 64

11.17 Filing and Payment of Allowed Administrative Claims ..................... 65

11.18 Payment of United States Trustee Fees ............................................. 65

11.19 Governing Law .................................................................................... 65

11.20 Reservation of Rights ......................................................................... 66

11.21 Plan Controls ...................................................................................... 66

11.22 Successors and Assigns ..................................................................... 66

11.23 Exhibits .............................................................................................. 66

1  Roman Catholic Archbishop of Portland in Oregon, and successors, a

2  corporation sole, dba Archdiocese of Portland in Oregon, the Tort Claimants

3  Committee, the Future Claimants Representative, and the Parish and Parishioners

4  Committee in the above-captioned Chapter 11 case propose the following Joint Plan of

5  Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

6  **1.    DEFINITIONS.**

7  For purposes hereof, any term used in an initially capitalized form in this Plan will

8  have the defined meaning ascribed to it in either Section 101 of the Bankruptcy Code or

9  the definitions set forth below.  All definitions in the Bankruptcy Code and below will be

10  subject to the rules of construction set forth in Section 102 of the Bankruptcy Code.  In

11  addition, the use of the words "includes" or "including" is not limiting and means

12  "including but not limited to", and the words "related to" or "relating to" means with

13  regard to, by reason of, based on, arising out of, or in any way connected with.

14  Whenever the context requires, such terms include the singular as well as the plural, the

15  masculine gender includes the feminine, and the feminine gender includes the

16  masculine.  Any specific references to promissory notes, deeds of trust or other debt

17  instruments or security documents includes any amendments, modifications and

18  extensions thereto.  Nothing contained in this Plan constitutes an admission or denial by

19  any party of liability for, or the validity, priority or extent of any Claim, lien, or security

20  interest asserted against the Debtor or against any third party.

21  "**Administrative Claim**" means a Claim for payment of an administrative

22  expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in

23  Section 507(a)(1) of the Bankruptcy Code including, without limitation, the actual,

24  necessary costs and expenses of preserving the Debtor's estate and operating the

25  Debtor's business including Current Obligations, compensation for professional services

26

**Page 1 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  and reimbursement of expenses awarded under Sections 330(a) or 331 of the

2  Bankruptcy Code, and all fees and charges assessed against the Debtor's estate under

3  chapter 123 of Title 28, United States Code.  Administrative Claims do not include

4  Future Claims, whether or not any such Claim is based on conduct that occurred after

5  the Petition Date.

6  **"Administrative Claimant"** means a Person or Entity asserting an

7  Administrative Claim.

8  **"Allowance Date"** means, with respect to a Claim, the date such Claim

9  becomes Allowed.

10  **"Allowed"** means, with respect to a Claim, the extent to which:  (a) the Claim is

11  agreed to by the Claimant and by the Debtor or the Reorganized Debtor; (b) the Claim

12  is expressly allowed in this Plan; or (c) proof of such Claim was (i) timely filed with the

13  Claims Agent or the Bankruptcy Court, (ii) deemed filed pursuant to Section 1111(a) of

14  the Bankruptcy Code, or (iii) tardily filed with leave of the Bankruptcy Court, and, in any

15  case, as to which the Claim is not Disputed or the Claim is Disputed and is allowed by a

16  Final Order; provided, however, if an Unresolved Tort Claim is Settled, it shall only

17  become Allowed upon the District Court's approval of the settlement pursuant to the

18  provisions of Sections 6.4.5 and 11.8 of the Plan.

19  **"Archbishop"** means the Person who is the sole director of the Debtor and the

20  ecclesiastical head of the Archdiocese.

21  **"Archdiocesan Territory"** means the geographic area extending from the

22  Washington border on the north to the California border on the south, and from the crest

23  of the Cascade Mountains on the east to the Pacific Ocean on the west.

24  **"Archdiocese"** means the Archdiocese of Portland in Oregon, which is an

25  ecclesiastical entity.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     **"Ballot"** means the ballot that is used by a Creditor to accept or reject the Plan.

2     **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, principally

3 codified in 11 USC Section 101, et seq., and any amendments thereto applicable to this

4 case.

5     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District

6 of Oregon.

7     **"Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in

8 Bankruptcy promulgated under 28 USC § 2075, as amended, and the local rules and

9 general orders of the Bankruptcy Court, as applicable to Chapter 11 cases, together

10 with all amendments and modifications from time to time thereto.

11     **"Beneficiary Claims"** means those Claims of Parishes, Schools, parishioners,

12 and other Claimants or Creditors claiming a right or entitlement to the use or benefit,

13 including without limitation any religious use or benefit, of property or funds held by the

14 Debtor in trust or otherwise restricted in its use, or that the use of such property or funds

15 to pay Claims against the Debtor violates the terms of any such trust or other restriction.

16     **"Business Day"** means any day other than Saturday, Sunday, or a "legal

17 holiday", as that term is defined in Bankruptcy Rule 9006(a).

18     **"Case"** means the case under Chapter 11 of the Bankruptcy Code commenced

19 by the Debtor on July 6, 2004.

20     **"Cash"** means cash, cash equivalents, bank deposits, and negotiable

21 instruments payable on demand.

22     **"Chapter 11 Professionals"** means the Debtor's Professionals, the Tort

23 Claimants Committee's Professionals, the Future Claimants Representative's

24 Professionals, the Parish and Parishioners' Committee's Professionals, and the Joint

25 Professionals, wherever they are collectively referred to in the Plan.

26

**Page 3 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007)

1    **"Child"** means an unmarried Person under 18 years of age.

2    **"Child Abuse"** means child abuse as defined in ORS 12.117(2).

3    **"Claim"** means any claim, as that term is defined in Section 101(5) of the

4    Bankruptcy Code, arising before the Effective Date.

5    "**Claimant**" means a Creditor that asserts a Claim.

6    **"Claims Agent"** means the BMC Group, Inc.

7    **"Claims Bar Date"** means April 29, 2005.

8    **"Claims Bar Date Notice"** means the *Notice of Last Day to File Claims,*

9    *Including Claims for Clergy Sex Abuse and Sexual Misconduct* mailed to all known

10   Creditors, together with the *Publication Notice* published in various newspapers and

11   other publications in January, 2005, and thereafter, providing notice of the Claims Bar

12   Date.

13   **"Claims Bar Date Order"** means the order of the Bankruptcy Court, entered

14   January 3, 2005, setting the Claims Bar Date and approving the method of notification

15   of the Claims Bar Date.

16   **"Claims Objection Bar Date"** means, unless extended by the Court, the first

17   Business Day that follows the 60th day after the Effective Date, or such other date as

18   fixed by the Bankruptcy Court, by which any objection to a Claim (excluding Tort

19   Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

20   **"Closing"** means the Reorganized Debtor's execution and delivery of the Plan

21   Documents and delivery of the payments to the Known Tort Claims Trust and Future

22   Claims Trust, as more particularly described in this Plan.

23   **"Co-Defendant"** means a Person or Entity that is named as a defendant in a

24   lawsuit in which the Debtor is also named as a defendant, or who is potentially

25

26

**Page 4 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  responsible for a Claim asserted against both such Person or Entity and the Debtor,

2  including co-debtors as described in Section 509 of the Bankruptcy Code.

3  **"Confirmation Date"** means the date of the entry of the Confirmation Order.

4  **"Confirmation Order"** means the order confirming this Plan.

5  **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is

6  not otherwise payable and the accrual of which or the obligation to make payment on

7  which is dependent upon a future event that may or may not occur.

8  **"Court"** means the Bankruptcy Court.

9  **"Creditor"** means any creditor, as that term is defined in Section 101(10) of the

10  Bankruptcy Code.

11  **"Current Obligations"** means (a) all accounts payable and other liabilities or

12  obligations of the Debtor that arose or accrued in the ordinary course of the Debtor's

13  business during this Case, and (b) any taxes that were incurred subsequent to the

14  Petition Date and became or become legally due and payable by the Debtor

15  subsequent to the Petition Date and prior to the Effective Date.

16  **"Debtor"** means Roman Catholic Archbishop of Portland in Oregon, and

17  successors, a corporation sole, dba Archdiocese of Portland in Oregon, which includes,

18  without limitation, the Archdiocese, the Parishes, and the Schools.[1]

19  **"Debtor Actions"** means any and all claims, causes of action, and enforceable

20  rights of the Debtor against third parties (other than Insurance Claims) including, without

21  limitation, claims of the Debtor for recovery of, or based upon, or in any manner arising

22  from or related to damages, general or exemplary (or both), or other relief relating to (or

23  based upon) (a) indebtedness owing to the Debtor; (b) fraud, negligence, gross

24  _____

25  [1] Pursuant to the Court's order entered on February 17, 2006 in the Estate Property
26  Litigation, the Court determined that the Parishes and the Schools have no separate
legal existence from the Debtor.

**Page 5 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    negligence, willful misconduct, or any other tort actions; (c) breaches of contract; (d)

2    violations of federal or state laws (including corporate and securities laws); (e) breaches

3    of fiduciary or agency duties; (f) disregard of the corporate form or piercing the

4    corporate veil or other liability theories; (g) avoidance of transfers or obligations under

5    Chapter 5 of the Bankruptcy Code, under other federal law, or under state law; and (h)

6    any other claim of the Debtor to the extent not specifically compromised or released

7    pursuant to this Plan or an agreement referred to, or incorporated into, this Plan.

8    **"Debtor Action Recoveries"** means the rights of the Debtor to any and all

9    proceeds or other relief from (a) any award, judgment, relief, or other determination

10    rendered or made as to any Debtor Action; or (b) any compromise or settlement of any

11    Debtor Action.

12    **"Debtor's Professionals"** means the law firms Sussman Shank LLP, Schwabe

13    Williamson & Wyatt PC, Miller Nash LLP,  and Rothgerber Johnson & Lyons LLP; the

14    economic consulting firm, National Economic Research Associates, Inc.; the financial

15    consulting firm, Mesirow Financial Consulting LLC; the accounting firm KPMG LLP;

16    Kevin McGovern, PhD.; and all other professionals, if any, which the Debtor may retain

17    to provide professional services, all in accordance with Sections 327(a) and 327(e) of

18    the Bankruptcy Code and as approved by the Bankruptcy Court.

19    **"Disallowed"** means, with respect to any Claim, the extent to which the Claim

20    has been disallowed pursuant to (a) a Final Order, (b) an agreement between the

21    Claimant and the Debtor or the Reorganized Debtor, or (c) the terms of the Plan.

22    **"Disclosure Statement"** means the Disclosure Statement regarding this Plan,

23    including all exhibits and schedules attached thereto and referenced therein prepared

24    by the Proponents pursuant to Section 1125 of the Bankruptcy Code and approved by

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  the Bankruptcy Court, as such Disclosure Statement may be amended and modified

2  from time to time.

3  **"Disputed"** means, with respect to a Claim, that an objection to such Claim has

4  been timely filed as provided in this Plan, or such Claim is listed as disputed in the

5  Debtor's schedules filed with the Bankruptcy Court, and such objection or dispute has

6  not been resolved by Final Order, or by agreement between the Claimant and the

7  Debtor.

8  **"District Court"** means the United States District Court for the District of

9  Oregon.

10  **"Donor Claims"** means those Claims of Persons and Entities that have donated

11  property or funds to the Debtor (including the Archdiocese, a Parish, or a School), and

12  assert that such funds or property were donated for a specific purpose, including without

13  limitation any religious purpose, or otherwise are restricted as to use, and that any use

14  inconsistent with such purpose or restriction constitutes a Claim, or that the use of such

15  funds or property pursuant to the provisions of this Plan to pay Claims against the

16  Debtor is inconsistent with such specified purpose or restricted use.

17  **"Effective Date"** means the first Business Day after the Confirmation Date on

18  which (i) all conditions to effectiveness specified in Section 8.1 of this Plan have been

19  satisfied or waived, and (ii) no stay of the Confirmation Order is in effect.

20  **"Enjoined Claim"** means any Claim[2] relating to the Insurance Policies or related

21  rights addressed by the Plan or the Confirmation Order, including without limitation any

22  contribution, indemnity, subrogation, equitable subrogation, recoupment, quantum

23  meruit, "other insurance clauses" rights, or similar Claim or legal theory, against any

24  ───────────────────

25  [2] Solely as used in this definition for Enjoined Claim and in Section 9.4 of the Plan (but
not elsewhere in the Plan), the capitalized term "Claim" has the definition set forth in §

26  101(5) of Title 11 of the United States Code.

**Page 7 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Settling Insurance Company, its predecessors, successors, and assigns, or their

2    respective officers and directors, whenever and wherever arising or asserted, whether

3    sounding in tort, contract, warranty or any other theory of law, equity or admiralty,

4    including without limitation all Claims by way of direct action, statutory or regulatory

5    action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and

6    other expenses, or for any equitable remedy.  For the avoidance of doubt, an Enjoined

7    Claim includes only those Claims asserted against a Settling Insurance Company, its

8    predecessors, successors, and assigns, or their respective officers and directors, and

9    does not include the rights of holders of Claims to assert such Claims against any

10   Person or Entity other than Settling Insurance Companies.

11       **"Estate"** means the bankruptcy estate of the Debtor as created under Section

12   541 of the Bankruptcy Code.

13       **"Estate Property Litigation"** means that certain adversary proceeding

14   commenced by the Tort Claimants Committee against the Debtor and others in the

15   Case entitled *Tort Claimants Committee v. Roman Catholic Archbishop of Portland in*

16   *Oregon, et al,* Adversary Proceeding No. 04-03292, and all appellate proceedings

17   resulting from any orders entered therein.

18       **"Estimated Amount"** means the amount at which the Bankruptcy Court or the

19   District Court, pursuant to 28 USC §157(b)(2)(B), Section 502(c) of the Bankruptcy

20   Code, and Bankruptcy Rule 3018(a), as the case may be, estimates any Claim or class

21   of Claims that is Contingent, unliquidated, or disputed, including, without limitation, any

22   Tort Claim or class thereof, for the purpose of (a) allowance, (b) distribution,

23   (c) confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to

24   accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e) for

25   any other purpose.

26
   **Page 8 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
   REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
   CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
   COMMITTEE (Dated April 9, 2007)

1    **"Estimation Order"** means an order of the Bankruptcy Court or the District

2    Court, as applicable, that determines the Estimated Amount of any Claim or Claims for

3    any purpose, whether individually or as part of an aggregate.

4    **"FCR"** means the Future Claimants Representative.

5    **"FCR Order"** means the Court's order entered on December 20, 2004,

6    appointing David A. Foraker as the Future Claimants Representative.

7    **"FCR's Professionals"** means the law firm Greene & Markley PC; special

8    counsel and consulting expert, Alan W. Scheflin; and all other professionals, if any,

9    which the FCR may retain to provide professional services, all in accordance with the

10   FCR Order and as approved by the Bankruptcy Court.

11   **"Final Order"** means an order, judgment, ruling or decree of the Bankruptcy

12   Court, the District Court, or any other court having jurisdiction as to which (a) any

13   appeal that has been taken has been finally determined or dismissed and the time to

14   take any further appeal, or to seek certiorari, further reargument or rehearing, has

15   expired or been waived in writing, or (b) the time to take an appeal has expired and no

16   appeal has been timely filed.

17   **"Future Claim"** means a Tort Claim that is not a Known Tort Claim, and which is

18   based on conduct occurring on or before the Effective Date that constitutes Child Abuse

19   or knowingly allowing, permitting, or encouraging Child Abuse, for which the holder of

20   such Claim (or his or her parent or legal guardian) did not file a proof of claim by the

21   Claims Bar Date (excluding the proof of claim filed by the FCR on behalf of all Future

22   Claimants), and as of the Claims Bar Date (or, if such conduct occurred after the Claims

23   Bar Date, as of the Effective Date) the holder of such Claim: (1) was under the age of

24   18; (2) was suffering from "repressed memory" and could not remember the Child

25   Abuse; or (3) had not discovered the injury or the causal connection between the injury

26

**Page 9 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  and the Child Abuse, nor in the exercise of reasonable care should have discovered the

2  injury or the causal connection between the injury and the Child Abuse.

3  **"Future Claimant"** means a Person or Entity who asserts a Future Claim.

4  **"Future Claimants Representative"** means David A. Foraker, the legal

5  representative for Future Claimants appointed pursuant to the FCR Order, or any

6  successor appointed or approved by the District Court.

7  **"Future Claims Administration Expenses"** means (i) the reasonable fees of

8  the Future Claims Trustee and all reasonable and necessary costs and expenses

9  incurred by the Future Claims Trustee in carrying out the terms of the Future Claims

10  Trust Agreement (exclusive of amounts necessary to fund Plan payments to holders of

11  Allowed Future Claims); and (ii) the reasonable fees of the FCR and all reasonable and

12  necessary costs and expenses (including the reasonable fees and expenses of

13  attorneys and other professionals retained by the FCR) incurred by the FCR in

14  exercising any of the FCR's rights or powers under the Plan or any of the Future Claims

15  Plan Documents, in connection with the FCR's oversight of the Reorganized Debtor's

16  performance under the Plan and the Future Claims Plan Documents as they relate to

17  the Future Claims, or with respect to the FCR's oversight of the Future Claims Trustee's

18  performance under the Future Claims Plan Documents.

19  **"Future Claims Bar Date"** means April 30, 2030.

20  **"Future Claims Cap"** at any particular time means the maximum amount of

21  Cash that may be distributed from the Future Claims Trust to holders of Allowed Future

22  Claims.  The Future Claims Cap on the Effective Date shall be twenty million dollars

23  ($20,000,000) (the initial "Future Claims Base Amount").  The Future Claims Cap

24  existing from time to time shall increase daily by .008219178% (i.e., 3% per year) of the

25  then existing Future Claims Base Amount ("Future Claims Increases") from the Effective

26

**Page 10 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   Date until the twentieth (20th) anniversary of the Effective Date.  Thereafter, there shall

2   be no further Future Claims Increases to the Future Claims Cap.  The amount of the

3   Future Claims Cap will change daily based on Future Claims Increases and, from time

4   to time, as Cash distributions are made by the Future Claims Trust to pay Allowed

5   Future Claims (a "Future Claims Distribution").  On each date on which a Future Claims

6   Distribution is made on account of one or more Allowed Future Claims, the amount of

7   the Future Claims Cap, as determined on such date immediately before the Future

8   Claims Distribution is made, shall be reduced by the amount of such Future Claims

9   Distribution.  Each Future Claims Distribution shall be applied first against the Future

10  Claims Increases and then to reduce the Future Claims Base Amount.  After each such

11  Future Claims Distribution is made, the Future Claims Cap, as reduced, shall increase

12  daily by .008219178% of the then existing Future Claims Base Amount until the next

13  date on which a Future Claims Distribution is made or until the date that is the twentieth

14  (20th) anniversary of the Effective Date, whichever shall first occur.  In no event shall the

15  Future Claims Cap ever exceed thirty-two million dollars ($32,000,000.00), which limit

16  would be reached on the 20th anniversary of the Effective Date only if no payments

17  were ever made from the Future Claims Trust prior to that date.

18          **"Future Claims Collateral"** at any particular time means the real and personal

19  property, including any letter or letters of credit, that secures or supports the

20  Reorganized Debtor's obligations under the Plan with regard to Future Claims and

21  under the Future Claims Plan Documents.  On the Effective Date and on each

22  subsequent Date of Redetermination (as defined in Section 5.5.4 of this Plan), the net

23  liquidation value of the Future Claims Collateral shall be equal to or greater than the

24  lesser of (i) fifteen million dollars ($15,000,000), as increased at the rate of three

25  percent (3%) per year from the Effective Date until such Date of Redetermination (as

26

**Page 11 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    calculated without compounding), or (ii) the amount that is the difference between the

2    Future Claims Cap on such Date of Redetermination and the amount of Cash and

3    investments in the Future Claims Trust available for distribution to Future Claimants on

4    such date.

5        **"Future Claims Deposit"** means the initial two million dollar ($2,000,000) Cash

6    deposit that is required to be paid by the Reorganized Debtor to the Future Claims Trust

7    at Closing, and any additional amounts of Cash thereafter paid by the Reorganized

8    Debtor to the Future Claims Trust from time to time in order to replenish the initial two

9    million dollar ($2,000,000) deposit if and when it drops below one million dollars

10    ($1,000,000), as described in Section 6.1 of this Plan.

11        **"Future Claims Note"** means the promissory note, payable to the order of the

12    Future Claims Trustee, that is to be delivered to the Future Claims Trustee at Closing

13    pursuant to Section 5.5.5(b) of this Plan.

14        **"Future Claims Plan Documents"** means the agreements, instruments, and

15    other documents that are reasonably necessary or desirable in order to implement the

16    provisions of the Plan that relate to the creation, administration or funding of the Future

17    Claims Trust, the payment by the Reorganized Debtor of Future Claims Administration

18    Expenses, and the securing of the Reorganized Debtor's obligations under the Plan with

19    regard to Future Claims or under such agreements, instruments, or other documents.

20        **"Future Claims Trust"** means the trust to be established pursuant to the Plan

21    and the Future Claims Trust Agreement for the benefit of the Future Claimants.

22        **"Future Claims Trust Agreement"** means the agreement between the

23    Reorganized Debtor and the Future Claims Trustee pursuant to which the Future

24    Claims Trust will be established and governed.

25

26
        **Page 12 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
        REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
        CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
        COMMITTEE (Dated April 9, 2007)

1       **"Future Claims Trustee"** means Union Bank of California, and any successor

2       trustee appointed pursuant to the terms of the Future Claims Trust Agreement.

3       **"Guaranty Claim"** means a Claim against the Debtor for the payment or

4       satisfaction of the obligations of any other Person or Entity, for which the Debtor by

5       written agreement, has agreed to make payment or perform such obligations, whether

6       or not the obligations, or the Debtor's liability therefor, have matured, or are contingent,

7       unliquidated, or disputed.

8       **"General Unsecured Claim"** means any Claim against the Debtor that is not an

9       Administrative Claim, Priority Tax Claim, or Claim that is otherwise classified under the

10      Plan.

11      **"Insurance Claims"** means all claims, causes of action and enforceable rights

12      of the Debtor against any Insurance Company for any reason, including, but not limited

13      to, those for (a) indemnity or payment of any Claims; (b) any such Insurance Company's

14      failure or refusal to provide Insurance Coverage under any Insurance Policy, including

15      the failure or refusal to provide a defense to any Claims; (c) the refusal of any Insurance

16      Company to compromise and settle any Claims pursuant to any such Insurance Policy;

17      or (d) the interpretation or enforcement of the terms of any such Insurance Policy.

18       **"Insurance Company"** means (a) any insurance company or insurance broker

19      that during any period of time either (i) provided Insurance Coverage or allegedly

20      provided Insurance Coverage to Debtor or (ii) issued an Insurance Policy or allegedly

21      issued an Insurance Policy to Debtor, and (b) any Person or Entity liable to Debtor

22      under any Insurance Policy or statute relating to insurance, including, but not limited to

23      the Oregon Insurance Guaranty Association.

24      **"Insurance Coverage"** means the insurance coverage for Claims under any

25      Insurance Policy.

26
        **Page 13 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
        REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
        CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
        COMMITTEE (Dated April 9, 2007)

1    **"Insurance Policies"** means those insurance policies naming the Debtor as an

2    insured in effect at any time up to and including the Effective Date for which coverage

3    may be available for any Claims against the Debtor.

4    **"Insurance Recoveries"** means the rights to any and all proceeds, including

5    any interest or income earned thereon, and other relief, from (a) any award, judgment,

6    relief, or other determination entered or made as to any Insurance Claims; (b) any and

7    all amounts payable by a Settling Insurance Company under any settlement agreement

8    with respect to Insurance Claims; and (c) any and all proceeds of any Insurance Policy

9    paid or payable with respect to Insurance Claims.

10    **"Joint Professionals"** means the economic consulting firm, Hamilton Rabinovitz

11    & Alschuler, Inc., appointed to assist the Debtor, Tort Claimants Committee, and Future

12    Claimants Representative in determining the estimated amount of projected Future

13    Claims.

14    **"Known Tort Claim"** means a Tort Claim that is listed on Exhibit "1" to this Plan.

15    **"Known Tort Claims Administration Expenses"** means the reasonable fees of

16    the Known Tort Claims Trustee and all reasonable and necessary costs and expenses

17    incurred by the Known Tort Claims Trustee in carrying out the terms of the Known Tort

18    Claims Trust Agreement (exclusive of amounts necessary to fund Plan payments to

19    holders of Allowed Unresolved Known Tort Claims).

20    **"Known Tort Claims Cap"** at any particular time means the maximum amount

21    of Cash that may be distributed from the Known Tort Claims Trust to holders of Allowed

22    Unresolved Known Tort Claims.  The Known Tort Claims Cap on the Effective Date

23    shall be thirteen million seven hundred twenty-two thousand five hundred dollars

24    ($13,722,500), less the amounts to be paid by the Reorganized Debtor on the Effective

25    Date to holders of Allowed Unresolved Known Tort Claims.  The amount of the Known

26

**Page 14 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Tort Claims Cap will change, from time to time, as earnings accrue on the investments

2    held in the Known Tort Claims Trust and as distributions are made by the Known Tort

3    Claims Trust to pay Allowed Unresolved Known Tort Claims (a "Known Tort Claims

4    Distribution").  On each date on which a Known Tort Claims Distribution is made on

5    account of one or more Allowed Unresolved Known Tort Claims, the amount of the

6    Known Tort Claims Cap shall be reduced by the amount of such Known Tort Claims

7    Distribution.

8    **"Known Tort Claims Deposit"** means the Cash deposit that is required to be

9    paid by the Reorganized Debtor to the Known Tort Claims Trust at Closing equal in

10    amount to $13,722,500 less the amounts to be paid by the Reorganized Debtor on the

11    Effective Date to holders of Allowed Unresolved Known Tort Claims.  Five Hundred

12    Thousand Dollars ($500,000) of the Known Tort Claims Deposit shall be payable solely

13    to the holder of Claim No. 143 in the event he is successful on appeal to the Oregon

14    Court of Appeals or Oregon Supreme Court in obtaining a reversal of the dismissal of

15    his Claim against the Debtor; however, if such appeal is unsuccessful, the $500,000 will

16    become available for payment of the other Unresolved Known Tort Claims that are

17    payable from the Known Tort Claims Trust.

18    **"Known Tort Claims Plan Documents"** means the agreements, instruments,

19    and other documents that are reasonably necessary or desirable in order to implement

20    the provisions of the Plan that relate to the creation, administration or funding of the

21    Known Tort Claims Trust or to the payment by the Reorganized Debtor of Known Tort

22    Claims Trust Administration Expenses.

23    **"Known Tort Claimant"** means a Person or Entity who has asserted a Known

24    Tort Claim.

25

26

**Page 15 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    **"Known Tort Claims Trust"** means the trust to be established pursuant to the

2    Plan and the Known Tort Claims Trust Agreement for the benefit of the Unresolved

3    Known Tort Claimants.

4    **"Known Tort Claims Trust Agreement"** means the agreement between the

5    Reorganized Debtor and the Known Tort Claims Trustee pursuant to which the Known

6    Tort Claims Trust will be established and governed.

7    **"Known Tort Claims Trustee"** means Union Bank of California, and any

8    successor trustee appointed pursuant to the terms of the Known Tort Claims Trust

9    Agreement.

10   **"Litigation Procedures"** refers to the procedures set forth in Section 6.4 of this

11   Plan, and such other procedures as may be set forth in any orders entered or to be

12   entered by the Bankruptcy Court, the District Court, or a State Court establishing the

13   procedures for the submission, evaluation, processing, liquidation, allowance or

14   disallowance of the Unresolved Known Tort Claims and Future Claims.

15   **"Mediators"** means the Hon. Michael R. Hogan and the Hon. Lyle C. Velure.

16   **"Non-Settling Insurance Company"** means an Insurance Company that is not

17   a Settling Insurance Company.

18   **"Non-Tax Priority Claim"** means any Claim which, if Allowed, would be entitled

19   to priority under Section 507(a)(2) through (7) of the Bankruptcy Code.

20   **"Parish"** means a community of the Christian faithful stably constituted in a

21   particular church within the Archdiocesan Territory, whose pastoral care is entrusted to

22   a pastor as its proper pastor under the authority of the Archbishop, including but not

23   limited to, the parish as an ecclesiastical entity, parish clergy, parish corporations,

24   parish employees, and parishioners.

25

26   **Page 16 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
     REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
     CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
     COMMITTEE (Dated April 9, 2007)

1    **"Parish and Parishioners Committee"** means the committee formed by the

2    Parishes and parishioners for the purpose of representing the Parishes' and

3    parishioners' interests in this Case.

4    **"Parish and Parishioners Committee's Professionals"** means the law firm

5    Perkins Coie LLP.

6    "**Petition Date**" means July 6, 2004, the date the Debtor filed the petition

7    commencing this Case.

8    **"Plan"** means this Plan of Reorganization and any and all modifications and/or

9    amendments thereto.

10   **"Plan Documents"** means all agreements, documents and exhibits, as the

11   same may be amended, modified, supplemented, or restated from time to time, that are

12   necessary or appropriate to implement the Plan, the Known Tort Claims Trust, and the

13   Future Claims Trust as described in Section 6.5 of this Plan.  The Plan Documents

14   include the Known Tort Claims Plan Documents, the Future Claims Plan Documents,

15   and those documents establishing and securing the credit facility with Allied Irish Banks,

16   p.l.c.

17   **"Plan Interest Rate"** means the interest rate for deferred payments under this

18   Plan, which rate will be five percent (5%) per annum, unless otherwise determined by

19   the Bankruptcy Court.

20   **"Priority Tax Claim"** means any Claim against the Debtor that, if Allowed, would

21   be entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

22   **"Priority Tax Claimant"** means an Entity that asserts a Priority Tax Claim.

23   **"Proponents"** means the Debtor, the Tort Claimants Committee, the Future

24   Claimants Representative, and the Parish and Parishioners Committee.

25

26
**Page 17 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1      **"Pro Rata"** means proportionate, and when applied to a Claim means the ratio
2  of the amount distributed on account of an Allowed Claim in a class to the amount
3  distributed on account of all Allowed Claims in such class.

4      **"Punitive Damages"** means that portion of a Tort Claim for punitive or
5  exemplary damages.

6      **"Released Parties"** means the Debtor (including, without limitation, the
7  Archdiocese, the Parishes, and the Schools) before the Effective Date, the Tort
8  Claimants Committee, the Parish and Parishioners Committee, the Future Claimants
9  Representative, Hamilton Rabinovitz & Alschuler, and all of their respective present or
10  former members, managers, officers, directors, employees, or agents acting in such
11  capacity.

12      **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

13      **"Representatives"** means the current and former officers, directors, agents,
14  attorneys, employees, and legal representatives of a Person or Entity.

15      **"Retiree Benefit Claims"** means Claims for unfunded liabilities to any Entity or
16  Person for the purpose of providing or reimbursing payments for retired clergy or
17  employees of the Debtor and their spouses and dependents, for pension, medical,
18  surgical, or hospital care benefits, or benefits in the event of sickness, accident,
19  disability or death under any plan, fund, or program established by the Debtor prior to
20  the Petition Date.

21      **"School"** means any school operated by the Debtor (including any Parish or
22  Parishes, or the Archdiocese) within the Archdiocesan Territory, including but not limited
23  to all elementary schools, all middle schools, Central Catholic High School, Marist High
24  School, and Regis High School.

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **"Section 363 Sale"** means a sale of property pursuant to the provisions of

2    Section 363 of the Bankruptcy Code.

3    **"Secured Claim"** means any Claim, including interest, fees and charges as

4    determined pursuant to Section 506(b) of the Bankruptcy Code, against the Debtor that

5    is (a) secured in whole or in part as of the Petition Date by a lien on any of the assets or

6    property of the Debtor, which lien is valid, perfected, and enforceable under applicable

7    law and is not subject to avoidance under the Bankruptcy Code or applicable non-

8    bankruptcy law, but only to the extent of the value of the assets or property securing any

9    such Claim; or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only

10    to the extent of the amount subject to such setoff.

11    **"Settled"** means, with respect to a Claim, a Claim that has been resolved by

12    agreement.

13    **"Settled Known Tort Claims"** means those Tort Claims listed on Exhibit "2"

14    attached to this Plan.

15    **"Settling Insurance Company"** means an Insurance Company that has entered

16    into, or enters into, a settlement agreement with the Debtor that has been approved by

17    the Bankruptcy Court pursuant to which the Settling Insurance Company has

18    (i) provided consideration to the Debtor in exchange for a release of any liability or

19    obligation to make payments or provide Insurance Coverage for any Claim; and/or (ii)

20    provided consideration to the Debtor to purchase its Insurance Policy or Policies from

21    the Debtor in a Section 363 Sale.  A schedule listing all Settling Insurance Companies

22    will be set forth in the Confirmation Order.

23    **"Sexual Misconduct"** means any sexual contact which is, or is alleged to be,

24    inappropriate or nonconsensual, including, without limitation, any of the offenses

25    defined in ORS 163.315 through ORS 163.467.

26

**Page 19 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    **"State Court"** means any court of the state of Oregon having jurisdiction over a

2    Tort Claim and for which the Bankruptcy Court has granted relief from stay to allow such

3    Claim to be resolved in such court.

4    **"Statement of Financial Affairs"** means the Debtor's Statement of Financial

5    Affairs, and any amendments or supplements thereto, filed by the Debtor with the

6    Bankruptcy Court pursuant to Bankruptcy Rule 1007.

7    **"Temporarily Allowed"** means temporarily allowed for any purpose other than

8    distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

9    **"Tort Claim**" means any Claim, demand, suit, cause of action, proceeding or any

10   other rights or asserted right to payment, now or hereafter asserted against the Debtor

11   (including the Archdiocese, the Parishes, and the Schools), any Released Parties, or

12   any Settling Insurance Companies, for Claims arising in tort, including but not limited to

13   personal injury tort and wrongful death Claims, Claims for punitive or exemplary

14   damages, and Claims based upon or in any manner arising from or related to any act or

15   acts of Child Abuse or Sexual Misconduct first occurring on or prior to the Effective

16   Date.   Tort Claims include, without limitation, those based on (a) the processing,

17   adjustment, defense, settlement, payment, negotiation, or handling of any Claims,

18   demands, suits, proceedings or causes of action based upon or relating in any way to

19   such act or acts of Child Abuse or Sexual Misconduct; (b) the failure to warn, disclose,

20   or provide information concerning the risk that any Person or Persons might, or have

21   the propensity to, engage in Child Abuse or Sexual Misconduct; (c) the failure to take

22   remedial action with respect to alleged, suspected or known Child Abuse or Sexual

23   Misconduct; and (d) the actions or inactions of any Person or Entity involving Child

24   Abuse or Sexual Misconduct; including, without limitation, (i) Claims for death or

25   personal injuries, including emotional distress, (ii) Claims for vicarious liability, (iii)

26

**Page 20 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  Claims for damages of any nature, (iv) Claims for attorneys' fees and other expenses,

2  fees or costs, (v) Claims for any possible economic loss or loss of consortium, (vi)

3  Claims for damage to reputation, and (vii) Claims for any legal or equitable remedy;

4  provided, however, that a Tort Claim shall not include any Co-Defendant(s) Claims

5  against the Debtor for contribution or indemnity relating to a Tort Claim.

6  **"Tort Claimant"** means a Person or Entity that asserts a Tort Claim.

7  **"Tort Claimants Committee"** means the Official Committee of Tort Claimants

8  appointed by the United States Trustee to represent the collective interests of those

9  Persons or Entities asserting Known Tort Claims in this Case, as such committee may

10  be reconstituted from time to time.

11  **"Tort Claimants Committee's Professionals"** means the law firm Tonkon Torp

12  LLP; law professor Marci A. Hamilton; the economic consulting firm, LECG LLC; John

13  Conte, PhD.; the media consulting firm, The Ovation Group LLC; the real estate

14  appraisal firms, Powell Valuations Inc., Duncan & Brown Inc., Skelte & Associates Inc.;

15  attorney Arthur Johnson; and all other professionals, if any, which the Tort Claimants

16  Committee may  retain to provide professional services, all in accordance with Section

17  1103(a) of the Bankruptcy Code and as approved by the Bankruptcy Court.

18  **"Unresolved"** means, with respect to a Claim, a Disputed Claim that has not

19  been Allowed or Disallowed for distribution purposes.

20  **"Unresolved Known Tort Claims"** means those Tort Claims listed on

21  Exhibit "3" attached to this Plan.

22  **2.    TREATMENT OF UNCLASSIFIED CLAIMS.**

23  **2.1    Administrative Claims.**  The Reorganized Debtor will pay Administrative

24  Claimants the full amount of their Allowed Administrative Claims in Cash either (a) on or

25  as soon as practicable following the Effective Date, or, if later, the Allowance Date; or

26

**Page 21 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    (b) upon such terms as may be agreed to in writing by the Administrative Claimant and

2    the Debtor or the Reorganized Debtor; provided, however, that any Current Obligations

3    will be paid in full in the ordinary course of business in accordance with the terms and

4    conditions of any agreement relating thereto.

5    **2.2    Priority Tax Claims.**    The Reorganized Debtor will pay Priority Tax

6    Claimants the full amount of their Allowed Priority Tax Claims, together with interest

7    thereon at the Plan Interest Rate from the Petition Date until paid, in Cash, either (a) on

8    or as soon as practicable following the Effective Date or, if later, the Allowance Date; or

9    (b) upon such terms as may be agreed in writing by the Priority Tax Claimant and the

10   Debtor or the Reorganized Debtor.

11   **3.    CLASSIFICATION OF CLAIMS.**

12   All Claims except Administrative Expense Claims and Priority Tax Claims are

13   placed in the following classes for all purposes.  A Claim is classified in a particular

14   class only to the extent the Claim qualifies within the description of that class and is

15   classified in a different class to the extent the Claim qualifies within the description of

16   that different class.  If a Claim is acquired or transferred, the Claim will be placed in the

17   class where it would have been placed if it were owned by the original holder of such

18   Claim.  If a Claimant has more than one Claim in the same class, such Claims will be

19   aggregated and treated as a single Claim.  If a Claimant has Claims in different classes,

20   such Claims will be aggregated only within the same class and not between classes.

21   Class 1:  Non-Tax Priority Claims

22   Class 2:  Umpqua Bank Secured Claim

23   Class 3:  Perpetual Endowment Fund Secured Claim

24   Class 4:  Key Bank Guaranty Claims

25   Class 5:  General Unsecured Claims

26

**Page 22 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Class 6:  Settled Known Tort Claims

2    Class 7:  Unresolved Known Tort Claims

3    Class 8:  Future Claims

4    Class 9:  Retiree Benefit Claims

5    Class 10: Donor and Beneficiary Claims

6    **4.    TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

7    **4.1    Class 1:  Non-Tax Priority Claims**.  The holders of Allowed Non-Tax

8    Priority Claims will receive either (a) payment from the Reorganized Debtor of the full

9    amount of their Allowed Claims, together with interest thereon at the Plan Interest Rate

10    from the Petition Date until paid, in Cash, on or as soon as practicable following the

11    Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims

12    upon such terms as may be agreed in writing by the Claimant and the Reorganized

13    Debtor.

14    **4.2    Class 2:  Umpqua Bank**.  Umpqua Bank ("Umpqua") will have an

15    Allowed Secured Claim for approximately $313,700, plus any interest, fees, and other

16    charges accrued on such Claim as authorized by the terms of the Debtor's promissory

17    note and other related documents.  Umpqua's Allowed Secured Claim will be paid in full

18    on or a soon as reasonably practicable following the Effective Date and Umpqua will

19    release all Collateral securing its Claim.

20    **4.3    Class 6:  Settled Known Tort Claims**.  Holders of Settled Known Tort

21    Claims will receive payment from the Reorganized Debtor on the Effective Date of the

22    full amount of their Allowed Claims, together with all interest accrued thereon to the

23    extent provided in (a) settlement agreements with the Debtor, (b) any Final Order of the

24    Court authorizing the payment of interest on such Claims, or (c) Section 6.2 of this Plan.

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

4.4    **Class 9:  Retiree Benefit Claims**.  The holders of Allowed Retiree Benefit Claims will not be impaired and will not have their rights altered by this Plan.  Allowed Retiree Benefit Claims will be paid, performed, and honored by the Reorganized Debtor in full, when due, in accordance with their terms or the terms of the relevant pension plan notwithstanding any other contrary provision of this Plan; provided, however, that the rights of the holders of such Claims will be subject to modification or termination as provided by the terms of the existing benefit plans, consistent with applicable law.

5.    **TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

5.1    **Class 3:    Perpetual Endowment Fund Secured Claim**.    The Archdiocese of Portland in Oregon Perpetual Endowment Fund (the "Endowment Fund") will have an Allowed Unsecured Claim for approximately $4,974,348, plus any interest, fees, and other charges accrued on such Claim as authorized by the terms of the Debtor's promissory note, deed of trust, and other related documents.  At Closing, the Endowment Fund will release any Collateral securing its Claim.  The Endowment Fund's Allowed Claim will be paid in full, together with interest accruing from and after the Effective Date at the non-default contract rate, in 120 equal monthly installments of principal and interest commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter until paid in full.

5.2    **Class 4:  Key Bank Guaranty Claims**.  The Reorganized Debtor will satisfy Key Bank's Guaranty Claims as follows:

5.2.1    Assumption Village.  The Reorganized Debtor will assume the Key Bank guaranty obligation regarding the Assumption Village property and pay according to its terms, subject to revisions to the guaranty agreement and financial covenants that will cure any defaults and permit the Reorganized Debtor to cure any subsequent default of the principal obligor, Assumption Village LLC, and to continue making any

**Page 24 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007)

1  payments required of the principal obligor on the underlying obligations secured by the

2  guaranty before the guaranty obligation would become due and payable.

3        **5.2.2**  <u>Trinity Court</u>.  Trinity Court, LLC is in default of its direct obligations

4  to Key Bank in the following approximate amounts:

5        a.    <u>Reimbursement    Obligation</u>:    $2,587,909.38    ($2,426,508.59

6  principal, $142,558.79 accrued interest from 9/21/06, $18,842.00 unpaid letter of credit

7  fees).  The interest rate is Prime+3.00% (currently 11.25%), and the current per diem is

8  $758.28393.

9        b.    <u>Interest Rate Swap Termination Fee</u>:  $287,267.94 ($272,746.10

10  principal, $14,521.84 accrued interest from 9/22/06).  The interest rate is Prime+2.00%

11  (currently 10.25%), and the current per diem is $77.65688.

12        c.    <u>Attorney Fees</u>:  $133,464 incurred in connection with the Trinity

13  Court defaults and with the restructuring, redocumentation and enforcement of the

14  obligations of Villa St. Margaret and Assumption Village.

15        It is anticipated that the Trinity Court property will be sold within two years

16  of the Effective Date and the net proceeds paid to Key Bank; however, the property is

17  currently involved in litigation and it is possible that the sale may not occur.  Prior to that

18  time, Key Bank's above stated claim on the Trinity Court project will be paid in equal

19  monthly installments of $75,000, including interest at the Plan Interest Rate,

20  commencing approximately 30 days following the Effective Date, with the remaining

21  balance to be paid upon the earlier to occur of (1) the sale of the property, or (2) the two

22  year anniversary of the Effective Date.

23        **5.2.3**  <u>Villa St. Margaret</u>.  The Reorganized Debtor will assume the Key

24  Bank guaranty obligation regarding the Villa St. Margaret property and will pay on or as

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  soon as reasonably practicable, but not more than 30 days, following the Effective Date

2  the following approximate amounts advanced by Key Bank:

3                                    Letter of Credit Extension Fee due 4/22/07:    $26,000+

4                                    Bond Interest Payment due 4/5/07:    $70,000$\pm$

5                                    Bond Principal Payment due 4/5/07:    $75,000$\pm$

6  Upon such payments to Key Bank, and provided that each such payment is made within

7  90 days of the date it was contractually due, both the Debtor's guaranty obligation and

8  Village Enterprises, Inc.'s obligations to Key Bank regarding the Villa St. Margaret

9  property will be cured and reinstated in full, without default, according to their terms.

10          In addition, the Reorganized Debtor will provide funding as necessary to Village

11  Enterprises, Inc. to permit it to pay the following approximate amounts on the Villa St.

12  Margaret project as they come due:

13                                    Bond Interest Payment due 7/1/07    $ 70,000$\pm$

14                                    Bond Interest Payment due 10/1/07    $ 70,000$\pm$

15                                    Bond Interest Payment due 1/1/08    $ 70,000$\pm$

16                                    Real Property Taxes due through 7/1/07    $168,000$\pm$

17          **5.3**    **Class 5:  General Unsecured Claims**.  The holders of Allowed General

18  Unsecured Claims will receive payment from the Reorganized Debtor of the full amount

19  of their Allowed Claims,  together with interest thereon at the Plan Interest Rate from the

20  Petition Date until paid, in Cash, within 60 days following the later to occur of the

21  Effective Date or the Allowance Date.

22          **5.4**    **Class 7:  Unresolved Known Tort Claims.**

23          **5.4.1  Satisfaction of Debtor's and Reorganized Debtor's Obligation**

24  **to Pay Unresolved Known Tort Claims.**    The Debtor's liability with regard to all

25  Unresolved Known Tort Claims shall be satisfied in full by the Reorganized Debtor's

26

      **Page 26 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    agreements and other undertakings under this Plan and the Known Tort Claims Plan

2    Documents. On the Effective Date, the Reorganized Debtor will pay, or cause to be

3    paid, in Cash (1) to each holder of an Allowed Unresolved Known Tort Claims the

4    amount that is necessary to pay such Claim in full, together with all interest accrued

5    thereon to the extent provided in (a) any settlement agreement with the Debtor, (b) any

6    Final Order of the Court authorizing the payment of interest on such Claim, or

7    (c) Section 6.2 of this Plan, and (2) to the Known Tort Claims Trust the Known Tort

8    Claims Deposit.  Upon such payments, the Reorganized Debtor's obligations under this

9    Plan and the Known Tort Claims Plan Documents to make payments on account of

10   Unresolved Known Tort Claims shall terminate and be fully satisfied.  In addition to its

11   obligation to make the payments to the holders of Allowed Unresolved Known Tort

12   Claims and to the Known Tort Claims Trust (as previously described in this Section

13   5.4.1), the Reorganized Debtor shall from time to time (i) pay, or cause to be paid, to the

14   Known Tort Claims Trustee, Cash in the amount that is necessary to pay in full all

15   Known Tort Claims Administration Expenses, whenever incurred, and (ii) otherwise fulfill

16   its obligations under the Plan with regard to Unresolved Known Tort Claims and under

17   the Known Tort Claims Plan Documents.  Except as provided in the Plan, in the

18   Confirmation Order, or in the Known Tort Claims Plan Documents, neither the Debtor

19   nor the Reorganized Debtor shall have any liability or obligation to the Unresolved

20   Known Tort Claimants, the Known Tort Claims Trust, or the Known Tort Claims Trustee.

21        **5.4.2 Resolution of Unresolved Known Tort Claims.**    Except as

22   otherwise provided in the Plan, all legal and equitable rights of the Known Tort

23   Claimants with regard to Unresolved Known Tort Claims (including their right, if any, to

24   trial by jury), and the Debtor's and the Reorganized Debtor's defenses thereto, shall

25   remain unaltered.  Unless otherwise agreed by the Reorganized Debtor and by those

26

**Page 27 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Non-Settling Insurance Companies providing a defense of such Claim, each Unresolved

2    Known Tort Claim that has not been Allowed as of the Effective Date will be resolved

3    pursuant to the Litigation Procedures to the extent applicable.

4          **5.4.3  Satisfaction of Unresolved Known Tort Claims Solely from**

5    **Known Tort Claims Trust.**  On the Effective Date, each Unresolved Known Tort Claim

6    that has not been Allowed shall be irrevocably assumed by, and once Allowed, satisfied

7    solely by payment from, the Known Tort Claims Trust.  Each Known Tort Claimant

8    holding an Unresolved Known Tort Claim that has not been Allowed on the Effective

9    Date shall, within 10 days of the Allowance Date as determined pursuant to Section

10   6.4.5 of the Plan, be paid in Cash, solely from the Known Tort Claims Trust, the full

11   amount of such holder's Allowed Known Tort Claim that is not for Punitive Damages,

12   together with interest thereon at the Plan Interest Rate from the Allowance Date until

13   paid.  All Unresolved Known Tort Claims for Punitive Damages shall be subordinated, in

14   right of payment, to the prior payment in full, together with interest thereon as provided

15   herein, of all Unresolved Known Tort Claims that are not for Punitive Damages.  As

16   soon as is practicable after all Unresolved Known Tort Claims have been Allowed or

17   Disallowed, and provided that all Unresolved Known Tort Claims that have been

18   Allowed and are not for Punitive Damages, together with interest thereon as provided

19   herein, have been paid in full, each holder of an Unresolved Known Tort Claim that has

20   been Allowed for Punitive Damages shall be entitled to receive, solely from the Known

21   Tort Claims Trust, a Pro Rata share of Cash available for distribution to Known Tort

22   Claimants up to the full amount of such Allowed Claim for Punitive Damages, together

23   with interest thereon at the Plan Interest Rate from the Allowance Date until paid.

24   Except as provided in Section 6.5.13.3 of this Plan, the Known Tort Claims Deposit, any

25   investment earnings thereon, and all other amounts, if any, deposited into the Known

26

**Page 28 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Tort Claims Trust shall be used solely to pay Allowed Unresolved Known Tort Claims

2    and any taxes on the Known Tort Claims Trust's earnings; provided, however, that if the

3    Reorganized Debtor shall fail to pay any Known Tort Claims Administration Expenses

4    and such failure is not remedied within 30 days after the Known Tort Claims Trustee

5    gives the Reorganized Debtor written notice of such default under this Plan, the Known

6    Tort Claims Trustee may pay such unpaid Known Tort Claims Administration Expenses

7    from the Known Tort Claims Trust.

8         **5.4.4 Deliverables to Known Tort Claims Trustee at Closing.**    At

9    Closing, the Reorganized Debtor shall deliver, or cause to be delivered, to the Known

10   Tort Claims Trustee all of the following:

11        (a) the Known Tort Claims Trust Agreement;

12        (b) the Known Tort Claims Deposit; and,

13        (c) such other Known Tort Claims Plan Documents as may be reasonably

14   necessary or reasonably requested by the Tort Claimants Committee.

15        Each of the foregoing documents shall be dated as of the date of Closing,

16   be duly executed on behalf of the Reorganized Debtor, and be reasonably satisfactory

17   in form and content to the Tort Claimants Committee.

18        **5.5    Class 8:  Future Claims.**

19        **5.5.1  Satisfaction of Debtor's and Reorganized Debtor's Obligation**

20   **to Pay Future Claims.**   The Debtor's liability with regard to all Future Claims shall be

21   satisfied in full by the Reorganized Debtor's agreements and other undertakings under

22   this Plan and the Future Claims Plan Documents.  The Reorganized Debtor's obligation

23   under this Plan and the Future Claims Plan Documents to make payments on account

24   of Future Claims shall terminate and be fully satisfied when the Reorganized Debtor has

25   paid, or caused to be paid, in Cash to the Future Claims Trust the lesser of (a) the

26

**Page 29 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    amount that is necessary to reduce the Future Claims Cap to zero dollars, or (b) the

2    amount that is necessary to pay in full, together with interest thereon as provided

3    herein, the Allowed amounts of all Future Claims as to which, in each case, prior to or

4    on the Future Claims Bar Date, a complaint is filed or a written notice is given to the

5    Reorganized Debtor as provided in Section 5.5.2 below. In addition to its obligation to

6    make payments to the Future Claims Trust (as described in the preceding sentence),

7    the Reorganized Debtor shall from time to time (i) pay, or cause to be paid, to the

8    Future Claims Trustee or the FCR, as appropriate, in Cash the amount that is

9    necessary to pay in full all Future Claims Administration Expenses, whenever incurred,

10   and (ii) otherwise fulfill its obligations under the Plan with regard to Future Claims and

11   under the  Future Claims Plan Documents. Except as provided in the Plan, in the

12   Confirmation Order, or in the Future Claims Plan Documents, neither the Debtor nor the

13   Reorganized Debtor shall have any liability or obligation to the Future Claimants, the

14   FCR, the Future Claims Trust, or the Future Claims Trustee.

15        **5.5.2  Resolution of Future Claims.**  Except as otherwise provided in the

16   Plan, all legal and equitable rights of Future Claimants with regard to Future Claims

17   (including their right, if any, to trial by jury), and the Debtor's and the Reorganized

18   Debtor's defenses thereto, shall remain unaltered. A Future Claim shall be Disallowed

19   and the holder thereof shall not receive or retain under the Plan any payment or other

20   consideration on account of such holder's Future Claim, unless, on or before the Future

21   Claims Bar Date, the holder thereof either commences a civil action in the District Court

22   asserting the Future Claim or delivers to the Reorganized Debtor a notice in writing

23   which reasonably indicates the holder's intention to seek a monetary recovery on

24   account of the Future Claim.  Unless otherwise agreed by the Reorganized Debtor and

25   by those Non-Settling Insurance Companies providing a defense of such Claim, each

26

**Page 30 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  Future Claim will be resolved pursuant to the Litigation Procedures to the extent

2  applicable.

3        **5.5.3  Satisfaction of Future Claims Solely from Future Claims Trust.**

4  On the Effective Date, each Future Claim shall be irrevocably assumed by, and once

5  Allowed, satisfied solely by payment from, the Future Claims Trust. Each Future

6  Claimant shall be entitled to be paid in Cash, solely from the Future Claims Trust, the

7  full amount of such holder's Allowed Future Claim that is not for Punitive Damages,

8  together with interest thereon at the Plan Interest Rate from the Allowance Date until

9  paid, promptly (but in no event later than 90 days) after such Future Claim becomes

10  Allowed; provided, however, that the District Court, on motion of the FCR or any holder

11  of a Future Claim and after notice to the Reorganized Debtor, the FCR, the Future

12  Claims Trustee, and all known Future Claimants, may at any time order that holders of

13  Allowed Future Claims not for Punitive Damages receive from the Future Claims Trust a

14  distribution that is only a percentage of such holders' Allowed Claims and that the

15  Future Claims Trustee establish a reserve for the benefit of holders of unknown Future

16  Claims and of known but Disputed Future Claims, if the District Court determines that it

17  is reasonably likely that the then-existing Future Claims Cap will be insufficient to

18  enable the Future Claims Trust to pay in full all Allowed Future Claims not for Punitive

19  Damages that are reasonably expected to be asserted before the Future Claims Bar

20  Date expires.  All Future Claims for Punitive Damages shall be subordinated, in right of

21  payment, to the prior payment in full, together with interest thereon as provided herein,

22  of all Allowed Future Claims that are not for Punitive Damages.   As soon as is

23  practicable after (a) the Future Claims Bar Date has expired and (b) each Future Claim

24  has been Allowed or Disallowed, and provided that all Allowed Future Claims not for

25  Punitive Damages, together with interest thereon as provided herein, have been paid in

26

**Page 31 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   full, each holder of an Allowed Future Claim for Punitive Damages shall be entitled to

2   receive, solely from the Future Claims Trust, a Pro Rata share of Cash available for

3   distribution to Future Claimants up to the full amount of such Allowed Claim, together

4   with interest thereon at the Plan Interest Rate from the Allowance Date until paid.

5   Except as provided in Section 6.5.13.3 of this Plan, the Future Claims Deposit, any

6   investment earnings thereon, and all other amounts, if any, deposited into the Future

7   Claims Trust shall be used solely to pay Allowed Future Claims and any taxes on the

8   Future Claims Trust's earnings; provided, however, that if the Reorganized Debtor shall

9   fail to pay any Future Claims Administration Expenses and such failure is not remedied

10  within 30 days after the Future Claims Trustee or the FCR, as the case may be, gives

11  the Reorganized Debtor written notice of such default under this Plan, the Future Claims

12  Trustee may pay such unpaid Future Claims Administration Expenses from the Future

13  Claims Trust.

14       **5.5.4  Future Claims Collateral.**  The Reorganized Debtor's obligations

15  under the Plan with regard to Future Claims and under the Future Claims Plan

16  Documents shall be supported by a letter of credit or secured by a first priority security

17  interest in and lien on the Future Claims Collateral at all times from the Effective Date

18  until the twentieth anniversary of the Effective Date.  The value of the Future Claims

19  Collateral shall be reviewed and redetermined on the first anniversary of the Effective

20  Date and on each anniversary thereafter (each a "Date of Redetermination").  Unless

21  earlier released, on the twentieth anniversary of the Effective Date, the Future Claims

22  Trustee will release the Future Claims Collateral and deliver same and any related

23  documents to the Reorganized Debtor.

24

25

26
     **Page 32 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
     REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
     CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
     COMMITTEE (Dated April 9, 2007)

1          **5.5.5 Deliverables to Future Claims Trustee at Closing.** At Closing,

2 the Reorganized Debtor shall deliver, or cause to be delivered, to the Future Claims

3 Trustee all of the following:

4          (a) the Future Claims Trust Agreement;

5          (b) the Future Claims Note in the principal amount of eighteen million

6 dollars ($18,000,000);

7          (c) the Future Claims Deposit of two million dollars ($2,000,000) Cash;

8          (d) a letter or letters of credit in the initial amount of fifteen million dollars

9 ($15,000,000); and,

10          (e) such other Future Claims Plan Documents as may be reasonably

11 necessary or reasonably requested by the FCR.

12          Each of the foregoing documents shall be dated as of the date of Closing,

13 be duly executed on behalf of the Reorganized Debtor, and be reasonably satisfactory

14 in form and content to the FCR.

15          **5.6**     **Class 10: Donor and Beneficiary Claims.** All Donor and Beneficiary

16 Claims, if any, will be satisfied solely by the Reorganized Debtor's agreement under

17 Section 7.2 of this Plan.

18 **6.**     **PROVISIONS GOVERNING RESOLUTION AND PAYMENT OF UNRESOLVED**

19         **TORT CLAIMS**

20         **6.1**     **Replenishment of Cash Deposit for Unresolved Future Claims.**

21         As Allowed Claims are paid and the amount of the Future Claims Deposit is

22 reduced below one million dollars ($1,000,000), the Reorganized Debtor will, from time

23 to time, replenish the Future Claims Deposit to the lesser of (a) two million dollars

24 ($2,000,000), or (b) the outstanding balance of the Future Claims Note.

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **6.2    Post-Petition Interest.**

2    Except as otherwise set forth in Exhibit "4", interest shall accrue and be payable

3    on Tort Claims at the Plan Interest Rate from and after the Allowance Date.

4    **6.3    Mediators Settlement Offers.**  Each Known Tort Claimant holding an

5    Unresolved Known Tort Claim will receive a Mediators' settlement offer in an amount to

6    be determined by the Mediators in the Mediators' sole discretion.  If accepted by the

7    Claimant, then such Claim will be Allowed in the amount of such settlement offer and

8    paid pursuant to Section 6.5.7.

9    **6.4    Resolution of Unresolved Tort Claims.**

10    **6.4.1    Litigation Procedures.**  Each Claimant holding an Unresolved Tort

11    Claim that was not Allowed as of the Effective Date will have his or her Claim resolved

12    under the Litigation Procedures set forth in this Plan and under the case management

13    orders entered or to be entered by the Bankruptcy Court, the District Court, or the State

14    Court, as applicable.

15    **6.4.2    Litigation of Claims.**  Each Claimant holding an Unresolved Tort

16    Claim that was not Allowed as of the Effective Date will proceed with litigation of such

17    Claimant's Claim by trial in the District Court or State Court, as applicable.   The

18    Reorganized Debtor will be responsible for defending such Claims and will possess all

19    of the Debtor's rights in defense of such Claims.  Nothing in this Plan or in the Plan

20    Documents shall affect the right of any such Claimant or of the Reorganized Debtor to

21    take an appeal from any order, judgment, ruling or decree entered in any legal action or

22    other proceeding in which an Unresolved Tort Claim is being resolved or liquidated. The

23    Reorganized Debtor will honor all rights and obligations arising under the Insurance

24    Policies or applicable non-bankruptcy law of those Non-Settling Insurance Companies

25    providing a defense of such Claims.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1      **6.4.3  Future Claimants, and Known Tort Claimants Asserting a Right**

2   **to Punitive Damages, Must Have Their Claims Resolved in the District Court.**  All

3   Future Claimants, and all Known Tort Claimants asserting a right to Punitive Damages,

4   must have their Claims resolved in the District Court.  Only Known Tort Claimants who,

5   prior to the Effective Date, have elected to waive their Claims for Punitive Damages and

6   to proceed in State Court to have their Claims liquidated will be entitled to have their

7   Claims resolved in State Court.

8      **6.4.4  Jurisdiction**.  All litigation concerning Unresolved Tort Claims and

9   the Reorganized Debtor's obligations in regard thereto will be administered by and will

10  be under the jurisdiction of the District Court (or a State Court for those Claims that on

11  the Effective Date are proceeding in State Court) in accordance with this Plan and other

12  orders issued by the Bankruptcy Court, District Court, or State Court, as applicable.

13     **6.4.5  Settlement of Claims**.  The Reorganized Debtor and a Claimant

14  will be entitled to settle any Unresolved Tort Claim, subject to approval of the District

15  Court in accordance with the procedures set forth in Section 11.8 of the Plan.  Upon the

16  District Court's approval of the settlement, the Claimant will have an Allowed Claim for

17  the settlement amount as approved by the District Court.

18     **6.4.6  Withdrawal of Claims**.  A Claimant may withdraw a Claim at any

19  time on written notice to the Reorganized Debtor.  If withdrawn, the Claim will be

20  withdrawn with prejudice and may not be reasserted.

21     **6.5     Known Tort Claims Trust and Future Claims Trust**.  To effectuate the

22  terms of this Plan, a Known Tort Claims Trust and a Future Claims Trust will be

23  established consistent with the provisions of this Section 6.5.

24     **6.5.1  Purposes**.  The sole purposes of the Known Tort Claims Trust and

25  of the Future Claims Trust are (i) to enter into, accept, and enforce the terms of the Plan

26

**Page 35 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Documents; (ii) to receive, hold, and invest funds in accordance with and subject to the

2    provisions of this Plan and the Known Tort Claims Trust Agreement or the Future

3    Claims Trust Agreement, as the case may be; and (iii) to issue payments and disburse

4    funds subject to the terms of this Plan and the Known Tort Claims Trust Agreement or

5    the Future Claims Trust Agreement, as the case may be.  It is the Proponents' intention

6    that each trust qualify as a Qualified Settlement Fund pursuant to Section 468B of the

7    Internal Revenue Code and the Treasury Regulations promulgated thereunder.  Neither

8    the Known Tort Claims Trust nor the Future Claims Trust will have power or authority to

9    bring, or will be deemed to succeed to the Debtor's rights with respect to, any of the

10    Debtor Actions.

11    　　　　**6.5.2  Beneficiaries**.  The sole beneficiaries of the Known Tort Claims

12    Trust are the holders of the Unresolved Known Tort Claims whose Claims have not

13    been Allowed as of the Effective Date.  The sole beneficiaries of the Future Claims

14    Trust are the holders of Future Claims, if any; provided, however, that the FCR shall be

15    an intended beneficiary of, and shall have the right to enforce for the benefit of Future

16    Claimants, the Future Claims Trust Agreement and the other Future Claims Plan

17    Documents.

18    　　　　**6.5.3  Trustees**.  Both the Known Tort Claims Trustee and the Future

19    Claims Trustee will be Union Bank of California.  Any successor trustee for either trust

20    will be a bank organized and doing business under the laws of the United States of

21    America, any state thereof, or the District of Columbia, authorized under such laws to

22    exercise corporate trust powers, having a combined capital and surplus of at least one

23    billion dollars ($1,000,000,000), subject to supervision and examination by federal and

24    state authority.  The Known Tort Claims Trustee and Future Claims Trustee will act only

25    pursuant to the provisions of this Plan and the Known Tort Claims Trust Agreement or

26

**Page 36 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    the Future Claims Trust Agreement, as the case may be.  Neither the Known Tort

2    Claims Trustee nor the Future Claims Trustee may assign any of its rights or

3    obligations.  The Known Tort Claims Trustee will serve as the paying agent responsible

4    for distribution of payments to holders of Unresolved Known Tort Claims whose Claims

5    have not been Allowed as of the Effective Date once such Claims are Allowed.  The

6    Future Claims Trustee will serve as the paying agent responsible for distribution of

7    payments to holders of Future Claims once such Claims are Allowed.  Both the Known

8    Tort Claims Trustee and Future Claims Trustee will be entitled to receive a reasonable

9    fee and reimbursement of reasonable costs and expenses for its services, which fees

10    and expenses will be paid by the Reorganized Debtor, in each case, without reducing

11    the Reorganized Debtor's obligations under the Future Claims Note.  It is intended that

12    the costs and expenses of each trustee will be minimal and consistent with the fees and

13    expenses incurred for comparable functions.

14        **6.5.4  Resignation**.  The Known Tort Claims Trustee may resign at any

15    time upon sixty (60) days prior written notice to the Reorganized Debtor, those Known

16    Tort Claimants holding Unresolved Claims, and the District Court, provided, however,

17    that the resignation will not become effective until a successor Known Tort Claims

18    Trustee is appointed.  The Future Claims Trustee may resign at any time upon sixty (60)

19    days prior written notice to the Reorganized Debtor, the Future Claimants

20    Representative, and the District Court, provided, however, that the resignation will not

21    become effective until a successor Future Claims Trustee is appointed.

22        **6.5.5  Removal**.  The Known Tort Claims Trustee may be removed at any

23    time, with or without cause, by the Reorganized Debtor, subject to approval of the

24    District Court after notice to all beneficiaries of the Known Tort Claims Trust.  The

25    Future Claims Trustee may be removed at any time, with or without cause, by

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    agreement of the Reorganized Debtor and Future Claimants Representative, after

2    notice to all known beneficiaries of the Future Claims Trust.

3        **6.5.6  Successor Trustee**.  In the event of the resignation or removal of

4    the Known Tort Claims Trustee, or in the event the separate corporate existence of the

5    Known Tort Claims Trustee terminates (except in the event of a merger where the

6    Known Tort Claims Trustee continues to qualify as a Known Tort Claims Trustee under

7    the terms of this Plan and the Known Tort Claims Trust Agreement), a successor

8    Known Tort Claims Trustee (having the qualifications for the Known Tort Claims Trustee

9    set forth in Section 6.5.3 above) will be selected by the Reorganized Debtor, subject to

10   approval of the District Court, after notice to all beneficiaries of the Known Tort Claims

11   Trust.

12       In the event of the resignation or removal of the Future Claims Trustee, or

13   in the event the separate corporate existence of the Future Claims Trustee terminates

14   (except in the event of a merger where the Future Claims Trustee continues to qualify

15   as a Future Claims Trustee under the terms of this Plan and the Future Claims Trust

16   Agreement), a successor Future Claims Trustee (having the qualifications for the

17   Future Claims Trustee set forth in Section 6.5.3 of this Plan) will be selected by

18   agreement of the Reorganized Debtor and Future Claimants Representative, subject to

19   approval of the District Court.

20       **6.5.7  Deposit and Payment of Funds**.  All funds paid to the Known Tort

21   Claims Trustee pursuant to this Plan (other than payments for Known Tort Claims

22   Administration Expenses) shall be deposited in the Known Tort Claims Trust.   The

23   Known Tort Claims Trustee shall invest all funds that are deposited in the Known Tort

24   Claims Trust as directed by the Reorganized Debtor, subject to the limitations set forth

25   in Section 6.5.8 herein.  All payments that are to be made to Known Tort Claimants

26

**Page 38 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  holding Unresolved Known Tort Claims whose Claims have not been Allowed as of the

2  Effective Date, will be paid from funds in the Known Tort Claims Trust once such Claims

3  are Allowed.

4          All funds paid to the Future Claims Trustee pursuant to this Plan (other

5  than payments for Future Claims Administration Expenses) shall be deposited in the

6  Future Claims Trust.   The Future Claims Trustee shall invest all funds that are

7  deposited in the Future Claims Trust as directed by the Reorganized Debtor, subject to

8  the limitations set forth in Section 6.5.8 of this Plan.  All payments that are to be made

9  to Future Claimants, once their Claims are Allowed, will be paid from funds in the Future

10  Claims Trust.

11          **6.5.8   Financial Management of Trust Assets.**

12          **6.5.8.1 Establishment of Accounts.** All funds received by the

13  Known Tort Claims Trustee will be deposited in a trust account.  The Known Tort Claims

14  Trustee will establish sub-accounts as are necessary to hold, manage, invest, and

15  distribute funds in accordance with this Plan and the Known Tort Claims Trust

16  Agreement.  All funds received by the Future Claims Trustee will be deposited in a trust

17  account.  The Future Claims Trustee will establish sub-accounts as are necessary to

18  hold, manage, invest, and distribute funds in accordance with this Plan and the Future

19  Claims Trust Agreement.

20          **6.5.8.2 Investment**.  The Known Tort Claims Trustee and the

21  Future Claims Trustee shall invest all funds of the Known Tort Claims Trust and the

22  Future Claims Trust, as the case may be, as directed by the Reorganized Debtor

23  except to the extent such directions are, in the reasonable judgment of the Trustee,

24  inconsistent with the Trustee's duty to administer and invest such funds in the

25  manner in which individuals of ordinary prudence, discretion and judgment would act

26

**Page 39 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    in the management of their own affairs, giving due regard to the purposes of the

2    Trust; provided, however, that a trustee shall not acquire or permit any of the funds

3    of the Trust to be invested in:

4         (i) any long-term debt securities, participation certificates, or similar

5    instruments unless such securities, certificates or instruments are rated "A" or higher

6    by Moody's Investors Service, Inc. ("Moody's") or "A" or higher by Standard & Poor's

7    Rating Services ("S&P's"), or have been issued or fully guaranteed as to principal

8    and interest by the United States of America or any agency or instrumentality

9    thereof;

10         (ii) any commercial paper unless rated "Prime-2" or higher by Moody's or

11    "A-2" or higher by S&P's;

12         (iii) any equity security or any equity interest in any entity; or,

13         (iv) any money market investment, certificate of deposit, time deposit or

14    banker's acceptance issued by a bank unless, in each case, it is issued by a bank

15    whose senior long-term debt is rated "A" or higher by Moody's or "A" or higher by

16    S&P's, and its term to maturity from the date of acquisition does not exceed three

17    years and one day; provided, further, that in the absence of directions from the

18    Reorganized Debtor, a Trustee may invest, with complete protection, funds of the

19    Trust in BlackRock Provident Cash Management Shares T-Fund or in one or more

20    similar money market mutual funds.

21         **6.5.9  Tax Matters**.  The Known Tort Claims Trust and Future Claims

22    Trust are expected to be tax exempt.  The Known Tort Claims Trustee and Future

23    Claims Trustee shall each timely file such income tax and other returns and statements

24    as are required to comply with applicable provisions of the Internal Revenue Code and

25    the Treasury Regulations promulgated thereunder, and of any state law and the

26

**Page 40 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    regulations promulgated thereunder. The Known Tort Claims Trustee will be responsible

2    for paying taxes on the Known Tort Claims Trust's earnings, if any, whether taxable to

3    the Known Tort Claims Trust or to the Reorganized Debtor.  The Future Claims Trustee

4    will be responsible for paying taxes on the Future Claims Trust's earnings, if any,

5    whether taxable to the Future Claims Trust or to the Reorganized Debtor. The Known

6    Tort Claims Trustee and Future Claims Trustee shall each make any election and

7    provide any information as may be necessary for the Known Tort Claims Trust and

8    Future Claims Trust to qualify as a Qualified Settlement Funds.  The Known Tort Claims

9    Trustee and Future Claims Trustee shall not take any action, or omit to take any action,

10    that could adversely affect the Known Tort Claims Trust's or Future Claims Trust's

11    qualification as a Qualified Settlement Fund.  If permitted by the Treasury Regulations

12    or state law governing Qualified Settlement Funds, elections will be filed by or on behalf

13    of the Known Tort Claims Trust and the Future Claims Trust as necessary for each to

14    be treated as a grantor trust for federal or state income tax purposes.

15           **6.5.10    Exclusive Jurisdiction and Venue in District Court**.    All

16    disputes and all other matters relating to the operation, supervision, validity,

17    enforcement, and interpretation of the Known Tort Claims Trust and Future Claims Trust

18    will be under the exclusive jurisdiction of the District Court.  The District Court will have

19    the exclusive authority to decide all disputes or questions regarding the duties or

20    authority of the Known Tort Claims Trustee or Future Claims Trustee, the investment of

21    funds in the Known Tort Claims Trust or Future Claims Trust, and the payment of Tort

22    Claims.

23           **6.5.11  Irrevocability**. The Known Tort Claims Trust and Future Claims

24    Trust will each be irrevocable.

25

26

    **Page 41 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
    REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
    CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
    COMMITTEE (Dated April 9, 2007)

1    **6.5.12  Recordation**. This Plan, the Known Tort Claims Trust Agreement,

2    and the Future Claims Trust Agreement may each be recorded in such places as the

3    Reorganized Debtor or the Future Claimants Representative deems necessary or

4    advisable.

5    **6.5.13  Termination/Dissolution**.

6    **6.5.13.1   Known Tort Claims Trust Termination/Dissolution**.

7    The Known Tort Claims Trust will terminate and be dissolved as soon as practicable

8    following the earlier to occur of the date on which (a) the Reorganized Debtor has paid

9    the Known Tort Claims Deposit to the Known Tort Claims Trust and all funds and other

10   assets held in the Known Tort Claims Trust have been distributed as required by the

11   Plan, or (b) all Unresolved Known Tort Claims have been Allowed or Disallowed and the

12   Allowed amounts of such Claims, together with interest thereon as provided herein,

13   have been paid in full.  Prior to such termination and dissolution, the Known Tort Claims

14   Trustee shall seek and obtain an order from the District Court confirming that it is

15   appropriate to terminate and dissolve the Known Tort Claims Trust.

16   **6.5.13.2   Future Claims Trust Termination/Dissolution.**   The

17   Future Claims Trust will terminate and be dissolved as soon as practicable following the

18   earlier to occur of the date on which (a) the Future Claims Note has been paid in full

19   and all funds and other assets held in the Future Claims Trust have been distributed as

20   required by the Plan, or (b) the Future Claims Bar Date has passed and each Future

21   Claim asserted by the Future Claims Bar Date pursuant to Section 5.5.2 of this Plan has

22   been Allowed or Disallowed and the Allowed amounts of all such Claims, together with

23   interest thereon as provided herein, have been paid in full.  Prior to such termination

24   and dissolution, the Future Claims Trustee shall seek and obtain an order from the

25

26

**Page 42 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    District Court confirming that it is appropriate to terminate and dissolve the Future

2    Claims Trust.

3    **6.5.13.3  Winding Up/Distribution of Excess Funds.**  Upon entry

4    of the District Court's order authorizing termination and dissolution of either the Known

5    Tort Claims Trust or Future Claims Trust, the trustee of the applicable trust will promptly

6    proceed to wind up the affairs of the trust.  Upon termination of each trust, and provided

7    that all fees and expenses of the trustee (and, in the case of the Future Claims Trust, all

8    fees and expenses of the FCR) have been paid or provided for in full, the appropriate

9    trustee will deliver all funds and other investments remaining in the trust, including any

10   investment earnings thereon, to the Reorganized Debtor.  Furthermore, if the Future

11   Claims Note and any collateral securing such note remains in possession of the trustee,

12   the trustee will deliver the original of the note and any letter of credit to the Reorganized

13   Debtor and will release any other collateral securing such note.

14   **6.5.14  No Execution**.  All funds held in the Known Tort Claims

15   Trust and Future Claims Trust will remain property of the respective trust until such

16   times as the funds have actually been paid to and received by a Person or Entity

17   entitled to receive payment pursuant to the terms of this Plan and the Known Tort

18   Claims Trust Agreement or Future Claims Trust Agreement, as the case may be.

19   Payment of Unresolved Known Tort Claims and Future Claims will be governed solely

20   by this Plan and the Tort Claims Trust Agreement or Future Claims Trust Agreement, as

21   the case may be.

22   **6.6    Insurance Claims Against Non-Settling Insurance Companies**.  The

23   Reorganized Debtor will succeed to the Debtor's rights against the Non-Settling

24   Insurance Companies, including the right to receive all Insurance Recoveries thereon.

25   Nothing in this Plan shall be construed to impair, diminish, or impact in any way the

26

**Page 43 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Debtor's or Reorganized Debtor's claims against the Non-Settling Insurance

2    Companies. Notwithstanding any other provision of this Plan, any of the Plan

3    Documents, or the Confirmation Order (including any other provision that purports to be

4    preemptory or supervening), all claims and defenses of the Debtor, the Reorganized

5    Debtor, any additional insured, and the Non-Settling Insurance Companies relating to

6    the Insurance Claims against the Non-Settling Insurance Companies, and all rights

7    (whether contractual or statutory) of the Debtor, the Reorganized Debtor, any additional

8    insured, and the Non-Settling Insurance Companies relating to the Insurance Policies

9    issued by the Non-Settling Insurance Companies, will remain unaffected by this Plan,

10   any of the Plan Documents, and the Confirmation Order. No provision of this Plan, any

11   of the Plan Documents, or the Confirmation Order will in any way operate to impair, or

12   have the effect of impairing, the Debtor's, the Reorganized Debtor's, additional

13   insured's, or the Non-Settling Insurance Companies' legal, equitable, or contractual

14   rights relating to the Insurance Policies issued by the Non-Settling Insurance

15   Companies and Insurance Claims against the Non-Settling Insurance Companies in any

16   respect. The rights of the Debtor, the Reorganized Debtor, any additional insured, and

17   the Non-Settling Insurance Companies will be determined under the Insurance Policies

18   of the Non-Settling Insurance Companies, any action regarding Insurance Coverage,

19   any settlement agreement with respect to Insurance Claims, and non-bankruptcy law,

20   as applicable. For the purposes of determining Insurance Coverage provided by the

21   Non-Settling Insurance Companies, no provision of the Plan, any of the Plan

22   Documents, or the Confirmation Order will constitute a judgment, settlement, or other

23   resolution of any individual Tort Claim, nor have any effect of res judicata, issue

24   preclusion, or of collateral estoppel, on any individual Tort Claim. Notwithstanding

25   anything in this Plan, the Plan Documents, the Confirmation Order, or an Insurance

26

**Page 44 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Policy to the contrary, where a Non-Settling Insurance Company pays in full a

2    settlement or final judgment on account of an individual Tort Claim to the Debtor or

3    Reorganized Debtor (including all related costs, defense costs, attorney fees and other

4    obligations the Insurance Company is required to pay under the applicable Insurance

5    Policy or Policies and applicable law), such payment will satisfy all of the Non-Settling

6    Insurance Company's obligations to the Debtor, the Reorganized Debtor, and the Tort

7    Claimant under the applicable Insurance Policy or Policies on account of such Tort

8    Claim, regardless of the actual payment received by the Tort Claimant from the Debtor

9    or the Reorganized Debtor.

10    **6.7    Contribution and Indemnity Claims of St. Mary's Home and Catholic**

11    **Charities.**    The Reorganized Debtor will assume the Debtor's contribution and/or

12    indemnity obligations to St. Mary's Home, Inc. and Catholic Charities, Inc., as set forth

13    in the respective settlement agreements between the Debtor and such entities as such

14    settlements are approved by the Court.

15    **7.    MEANS FOR IMPLEMENTATION OF THE PLAN**

16    **7.1    Settlement of Estate Property Litigation.**

17    The Estate Property Litigation shall be settled in a manner consistent with the

18    Plan.

19    **7.2    Structure of Reorganized Debtor.**

20    The administration of the Reorganized Debtor will continue as before

21    confirmation with the Archbishop being the sole director of the Reorganized Debtor.

22    However, the Reorganized Debtor will, not later than one-year following the Effective

23    Date, restructure under civil law the Archdiocese, the Parishes, and the Schools into

24    one or more charitable trusts, endowments, non-profit religious corporations, or other

25    charitable entities that are, under Oregon law, legally separate and distinct from the

26

**Page 45 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   Reorganized Debtor.  Furthermore, the Reorganized Debtor will, as part of and as

2   required by such restructuring, transfer property between and among any existing or

3   newly created entities, so long as any such actions do not diminish the Reorganized

4   Debtor's ability or obligation to make the payments required under the Plan or to

5   otherwise fulfill its obligations under the Plan Documents, nor diminish the Known Tort

6   Claims Trust's or Future Claims Trust's rights, or ability to enforce the Reorganized

7   Debtor's obligations, under the Plan and Plan Documents.  The Parish and Parishioners

8   Committee will remain in existence following the Effective Date for the sole purpose of

9   ensuring that the transactions contemplated by this Section, as they affect Parishes, are

10  reasonably implemented.  The Archbishop will consult the Parish and Parishioners

11  Committee in this regard; provided, however, that nothing herein is intended to diminish

12  the rights or alter the obligations of the Archbishop under ecclesiastical law with respect

13  to the restructuring.  The Parish and Parishioners Committee will be entitled to retain

14  attorneys to represent it in regard thereto, and the Reorganized Debtor will pay the

15  reasonable fees and expenses of such attorneys as and when due.

16  **7.3    Closing**.  Closing will be conducted in the offices of Sussman Shank LLP,

17  or at such other location designated by the Reorganized Debtor, on the Effective Date

18  for the purpose of the Reorganized Debtor executing and delivering the Plan

19  Documents and completing those actions necessary for the Reorganized Debtor to

20  establish the Known Tort Claims Trust and the Future Claims Trust and to fund the

21  Known Tort Claims Deposit and the Future Claims Deposit.  As soon as practicable

22  after the conditions set forth in Section 8.1 have been satisfied or waived in accordance

23  with Section 8.2, the Reorganized Debtor will give written notice of the Closing to the

24  Tort Claimants Committee, the FCR, and any Claimant, Insurance Company, or other

25  Entity that will be directly involved in the Closing.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **7.4    <u>Termination of Tort Claimants Committee</u>.**    The Tort Claimants

2    Committee shall terminate as soon as practicable after both the Closing and the

3    Effective Date have occurred.

4    **7.5    <u>Continuation of Future Claimants Representative</u>**.    Notwithstanding the

5    entry of the Confirmation Order or the occurrence of the Effective Date, the FCR shall

6    continue until he or his successor resigns or the Future Claims Trust is terminated in

7    accordance with the provisions of Section 6.5.13.2 of this Plan.    From and after the

8    Effective Date, the FCR's duty shall be generally to represent the collective interests of

9    the Future Claimants with regard to their Future Claims, and their rights to receive

10    payment on account of their Future Claims from the Future Claims Trust as and when

11    they become Allowed.    The FCR shall have no duty of any kind to give or offer legal

12    advice to any individual who is or contends he or she is a Future Claimant, make

13    available to any such individual an attorney or other professional person, or assist any

14    such individual in proving his or her own Future Claim or negotiating a settlement of

15    such Claim.    In addition to the FCR's other powers, the FCR shall be empowered to (a)

16    retain counsel and other professional advisors; (b) act as an advisor to the Future

17    Claims Trustee; (c) enforce the Future Claims Trust Agreement and the other Future

18    Claims Plan Documents, or any provisions thereof, for the benefit of Future Claimants

19    through legal proceedings or otherwise; and (d) initiate, prosecute and defend any

20    appeal arising out of or relating to (i) the Confirmation Order or the Plan, (ii) any Future

21    Claims Plan Document, or (iii) any other order or judgment entered in or relating to the

22    Case.    Upon resignation of the FCR or the termination of the Future Claims Trust,

23    without the necessity for any other or further action by any party and without court order,

24    the FCR shall be released and discharged from all further authority, duties,

25    responsibilities and obligations relating to or arising from or in connection with the Case

26    **Page 47 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    or this Plan.  All reasonable fees, costs and expenses of the FCR, including the fees

2    and expenses of the FCR's professionals, shall be Future Claims Administration

3    Expenses.

4        **7.6**    **Performance of Obligations of the Reorganized Debtor**.   The

5    Reorganized Debtor will:

6                    (a)    in the exercise of its business judgment, review all Claims

7    filed against the Estate and, if advisable, object to such Claims;

8                    (b)    in the exercise of its business judgment, investigate,

9    prosecute, settle, or dismiss all Debtor Actions and Insurance Claims not otherwise

10   resolved prior to or under this Plan.  Unless otherwise provided in this Plan or the Plan

11   Documents, the Reorganized Debtor will be entitled to receive all Debtor Action

12   Recoveries and Insurance Recoveries;

13                   (c)    honor the obligations of the Debtor under the Insurance

14   Policies of the Non-Settling Insurance Companies and applicable non-bankruptcy law;

15                   (d)    honor the obligations of the Debtor arising under any

16   settlement agreement between the Debtor and any Settling Insurance Company that

17   has been approved by the Bankruptcy Court;

18                   (e)    after the Effective Date and Closing, take all reasonable

19   steps to record as soon as reasonably possible in the real property records of each

20   county where any Parish or School property is located, a notice that the Reorganized

21   Debtor holds in trust all Parish and School real property listed in the Debtor's Statement

22   of Financial Affairs as property held for another and of the Reorganized Debtor's intent

23   under Section 7.2 of this Plan to restructure the Archdiocese, Parishes, Schools, and

24   their assets, into one or more charitable trusts, endowments, non-profit religious

25   corporations, or other charitable entities and to transfer such property between and

26

**Page 48 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   among those entities or any newly created entity as may be required by the

2   restructuring; and,

3         (f)    perform all of its obligations under this Plan and Plan

4   Documents, in each case, as and when the same become due or are to be performed.

5       **7.7**   **Objections to Claims**.

6       Objections to a Claim, as to which no objection is pending as of the Effective

7   Date, must be filed by the Claims Objection Bar Date.  Objections to such Claims may

8   be filed by the Reorganized Debtor, any Claimant, the Non-Settling Insurance

9   Companies, or any other party in interest.

10      **7.8**   **Provisions Governing Distributions**.

11      **7.8.1  Distribution Only to Holders of Allowed Claims.**  Except as

12   otherwise provided in this Section 7.8.1, distributions under this Plan and the Plan

13   Documents will be made only to the holders of Allowed Claims. Until a Disputed Claim

14   becomes an Allowed Claim, the holder of that Disputed Claim will not receive any

15   distribution otherwise provided to the Claimants under this Plan or the Plan Documents.

16   If necessary in determining the amount of a Pro Rata distribution due to the holders of

17   Allowed Claims in any class, the Reorganized Debtor, the Known Tort Claims Trustee,

18   or Future Claims Trustee, as applicable, will make the Pro Rata calculation as if all

19   Unresolved Claims were Allowed Claims in the full amount claimed or in the Estimated

20   Amount.  When an Unresolved Claim in any class becomes an Allowed Claim, the

21   Reorganized Debtor, the Known Tort Claims Trustee, or the Future Claims Trustee, as

22   applicable, will make distributions with respect to such Allowed Claim, together with any

23   allowable interest accrued on the amount of each such distribution to the date thereof,

24   net of any setoff contemplated by the order, if any, allowing such Claim and/or any

25   required withholding of applicable federal and state taxes.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **7.8.2  Transmittal of Distributions.**  Except as otherwise provided in this

2    Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be

3    made under this Plan or the Plan Documents to Claimants holding Allowed Claims will,

4    in each case, be made by the Reorganized Debtor, the Known Tort Claims Trustee, or

5    the Future Claims Trustee, as applicable, by first class United States mail, postage

6    prepaid, (a) to the latest mailing address set forth in a proof of claim filed with the

7    Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other

8    address as may be provided to the Reorganized Debtor, the Known Tort Claims

9    Trustee, or Future Claims Trustee, as applicable, by such Claimant in writing, or (b) if no

10    such proof of claim has been filed and no written notice setting forth a mailing address

11    is provided by or on behalf of such Claimant to the Reorganized Debtor, the Known Tort

12    Claims Trustee, or Future Claims Trustee, as applicable, to the mailing address set forth

13    in the schedules filed by the Debtor in this Case.  If a Claimant's distribution is not

14    mailed or is returned to the Reorganized Debtor, the Known Tort Claims Trustee, or the

15    Future Claims Trustee because of the absence of a proper mailing address, the

16    Reorganized Debtor, the Known Tort Claims Trustee or the Future Claims Trustee, as

17    the case may be, shall make a reasonable effort to locate or ascertain the correct

18    mailing address for such Claimant from information generally available to the public and

19    from such party's own records, but shall not be liable to such Claimant for having failed

20    to find a correct mailing address.

21    **7.8.3  Timing of Distributions.**  Unless otherwise agreed by the

22    Reorganized Debtor, the Known Tort Claims Trustee, or the Future Claims Trustee, as

23    applicable, and the recipient of a distribution under this Plan or the Plan Documents,

24    whenever any payment to be made is due on a day other than a Business Day, such

25

26

**Page 50 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1　payment will instead be made on the next Business Day, with interest to the extent

2　expressly contemplated by this Plan or any applicable agreement or instrument.

3　　　　**7.8.4 Form of Distributions.**　Unless otherwise agreed by the

4　Reorganized Debtor, the Known Tort Claims Trustee, or the Future Claims Trust, as

5　applicable, and the recipient of a distribution under this Plan or the Plan Documents, (a)

6　cash payments in excess of two hundred fifty thousand dollars ($250,000) to be made

7　by the Reorganized Debtor, the Known Tort Claims Trustee, or Future Claims Trustee

8　will be made by wire transfer, provided the payee will have delivered specific wire

9　transfer instructions to the Reorganized Debtor, the Known Tort Claims Trustee, or the

10　Future Claims Trustee, as applicable, not less than five Business Days prior to the date

11　on which such payment is to be made; and (b) all other cash payments to be made by

12　the Reorganized Debtor, the Known Tort Claims Trustee, or Future Claims Trustee

13　pursuant to this Plan or the Plan Documents will be made, at the option of the

14　Reorganized Debtor, Known Tort Claims Trustee, or Future Claims Trustee, by a check

15　or wire transfer.

16　　　　**7.8.5 Tax Identification Numbers.**　Prior to receiving any distribution

17　under this Plan, the Known Tort Claims Trust Agreement, or Future Claims Trust

18　Agreement, each Claimant, and their attorney, if any, will each provide the Reorganized

19　Debtor, the Known Tort Claims Trustee, or Future Claims Trustee, as applicable, with

20　written notification or confirmation of their respective federal tax identification number or

21　social security number on Internal Revenue Service Form W-9.

22　　　　**7.8.6 No Professional Fees or Expenses.**　No professional fees or

23　expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor,

24　the Known Tort Claims Trustee, or the Future Claims Trustee with respect to any Claim

25　except as specified in this Plan, the Known Tort Claims Trust Agreement, or Future

26

**Page 51 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Claims Trust Agreement, and as Allowed by Final Order of the Bankruptcy Court or

2    District Court, as applicable.

3        **7.9    Closing of the Case.**

4        As soon as practicable after the Effective Date, when the Reorganized Debtor

5    deems appropriate, the Reorganized Debtor shall seek authority from the Court to close

6    the Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided,

7    however, that entry of a final decree closing the Case shall, whether or not specified

8    therein, be without prejudice to the right of the Reorganized Debtor or other party in

9    interest to reopen the Case for any matter over which the Court or District Court has

10   retained jurisdiction under this Plan.  Any order closing this Case will provide that the

11   Bankruptcy Court or District Court, as appropriate, (i) will retain jurisdiction to enforce,

12   by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this

13   Case, and the obligations created by this Plan and the Plan Documents; and (ii) will

14   retain all other jurisdiction and authority granted to it under this Plan and the Plan

15   Documents.

16   **8.    CONDITIONS PRECEDENT.**

17       **8.1    Conditions to Effectiveness**.  The Effective Date will not occur and the

18   Plan will not become effective unless and until each of the following conditions have

19   been satisfied or waived in accordance with Section 8.2. of this Plan:

20       (a)    the Bankruptcy Court shall have entered an order pursuant to Rule

21   23 of the Federal Rules of Civil Procedure approving the settlement of the Estate

22   Property Litigation;

23       (b)    the Bankruptcy Court shall have entered a Final Order or Final

24   Orders approving all settlement agreements between the Debtor and the Settling

25   Insurance Companies and any appropriate judgments consistent therewith;

26
     **Page 52 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
     REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
     CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
     COMMITTEE (Dated April 9, 2007)

1    (c)    the Bankruptcy Court shall have entered such orders as may be

2    necessary or appropriate to approve the settlements between the Debtor and those

3    Claimants who have settled their Claims;

4    (d)    the Bankruptcy Court shall have entered the Confirmation Order in

5    form and substance reasonably acceptable to the Proponents and Allied Irish Banks,

6    p.l.c., which shall, among other things, approve the Plan Documents required to

7    consummate the Closing; and,

8    (e)    no stay of the Confirmation Order shall be in effect at the time the

9    other conditions set forth in this Section 8.1 are satisfied or waived.

10    **8.2**    **Waiver of Conditions**.  Any condition set forth in Section 8.1 of this Plan

11    may be waived by the mutual consent of the Proponents.

12    **9.**    **EFFECTS OF PLAN CONFIRMATION**.

13    **9.1**    **Discharge.**  Except as otherwise expressly provided in this Plan, in the

14    Plan Documents, or in the Confirmation Order, on the Effective Date pursuant to

15    Section 1141(d) of the Bankruptcy Code, the Debtor (including the Archdiocese, the

16    Parishes, and the Schools) and the Reorganized Debtor will be discharged from all

17    liability on any and all Claims and Debts, known or unknown, whether or not giving rise

18    to a right to payment or an equitable remedy, that arose, directly or indirectly, from any

19    action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or

20    obligation of the Debtor (including the Archdiocese, the Parishes, and the Schools), or

21    the Debtor's Representatives before the Effective Date, or that otherwise arose before

22    the Effective Date, including, without limitation, all interest, if any, on any such Claims

23    and Debts, whether such interest accrued before or after the date of commencement of

24    this Case, and including, without limitation, all Claims and Debts based upon or arising

25    out of Child Abuse or Sexual Misconduct, and from any liability of the kind specified in

26

**Page 53 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of

2   claim is filed or is deemed filed under Section 501 of the Bankruptcy Code, such Claim

3   is Allowed under this Plan, or the holder of such Claim has accepted this Plan.

4   Notwithstanding the foregoing, (i) nothing herein will impair or release the obligations of

5   any Non-Settling Insurance Company with respect to the Claims; and (ii) obligations

6   arising under any settlement agreement between the Debtor and any Settling Insurance

7   Company approved by the Bankruptcy Court will not be discharged.

8       **9.2    <u>Vesting</u>.**  Except as otherwise expressly provided in this Plan or in the

9   Confirmation Order, on the Effective Date, the Reorganized Debtor will be vested with

10  all of the property of the Estate free and clear of all Claims, liens, encumbrances,

11  charges and other interests of Creditors and Claimants.  As of the Effective Date, the

12  Reorganized Debtor may hold, use, dispose, and otherwise deal with such property and

13  conduct its affairs, in each case, free of any restrictions imposed by the Bankruptcy

14  Code or by the Bankruptcy Court, other than those restrictions expressly imposed by

15  the Plan, the Confirmation Order, or the Plan Documents.

16      **9.3    <u>*Exculpation And Limitation Of Liability*</u>.    *None of the Released***

17  ***Parties will have or incur any liability to, or be subject to any right of action by,***

18  ***any holder of a Claim, any other party in interest, or any of their respective***

19  ***agents, employees, representatives, financial advisors, attorneys, or affiliates, or***

20  ***any of their successors or assigns, for any act or omission in connection with,***

21  ***relating to, or arising out of the Case, including the exercise of their respective***

22  ***business judgment and the performance of their respective fiduciary obligations,***

23  ***the pursuit of confirmation of the Plan, or the administration of the Plan, except***

24  ***liability for their willful misconduct or gross negligence, and in all respects, such***

25

26

**Page 54 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1  *parties will be entitled to reasonably rely upon the advice of counsel with respect*

2  *to their duties and responsibilities under the Plan or in the context of the Case.*

3  *9.4  **Injunction Against Prosecution of Claims Against Settling Insurance***

4  ***Companies**.  In consideration of the undertakings of the Settling Insurance*

5  *Companies pursuant to their respective settlements with the Debtor, including*

6  *any of the Settling Insurance Companies' purchases of their Insurance Policies*

7  *from the Debtor free and clear of Claims and interests pursuant to Section 363(f)*

8  *of the Bankruptcy Code, and to further preserve and promote the agreements*

9  *between the Debtor and the Settling Insurance Companies and the protections*

10  *afforded the Settling Insurance Companies thereunder, and pursuant to Sections*

11  *363 and 105 of the Bankruptcy Code, all Persons or Entities which have held or*

12  *asserted, which hold or assert or which may in the future hold or assert an*

13  *Enjoined Claim are hereby permanently stayed, enjoined, and restrained from*

14  *taking any action directly or indirectly for the purposes of asserting, enforcing or*

15  *attempting to assert or enforce any Enjoined Claim, including: (i) commencing or*

16  *continuing in any manner any action or other proceeding of any kind with respect*

17  *to any Enjoined Claim against any Settling Insurance Company, its predecessors,*

18  *successors, and assigns, or their respective officers and directors,  or against the*

19  *property of any Settling Insurance Company, its predecessors, successors, and*

20  *assigns, or their respective officers and directors; (ii) enforcing, attaching,*

21  *collecting or recovering, by any manner or means, from any Settling Insurance*

22  *Company, its predecessors, successors, and assigns, or their respective officers*

23  *and directors, or from the property of any Settling Insurance Company, its*

24  *predecessors, successors, and assigns, or their respective officers and directors,*

25  *with respect to any such Enjoined Claim, any judgment, award, decree or order*

26

**Page 55 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007)

1  *against the Debtor or other Person or Entity; (iii) creating, perfecting or enforcing*

2  *any lien of any kind against any Settling Insurance Company, its predecessors,*

3  *successors, and assigns, or their respective officers and directors, or the*

4  *property of any Settling Insurance Company, its predecessors, successors, and*

5  *assigns, or their respective officers and directors, with respect to any such*

6  *Enjoined Claim; and (iv) asserting, implementing or effectuating any Enjoined*

7  *Claim of any kind against (1) any obligation due any Settling Insurance Company,*

8  *its predecessors, successors, and assigns, or their respective officers and*

9  *directors, (2) any Settling Insurance Company, its predecessors, successors, and*

10  *assigns, or their respective officers and directors, or (3) the property of any*

11  *Settling Insurance Company, its predecessors, successors, and assigns, or their*

12  *respective officers or directors, with respect to any such Enjoined Claim.*

13  **9.5**  **Term of Injunctions or Stays and Confirmation of Settlements With**

14  **Settling Insurance Companies**.  All injunctions or stays provided for in this Plan, the

15  injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all

16  injunctions or stays protecting a Settling Insurance Company and its predecessors,

17  successors, and assigns that has purchased its Insurance Policy or Policies from the

18  Debtor in a Section 363 Sale, are permanent and will remain in full force and effect

19  following the Effective Date.  Debtor's settlement agreements with the Settling

20  Insurance Companies previously authorized by the Bankruptcy Court are hereby

21  affirmed and any obligations of Debtor with respect to such settlement agreements shall

22  be assumed by the Reorganized Debtor on the Effective Date.

23  **9.6**  **Dismissal of Appeals from Bar Date Order and FCR Order**.  As soon

24  as is practicable after the Effective Date, all appeals relating to the Claims Bar Date

25

26

**Page 56 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   Order and FCR Order will be dismissed with prejudice and without costs or attorney's

2   fees to any party.

3       **9.7    Release of Fraudulent Transfer Claims.**    On the Effective Date, all

4   fraudulent transfer claims, including those arising under Sections 549 and 550 of the

5   Bankruptcy Code, against each of the Settling Insurance Companies or any entity

6   obtaining a release under any settlement agreement approved by the Bankruptcy Court

7   between the Debtor and any of the Settling Insurance Companies will be deemed

8   released.

9   **10.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

10      **10.1   Assumed Employee and Retiree Benefit Plans and Collective**

11  **Bargaining Agreements.** To the extent such agreements or plans have not been

12  previously assumed, all employee and retiree benefit plans and all collective bargaining

13  agreements will be deemed assumed by the Reorganized Debtor on the Effective Date.

14      **10.2   General; Assumed if Not Rejected.**    Subject to the requirements of

15  Section 365, all executory contracts and unexpired leases of the Debtor that have not

16  been rejected by order of the Bankruptcy Court or are not the subject of a motion to

17  reject pending on the Confirmation Date will be deemed assumed by the Reorganized

18  Debtor on the Effective Date. If any party to an executory contract or unexpired lease

19  that is being assumed objects to such assumption, the Bankruptcy Court may conduct a

20  hearing on such objection on any date that is either mutually agreeable to the parties or

21  fixed by the Bankruptcy Court.  All payments to cure defaults that may be required

22  under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized

23  Debtor.  In the event of a dispute regarding the amount of any such payments, or the

24  ability of the Debtor to provide adequate assurance of future performance, the

25

26
    **Page 57 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
    REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
    CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
    COMMITTEE (Dated April 9, 2007)

1    Reorganized Debtor will make any payments required by Section 365(b)(1) of the

2    Bankruptcy Code after the entry of the Final Order resolving such dispute.

3    **10.3  Claims for Contract Rejection.**  All proofs of claim with respect to Claims

4    arising from the rejection of executory contracts or unexpired leases pursuant to

5    Section 10.2 of this Plan must be filed with the Bankruptcy Court within 30 days after

6    the Effective Date or such Claims will be forever barred. If any order providing for the

7    rejection of an executory contract or unexpired lease (other than rejection effected

8    pursuant to Section 10.2 of this Plan) did not provide a deadline for the filing of Claims

9    arising from such rejection, proofs of claim with respect thereto must be filed within 30

10    days after the later to occur of (a) the Effective Date or, (b) if the order is entered after

11    the Effective Date, the date such order becomes a Final Order, or such Claims will be

12    forever barred.

13    **11.  MISCELLANEOUS PROVISIONS.**

14    **11.1  Retention of Jurisdiction.**  Notwithstanding entry of the Confirmation

15    Order or the occurrence of the Effective Date, and except as otherwise specifically set

16    forth in this Section 11.1, the Bankruptcy Court will retain jurisdiction over all matters

17    arising under, in furtherance of, or in connection with this Plan, including those matters

18    specifically described in this Section 11.1 below.  The District Court shall have exclusive

19    jurisdiction over those matters specifically set forth in Sections 6.4.4 and 6.5.10 of the

20    Plan.

21    The matters over which the Bankruptcy Court shall retain jurisdiction include:

22    (a)  the determination of objections to Disputed Claims, provided that

23    (i) those State Courts that on the Effective Date are exercising jurisdiction over

24    Unresolved Known Tort Claims shall retain jurisdiction for purposes of resolving such

25    Claims, and (ii) the District Court shall have and retain jurisdiction for finally resolving all

26

**Page 58 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007)

1    Unresolved Known Tort Claims that on the Effective Date are not under the jurisdiction

2    of State Courts and for determining and resolving all Future Claims;

3          (b)    the determination of requests for payment of Claims entitled to

4    priority under Section 507 of the Bankruptcy Code, including compensation of and

5    reimbursement of expenses of parties entitled thereto;

6          (c)    subject to the District Court's exclusive jurisdiction over those

7    matters set forth in Section 6.5.10 of the Plan, the resolution of controversies and

8    disputes regarding interpretation and implementation of this Plan and the Plan

9    Documents;

10         (d)    subject to the District Court's exclusive jurisdiction over those

11    matters set forth in Section 6.5.10 of the Plan, the granting of relief in aid of this Plan

12    and the Plan Documents including, without limitation, the entry of appropriate orders

13    (which may include contempt or other sanctions) to protect the Reorganized Debtor, the

14    Settling Insurance Companies, and  the Released Parties from actions prohibited under

15    this Plan or the Plan Documents;

16         (e)    amendments to and modifications of this Plan;

17         (f)    subject to the limitations and exclusions described above, the

18    determination of any and all applications, adversary proceedings, and contested or

19    litigated matters pending on the Effective Date; and

20         (g)    the closure of this Case pursuant to Section 7.9 of this Plan.

21    **11.2    Modification of Plan.**  The Proponents reserve the right, in accordance

22    with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of

23    the Confirmation Order. After the entry of the Confirmation Order, the Proponents may,

24    upon order, amend or modify this Plan in accordance with Section 1127(b) of the

25    Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    this Plan in such manner as may be necessary to carry out the purpose and intent of

2    this Plan.

3    **11.3    <u>Severability.</u>**    In the event of a successful collateral attack on any

4    provision of this Plan (i.e., an attack other than through a direct appeal of the

5    Confirmation Order), the remaining provisions of this Plan will remain binding on the

6    Debtor, the Reorganized Debtor, all Claimants, all Creditors, and all other parties in

7    interest.

8    **11.4    <u>Post-Confirmation Professional Fees and Expenses</u>.**    All professional

9    fees and expenses incurred or payable by the Reorganized Debtor after the Effective

10    Date will be paid in the ordinary course of business of the Reorganized Debtor without

11    the need for approval of the Bankruptcy Court or the District Court. The Bankruptcy

12    Court and the District Court, as applicable, will retain jurisdiction to resolve any dispute

13    with respect to such fees or expenses upon application by the affected professional or

14    the Reorganized Debtor.

15    **11.5    <u>Headings.</u>**    The headings of the sections and paragraphs of this Plan are

16    inserted for convenience only and will not affect the interpretation hereof.

17    **11.6    <u>Computation of Time Periods</u>.**    In computing any period of time

18    prescribed or allowed by this Plan, the day of the act, event, or default from which a

19    designated period of time begins to run will not be included. The last day of the period

20    so computed will be included so long as it is a Business Day. When the period of time

21    prescribed or allowed is less than 11 days, any day that is not a Business Day will be

22    excluded in the computation.

23    **11.7    <u>Notices.</u>**    All notices or requests to the Reorganized Debtor in connection

24    with this Plan shall be in writing and served either by (i) United States mail, postage

25

26

**Page 60 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges

2    prepaid, and shall be deemed given when received by the following parties:

3    Archdiocese of Portland in Oregon
     2838 East Burnside
4    Portland, OR  97214
     Attn:  Director Of Business Affairs
5
     **With copies to:**
6
     Sussman Shank LLP
7    1000 SW Broadway, Suite 1400
     Portland, OR  97205
8    Attention: Thomas W. Stilley

9    All notices and requests to a Person or Entity holding any Claim will be sent to

10   them at their last known address or to the last known address of their attorney of record.

11   The Debtor or Reorganized Debtor and any holder of a Claim may designate in writing

12   any other address, which designation will be effective upon actual receipt by the Debtor

13   or the Reorganized Debtor, or by the holder of the Claim.  Any Person or Entity entitled

14   to receive notice under this Plan will have the obligation to provide the Reorganized

15   Debtor with such Person's or Entity's current address for notice purposes.   The

16   Reorganized Debtor will have no obligation to attempt to locate a more current address

17   in the event any notice proves to be undeliverable to the most recent address which has

18   been provided to the Reorganized Debtor.

19   **11.8   Post-Confirmation Court Approval.**   Any action requiring Bankruptcy

20   Court, District Court, or State Court approval after the Effective Date will require the

21   Person or Entity seeking such approval to file an application, motion, or other request

22   with the Bankruptcy Court, District Court, or State Court, as applicable, and obtain a

23   Final Order approving such action before the requested action may be taken.   The

24   Person or Entity filing such application, motion, or other request shall serve such

25   application, motion, or other request, together with a notice setting forth the time in

26
     **Page 61 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
     REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
     CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
     COMMITTEE (Dated April 9, 2007)

1    which objections must be filed with the court, on the Reorganized Debtor, all Tort

2    Claimants having filed Claims or a lawsuit asserting a Claim (or having given written

3    notice to the Reorganized Debtor in the case of Future Claims) whose Claims have not

4    been paid in full, the Future Claimants Representative, the Known Tort Claims Trustee,

5    and the Future Claims Trustee by first-class mail, electronic mail, overnight courier,

6    facsimile, or hand delivery.  Unless the court orders otherwise, all notices shall provide

7    the recipients at least 20 days (plus 3 days if served by mail) in which to file an objection

8    to the application, motion, or other request.  If no objection is timely filed, the court may

9    authorize the proposed action without further notice or a hearing.  If an objection is

10    timely filed, the court will determine whether to conduct a hearing, or to require the

11    submission of further documentation, prior to ruling on the application, motion, or other

12    request.

13    **11.9    Election Pursuant to Section 1129(b) of the Bankruptcy Code.**  The

14    Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the

15    Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the

16    Bankruptcy Code, except paragraph (a)(8) thereof, are met with regard to the Plan.  In

17    determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code

18    have been met, any Class or subclass of a Class that does not contain as an element

19    thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018

20    as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this

21    Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject

22    this Plan and for purposes of determining acceptance or rejection of this Plan by such

23    Class or subclass.

24    **11.10  Consumation of the Plan.**  The Proponents reserve the right to request

25    that the Confirmation Order include (i) a finding by the Court that Bankruptcy Rule

26

**Page 62 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   3020(e) shall not apply to the Confirmation Order, and (ii) the Court's authorization for

2   the Proponents to consummate the Plan immediately after entry of the Confirmation

3   Order.

4        **11.11** __Exemption from Transfer Taxes__.   Pursuant to Section 1146(c) of the

5   Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in

6   furtherance of, or in connection with this Plan, whether occurring prior or subsequent to

7   the Confirmation Date, including any deeds, bills of sale or assignments executed in

8   connection with any disposition of assets contemplated by this Plan, shall not be subject

9   to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar

10  tax.

11       **11.12** __Waivers__.   Except as otherwise provided in the Plan or in the Confirmation

12  Order, any term of the Plan may be waived by the party benefited by the term to be

13  waived.

14       **11.13** __Setoffs, Recoupments and Defenses__.   Nothing contained in the Plan

15  shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment,

16  or of any defense, it may have with respect to any Claim (including, without limitation,

17  rights under Section 502(d)) of the Bankruptcy Code.   Except as otherwise provided in

18  the Plan or in the Confirmation Order or in agreements previously approved by a Final

19  Order, the Reorganized Debtor may, but will not be required to, set off against any

20  Claim or any distributions with respect to such Claim any and all of the claims, rights

21  and causes of action of any nature that the Debtor or the Reorganized Debtor, as

22  applicable, may hold against the holder of such Claim; provided, however, that neither

23  the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of

24  any distribution hereunder or any other action or omission of the Reorganized Debtor,

25  nor any provision of the Plan, shall constitute a waiver or release by the Debtor or the

26

**Page 63 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1    Reorganized Debtor, as applicable, of any such claims, rights and causes of action that

2    the Debtor or the Reorganized Debtor, as applicable, may possess against such holder.

3    **11.14 <u>Compromise of Controversies</u>.** In consideration for the classification,

4    distributions and other benefits provided under the Plan, the provisions of the Plan shall

5    constitute a good faith compromise and settlement of all Claims or controversies

6    resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the

7    Court's approval of each of the compromises and settlements provided for in the Plan,

8    and the Court's findings shall constitute its determination under the standards of

9    Bankruptcy Rule 9019 that such compromises and settlements are in the best interests

10    of the Debtor and the Estate.  The Debtor expressly reserves the right (with Court

11    approval, following appropriate notice and opportunity for a hearing) to compromise and

12    settle other Claims and Debtor Actions up to and including the Effective Date.

13    **11.15 <u>Withdrawal or Revocation of the Plan</u>.** The Proponents reserve the

14    right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is

15    revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no

16    force and effect and in such event nothing contained herein shall be deemed to

17    constitute a waiver or release of any claims by or against the Estate or any other Person

18    or Entity, or to prejudice in any other manner the rights of the Proponents, or any of

19    them, or any other entity in further proceedings involving the Debtor and specifically

20    shall not modify or affect the rights of any party under any prior orders of the Court.

21    **11.16 <u>Default</u>.** Except as otherwise provided in the Plan or in the Confirmation

22    Order, in the event that the Reorganized Debtor, the Known Tort Claims Trustee or the

23    Future Claims Trustee shall default in the performance of any of their obligations under

24    the Plan or under any of the Plan Documents and shall not have cured such a default

25    within any applicable cure period (or, if no cure period is specified in the Plan or Plan

26

**Page 64 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

1   Documents or in any instrument issued to or retained by a Claimant under the Plan,
2   then within 30 days after receipt of written notice of default), then the entity to whom the
3   performance is due may pursue such remedies as are available at law or in equity.  An
4   event of default occurring with respect to one Claim shall not be an event of default with
5   respect to any other Claim.

6       **11.17  <u>Filing and Payment of Allowed Administrative Claims</u>**.  All requests for
7   the payment of Administrative Claims, including applications for the compensation of the
8   FCR and Chapter 11 Professionals, must be filed with the Bankruptcy Court no later
9   than 30 days after the Effective Date or at such time as the Bankruptcy Court may
10  otherwise order.  Once a Final Order is entered Allowing a Disputed Administrative
11  Claim, the Reorganized Debtor will pay such Claim in accordance with this Plan.

12      **11.18  <u>Payment of United States Trustee Fees</u>**.  All fees due to the United
13  States Trustee pursuant to 28 USC §1930(a) accruing after the Effective Date will be
14  paid by the Reorganized Debtor as and when they become due and will be based on
15  the Reorganized Debtor's total disbursements, including ordinary course of business
16  disbursements as well as disbursements made directly to Claimants under this Plan.
17  Such fee obligations will not terminate until this Case is converted or dismissed, or until
18  this Case is no longer pending upon entry of a Final Order closing this Case, whichever
19  first occurs.

20      **11.19  <u>Governing Law</u>.**  Except to the extent that federal law (including the
21  Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising
22  under the Plan or under the Plan Documents shall be governed by and construed and
23  enforced in accordance with the laws of the State of Oregon without giving effect to the
24  principles of conflicts of laws thereof.

25

26
    **Page 65 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
    REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
    CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
    COMMITTEE (Dated April 9, 2007)

1    **11.20   Reservation of Rights.**  If the Plan is not confirmed by a Final Order, or if

2    the Plan is confirmed and the Effective Date does not occur, the rights of all parties in

3    interest in the Case are and will be reserved in full.   Any concessions or settlement

4    reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not

5    become effective, no party in interest in the Case shall be bound or deemed prejudiced

6    by any such concession or settlement.

7    **11.21   Plan Controls.**  To the extent any provision of the Plan Documents is

8    inconsistent with this Plan, the provisions of the Plan shall control.

9    **11.22   Successors and Assigns.**  The Plan shall be binding upon and inure to

10   the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in

11   interest affected thereby and their respective successors, heirs, legal representatives

12   and assigns.

13   **11.23   Exhibits.**  All Exhibits to this Plan are incorporated into and are a part of

14   this Plan as if set forth in full herein.

15   **DATED:**  April 9, 2007

16                              **{SIGNATURES TO FOLLOW}**

17

18

19

20

21

22

23

24

25

26

**Page 66 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF
REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE
CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS
COMMITTEE (Dated April 9, 2007)

**ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, and successors, a corporation sole,**

*/s/ John G. Vlazny*

By: John G. Vlazny
Its:  Sole Director

**TORT CLAIMANTS COMMITTEE**

*/s/ Donn Christiansen*

By: Donn Christiansen, Chairperson

**PARISH AND PARISHIONERS COMMITTEE**

*/s/ John Rickman*

By:  John Rickman, Chairperson

**TONKON TORP LLP**

*/s/ Albert N. Kennedy*

By:  Albert N. Kennedy, OSB No. 82142
Attorneys for Tort Claimants
Committee

**PERKINS COIE LLP**

*/s/ Douglas R. Pahl*

By:  Douglas R. Pahl, OSB No. 95047
Attorneys for Parish and Parishioners
Committee

**FUTURE CLAIMANTS REPRESENTATIVE**

*/s/ David A. Foraker*

By:  David A. Foraker

**SUSSMAN SHANK LLP**

*/s/ Thomas W. Stilley*

By: Thomas W. Stilley, OSB No. 88316
Attorneys for Roman Catholic
Archbishop of Portland in Oregon,
and successors, a corporation sole

**GREENE & MARKLEY PC**

*/s/ David A. Foraker*

By: David A. Foraker, OSB No. 81228
Attorneys for Future Claimants
Representative

F:\CLIENTS\14961\004\PLAN & DISCLOSURE STATEMENT\P-THIRD AMENDED JOINT PLAN (FINAL FORM).DOC

**Page 67 of 67** – THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND PARISHIONERS COMMITTEE (Dated April 9, 2007)

## KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 008 | 114 | 146 |
| 064 | 115 | 147 |
| 065 | 116 | 153 |
| 066 | 117 | 154 |
| 067 | 118 | 156 |
| 068 | 122 | 157 |
| 069 | 129 | 158 |
| 070 | 130 | 164 |
| 071 | 131 | 165 |
| 072 | 132 | 166 |
| 073 | 133 | 170 |
| 074 | 134 | 181 |
| 093 | 135 | 182 |
| 095 | 136 | 183 |
| 097 | 138 | 184 |
| 109 | 139 | 185 |
| 110 | 142 | 186 |
| 111 | 143 | 187 |
| 112 | 144 | 188 |
| 113 | 145 | 189 |

Exhibit _1_
Page _1_ of _5_

## KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
|:---:|:---:|:---:|
| 195 | 216 | 249 |
| 196 | 217 | 252 |
| 197 | 218 | 257 |
| 198 | 219 | 258 |
| 199 | 220 | 259 |
| 200 | 221 | 261 |
| 201 | 222 | 262 |
| 202 | 227 | 263 |
| 203 | 228 | 266 |
| 204 | 231 | 268 |
| 205 | 232 | 269 |
| 206 | 233 | 270 |
| 207 | 234 | 271 |
| 208 | 238 | 272 |
| 209 | 239 | 274 |
| 210 | 240 | 275 |
| 211 | 243 | 276 |
| 212 | 244 | 277 |
| 213 | 246 | 278 |
| 214 | 247 | 279 |
| 215 | 248 | 280 |

Exhibit _1_
Page _2_ of _5_

## KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 282 | 308 | 334 |
| 283 | 309 | 431 |
| 284 | 311 | 432 |
| 285 | 312 | 433 |
| 287 | 313 | 434 |
| 288 | 314 | 435 |
| 289 | 315 | 436 |
| 291 | 316 | 437 |
| 293 | 317 | 438 |
| 294 | 319 | 439 |
| 295 | 320 | 440 |
| 297 | 321 | 441 |
| 298 | 322 | 442 |
| 299 | 324 | 443 |
| 300 | 325 | 444 |
| 302 | 326 | 445 |
| 303 | 328 | 446 |
| 304 | 330 | 447 |
| 305 | 331 | 448 |
| 306 | 332 | 449 |
| 307 | 333 | 450 |

Exhibit  1
Page  3  of  5

## KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 456 | 549 | 855 |
| 457 | 550 | 856 |
| 458 | 552 | 857 |
| 459 | 553 | 858 |
| 460 | 554 | 859 |
| 461 | 624 | 861 |
| 462 | 832 | 863 |
| 463 | 833 | 864 |
| 465 | 834 | 865 |
| 466 | 835 | 866 |
| 467 | 836 | 867 |
| 468 | 842 | 868 |
| 469 | 843 | 869 |
| 470 | 844 | 870 |
| 471 | 845 | 871 |
| 472 | 847 | 872 |
| 473 | 848 | 873 |
| 474 | 850 | 874 |
| 475 | 853 | 895 |
| 476 | 854 | |
| 548 | | |

Exhibit  1
Page  4  of  5

## KNOWN TORT CLAIMS

No. of POCs: 246*  +  2 claims (see below) = 248

*Total (248) includes 30 duplicate claims (i.e., the same individual filed more than one proof of claim)

The plaintiffs in the following lawsuits did not file a POC in the Bankruptcy Court:

SE and TB v. Archdiocese of Portland, et al (Multnomah County Circuit Court Case #0301-00132)

Cameo Garrett v. Ansgar Santogrossi, et al (Marion County Circuit Court Case #03C20817)

Exhibit  1
Page  5  of  5

## SETTLED KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
|:---:|:---:|:---:|
| 008 | 116 | 164 |
| 064 | 117 | 165 |
| 065 | 118 | 166 |
| 067 | 129 | 170 |
| 068 | 130 | 181 |
| 069 | 131 | 182 |
| 070 | 132 | 183 |
| 071 | 133 | 184 |
| 072 | 134 | 185 |
| 073 | 135 | 187 |
| 074 | 136 | 188 |
| 093 | 139 | 189 |
| 097 | 142 | 195 |
| 109 | 144 | 196 |
| 110 | 145 | 197 |
| 111 | 146 | 198 |
| 112 | 153 | 199 |
| 113 | 156 | 200 |
| 114 | 157 | 201 |
| 115 | 158 | 202 |

Exhibit  2
Page  1  of  4

## SETTLED KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 203 | 266 | 316 |
| 204 | 268 | 319/320/321/322 |
| 205 | 274 | 325 |
| 206 | 276 | 326 |
| 207 | 279 | 328 |
| 208 | 280 | 330 |
| 209 | 284 | 334 |
| 211 | 285 | 431 |
| 212 | 287 | 439 |
| 215 | 294 | 440 |
| 217 | 295/307 | 441 |
| 219 | 297 | 443 |
| 222 | 298 | 444 |
| 232 | 299 | 445 |
| 234 | 302/858 | 447 |
| 244 | 303 | 448 |
| 247 | 305 | 449/450 |
| 249 | 306 | 457 |
| 252 | 309 | 458 |
| 259 | 312 | 459 |
| 263 | 315 | 463 |

Exhibit __2__
Page __2__ of __4__

## SETTLED KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # |
|---|---|
| 465 | 873 |
| 466 | 874 |
| 467 | 895 |
| 470/624 | |
| 472 | |
| 548 | |
| 549 | |
| 550 | |
| 552/861 | |
| 835 | |
| 842 | |
| 844 | |
| 845 | |
| 848 | |
| 853 | |
| 854 | |
| 855 | |
| 856 | |
| 870 | |
| 871 | |
| 872 | |

Exhibit  2
Page  3  of  4

<u>SETTLED KNOWN TORT CLAIMS</u>

No. of POCs:  155*

*Total (155) includes 8 duplicate claims (i.e, the same individual filed more than one
proof of claim).

Exhibit  2
Page  4  of  4

## UNRESOLVED KNOWN TORT CLAIMS

| Proof of Claim # | Proof of Claim # |
|---|---|
| 095 | 473 |
| 143 | 474 |
| 220 | 475 |
| 243/331 | 476 |
| 261/553 | 843 |
| 262/324 | 857 |
| 278 | Sherry Ervin |
| 283 | |
| 291/859 | |
| 293 | |
| 311 | |
| 317 | |
| 432 | |
| 433 | |
| 434 | |
| 435 | |
| 436 | |
| 438 | |
| 442 | |
| 446 | |

Exhibit  3
Page  1  of  2

## UNRESOLVED KNOWN TORT CLAIMS

No. of POCs:  30* + 1 claim (see below) = 31

*Total (31) includes 4 duplicate claims (i.e., the same individual filed more that one proof of claim).

The plaintiffs in the following lawsuits did not file a POC in the Bankruptcy Court:

SE and TB v. Archdiocese of Portland, et al (Multnomah County Circuit Court Case #0301-00132)

Exhibit  3
Page  2  of  2

**Exhibit 4**

**Post Petition Interest on Tort Claims (Section 6.2)**

1.    For Claim No. 139, interest will accrue on the Allowed amount of such Claim ($1,300,000) at 10% per annum from September 1, 2004, until such Claim, including accrued interest, has been paid in full;

2.    For Claim No. 302, interest will accrue on the Allowed amount of such Claim ($347,698) at the rate of $44 per day from July 6, 2004 until August 18, 2005, and from August 18, 2005 at the rate of $57.15 per day until such Claim has been paid in full. If such Claim has not been paid if full on or before May 1, 2007, interest will accrue on the unpaid balance of the Allowed amount of such Claim at the rate of 9% per annum from and after May 1, 2007 until such Claim has been paid in full;

3.    For Claim No. 113, interest will accrue on the Allowed amount of such Claim ($300,000) at the rate of 6% per annum from the Petition Date until such Claim, including accrued interest, has been paid in full.   If such Claim has not been paid if full on or before May 1, 2007, interest will accrue on the unpaid balance of the Allowed amount of such Claim at the rate of 9% per annum from and after May 1, 2007 until such Claim has been paid in full;

4.    For those Claims listed on this Exhibit "4" page 3, interest will accrue on the unpaid balance of the Allowed amount of each Claim at the rate of 6% per annum from May 1, 2006, until the unpaid balance of each Claim, including accrued interest, is paid in full. Interest will accrue on such Claims at the rate of 9% per annum from and after May 1, 2007 for each Claim that has not been paid in full on that date; and,

5.    For those Claims listed on this Exhibit "4" pages 4 to 6, no interest will be payable if the Allowed amount of each such Claim is paid in full by May 1, 2007;

1

Exhibit    4

Page   1   of   6

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

however, if any Claim is not paid by May 1, 2007, interest will accrue on the unpaid balance of the Allowed amount of each such Claim at the rate of 9% per annum from and after May 1, 2007, until such Claim has been paid in full.

*The Proponents reserve the right to modify this Exhibit to the extent necessary to correct any mistakes or to update the Exhibit to reflect additional settled claims.*

F:\CLIENTS\14961\004\PLAN & DISCLOSURE STATEMENT\EXHIBIT 4 TO JOINT PLAN (02-15-07).DOC

2

Exhibit ___4___
Page __2__ of __4__

## Exhibit 4:  Section 4

*Proof of Claim #*

008

116

118

144

156

157

181

183

184

188

198

200

201

202

203

204

207

208

211

*12/18/2006   2:58 PM*

Exhibit  4
Page  3  of  6

## Exhibit 4:  Section 5

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 064 | 130 | 195 |
| 065 | 131 | 196 |
| 067 | 132 | 197 |
| 068 | 133 | 199 |
| 069 | 134 | 205 |
| 070 | 135 | 206 |
| 071 | 136 | 209 |
| 072 | 142 | 212 |
| 073 | 145 | 215 |
| 074 | 146 | 217 |
| 093 | 153 | 219 |
| 097 | 158 | 222 |
| 109 | 164 | 232 |
| 110 | 165 | 234 |
| 111 | 166 | 244 |
| 112 | 170 | 247 |
| 114 | 182 | 249 |
| 115 | 185 | 252 |
| 117 | 187 | 259 |
| 129 | 189 | 263 |

12/18/2006   3:03 PM

Exhibit  4
Page  4 of  6

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
|---|---|---|
| 266 | 319 | 465 |
| 268 | 320 | 466 |
| 274 | 321 | 467 |
| 276 | 322 | 470 |
| 279 | 325 | 472 |
| 280 | 326 | 548 |
| 284 | 328 | 549 |
| 285 | 330 | 550 |
| 294 | 334 | 552 |
| 295 | 431 | 624 |
| 297 | 439 | 835 |
| 298 | 440 | 842 |
| 299 | 443 | 844 |
| 303 | 444 | 845 |
| 305 | 445 | 848 |
| 306 | 447 | 853 |
| 307 | 448 | 854 |
| 309 | 449 | 855 |
| 312 | 457 | 856 |
| 315 | 458 459 | 861 |
| 316 | 463 | 863 |

*12/18/2006   3:03 PM*

Exhibit  4
Page  5  of  6

| Proof of Claim # | Proof of Claim # | Proof of Claim # |
| --- | --- | --- |
| 864 | | |
| 865 | | |
| 866 | | |
| 867 | | |
| 868 | | |
| 869 | | |
| 870 | | |
| 871 | | |
| 872 | | |
| 873 | | |
| 874 | | |
| 895 | | |

12/18/2006  3:03 PM

Exhibit __4__

Page _6_ of _6_

1                     <u>CERTIFICATE OF SERVICE</u>

2         I, Janine E. Hume declare as follows:

3         I am employed in the County of Multnomah, State of Oregon; I am over the age

4 of eighteen years and am not a party to this action; my business address is 1000 SW

5 Broadway, Suite 1400, Portland, Oregon 97205-3089, in said County and State.

6         I certify that on April 9, 2007, I determined from the United States Bankruptcy

7 Court for the District of Oregon's electronic case filing system that the following

8 parties will be served electronically via ECF the **THIRD AMENDED AND RESTATED**

9 **JOINT PLAN OF REORGANIZATION OF DEBTOR, TORT CLAIMANTS**

10 **COMMITTEE, FUTURE CLAIMANTS REPRESENTATIVE, AND PARISH AND**

11 **PARISHIONERS COMMITTEE (Dated April 9, 2007)** to:

12         **The parties on the list attached hereto.**

13         I swear under penalty of perjury that the foregoing is true and correct to the best

14 of my knowledge, information, and belief.

15         Dated: April 9, 2007.

16

17                     /s/ Janine E. Hume

18                     _____
                    Janine E. Hume, Legal Assistant

19 F:\CLIENTS\14961\004\CERTIFICATES OF SERVICE AND RELATED INFORMATION\CERTMASTER (FOR MONDAY).DOC

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Pamela Griffith
U.S. Trustee's Office
620 SW Main Street, Rm. 213
Portland, OR 97205
**(VIA ECF)**

Robert J. Vanden Bos
Vanden Bos & Chapman
Suite 520
319 SW Washington St.
Portland, OR 97204
**(VIA ECF)**

William C. Tharp
Greener Banducci Shoemaker P.A.
815 West Washington
Boise, ID 83702
**(VIA ECF)**

Brad T. Summers
Daniel R. Webert
Ball Janik LLP
Suite 1100, 101 SW Main St.
Portland, OR 97204
**(VIA ECF)**

Bradley S. Copeland
Loren S. Scott
Arnold Gallagher, et al.
PO Box 1758
Eugene, OR 97440-1758
**(VIA ECF)**

James Ray Streinz
1100 SW Sixth Avenue
Suite 1600
Portland, OR 97204
**(VIA ECF)**

Thomas Dulcich
Schwabe Williamson & Wyatt PC
1600-1900 Pacwest Ctr
1211 SW 5th Ave.
Portland, OR 97204
**(VIA ECF)**

Teresa Pearson
Thomas Sand
Miller Nash LLP
Suite 3500, 111 SW 5th Ave.
Portland, OR 97204
**(VIA ECF)**

Scott L. Jensen
Brownstein Rask et al.
1200 SW Main Building
Portland, OR 97205
**(VIA ECF)**

David A Foraker, Future Claimants
Representative
Greene & Markley, PC
Suite 600, 1515 SW 5th Ave.
Portland, OR 97201
**(VIA ECF)**

Fred C. Ruby
Department of Justice
1162 Court Street NE
Salem, OR 97301
**(VIA ECF)**

Tort Claimants Committee
c/o Albert N. Kennedy
Tonkon Torp LLP
Suite 1600, 888 SW 5th Ave.
Portland, OR 97204
**(VIA ECF)**

Thomas W. Brown
Cosgrave Vergeer Kester LLP
805 SW Broadway, 8th Floor
Portland, OR 97205
**(VIA ECF)**

Peter C. McKittrick
Farleigh Wada & Witt PC
Suite 600
121 SW Morrison St.
Portland, OR 97204
**(VIA ECF)**

Richard Anderson
Anderson & Monson
Park Plaza West, Suite 460
10700 SW Beaverton-Hillsdale Hwy.
Beaverton, OR 97005
**(VIA ECF)**

Jan Sokol
John Spencer Stewart
Stewart Sokol & Gray
2300 SW 1st Avenue, Ste 200
Portland, OR 97201
**(VIA ECF)**

Neil T. Jorgenson
Attorney at Law
520 SW Sixth Avenue, Suite 820
Portland, OR 97204
**(VIA ECF)**

ACE Property & Casualty Insurance
c/o Joseph A. Field
Field & Associates
610 SW Alder St, Suite 910
Portland, OR 97205
**(VIA ECF)**

Erin K. Olson
2905 NE Broadway St.
Portland, OR 97232-1760
**(VIA ECF)**