Below is an Opinion of the Court.

_Elizabeth L. Perris_
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
| | ) | No. 04-37154-elp11 |
| ROMAN CATHOLIC ARCHBISHOP OF | ) | |
| PORTLAND IN OREGON, AND SUCCESSORS, | ) | |
| A CORPORATION SOLE, dba the | ) | MEMORANDUM OPINION |
| ARCHDIOCESE OF PORTLAND IN OREGON, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

BACKGROUND

During the course of the chapter 11 bankruptcy case of debtor Roman Catholic Archbishop of Portland in Oregon (the Archdiocese), many documents relating to claims of child sexual abuse by priests were produced in discovery.  A stipulated protective order (Docket #799) limited the public release of many of the discovery documents.  Pursuant to that order, some of those documents were filed with the court under seal.  Most of the settlements of claims between the Archdiocese and the tort claimants left for a later date the resolution of what documents should be publicly released if the parties did not agree.

The Archdiocese and many, but not all, of the represented tort

Page 1 -   MEMORANDUM OPINION

claimants agreed to a binding arbitration procedure to resolve what previously non-public documents would be made public.[1]  This court wanted that procedure to be completed before resolving the motion filed by certain tort claimants represented by Erin Olson to unseal Docket #4765 and 4766.  These documents are Olson's memorandum filed in this case in support of punitive damages for the claims estimation process and Olson's declaration in support of that memorandum, to which numerous exhibits are attached.  Debtor[2] opposes the unsealing.

Tort claimants represented by Olson also gave notice of their intent to release to the public a number of other documents that the Archdiocese had designated as confidential and produced in discovery under the protective order as well as transcripts of certain depositions and associated exhibits.  Debtor and several individual priests move to preserve the confidentiality of those designated documents.

Pursuant to the arbitration, a number of documents relating to allegations of child sexual abuse by priests have been posted on a public website, www.archdiocesedocuments.org.  The arbitration decision to make those documents public was based on the Archbishop's public statement in April 2007 that he would release relevant and appropriate documents relating to accusations of child sexual abuse against priests.  I understand that the documents included in this present dispute have not

---

[1]     Some of the priests who are the subject of the documents at issue here were not parties to the arbitration agreement.  Some of those priests later agreed to be bound by the arbitration decision.

[2]     Hereafter, all references in this memorandum to "debtor" are to the reorganized debtor.

Page 2 -   MEMORANDUM OPINION

1  previously been released, with very limited exceptions.

2      Many of the documents at issue before this court involve priests who
3  have already been publicly identified as having been accused of child
4  sexual abuse, including all of the priests who are individually
5  represented in this matter with the exception of one priest.  Documents
6  relating to many of the clergy whose records are at issue here have been
7  posted on the public website.  Nonetheless, to the extent I order that
8  the protective order be lifted with regard to documents relating to a
9  particular priest, I am neither suggesting nor deciding that those
10 allegations of abuse were meritorious.

11     This dispute involves three categories of documents: (1) documents
12 produced by the Archdiocese in discovery that were designated as
13 confidential pursuant to the January 14, 2005 protective order; (2)
14 documents filed with the court under seal in connection with the claims
15 estimation process; and (3) deposition transcripts and associated
16 exhibits.

17                              ANALYSIS
18 1.  Standing

19     Some of the parties that oppose lifting the protective order or
20 unsealing filed documents challenge the standing of the movants to seek
21 relief from the protective order that has kept the documents out of the
22 public eye throughout the duration of this case.  They assert that,
23 because the claimants have settled their claims against the Archdiocese,
24 and the settlement agreements do not require public disclosure of
25 documents designated as confidential or filed under seal, the claimants
26 no longer have any cognizable interest in documents produced in

Page 3 -  MEMORANDUM OPINION

connection with their settled claims.  They also argue that the claimants
are attempting to assert the rights of third parties, not to protect
their own rights, because the documents they seek to release to the
public involve clergy who were not the targets of their individual
claims.

The standing doctrine involves "both constitutional limitations on
federal-court jurisdiction and prudential limitations on its exercise."
Warth v. Seldin, 422 U.S. 490, 498 (1975).  The constitutional
limitations are whether (1) the plaintiff suffered injury; (2) there is
sufficient causation between the plaintiff's injury and the conduct set
forth in the plaintiff's complaint; and (3) the plaintiff's injury may be
redressed by a favorable decision.  See Lujan v. Defenders of Wildlife,
504 U.S. 555, 560 (1992).  Prudential limitations include those
"principles by which the judiciary seeks to avoid deciding questions of
broad social import where no individual rights would be vindicated and to
limit access to the federal courts to those litigants best suited to
assert a particular claim."  Gladstone Realtors v. Village of Bellwood,
441 U.S. 91, 99-100 (1979).  One such prudential limitation prohibits a
litigant from asserting the rights of a third party.  See Powers v. Ohio,
499 U.S. 400, 409-410 (1991).  Generally, courts cannot entertain the
merits of a claim if the plaintiff cannot meet its burden as to this
prudential requirement.  See Gladstone, 441 U.S. at 99; Warth, 422 U.S.
at 498-500.

I conclude that the tort claimants who seek to lift the protective
order and unseal the documents have standing to do so.  They each
asserted at least one claim against the Archdiocese for conduct of clergy

Page 4 -  MEMORANDUM OPINION

employed by or under the control of the Archdiocese.  Some of them made
claims for punitive damages.  In order to establish their right to
punitive damages, claimants sought to show that the Archdiocese knew of
clergy sexual misconduct with minors and failed to address it or prevent
further misconduct.  This "pattern and practice" evidence was not limited
to evidence of how the Archdiocese responded to allegations of child
sexual abuse by the particular priest accused by a single claimant.  To
show the pattern and practice of the Archdiocese's response to such
allegations generally, claimants also included evidence about the
Archdiocese's response to claims of sexual abuse of minors by other
clergy it employed.

        Also, the tort claimants were parties to the protective order that
kept the documents from public disclosure during the pendency of the
bankruptcy case, and were subject to the order's provisions.  One of
those provisions is that a party may seek to remove the "confidential"
designation by following a prescribed procedure, which is what they are
doing now.  Although claimants' settlements of their claims with the
Archdiocese did not require disclosure of the documents produced under
the confidentiality designation, neither did the settlements require that
claimants forbear from seeking release of the documents from the
protective order.

        Finally, in light of the public's common law presumptive right of
access to judicial documents, the court has the authority to lift a
protective order or seal on documents in its files, even in the absence
of a motion.

        [A] district court can modify a protective order when a third

1    party requests judicial documents after the parties have filed
     a stipulation of dismissal pursuant to settlement. . . . [W]e
2    see no reason why the absence of a motion of a party to the
     litigation or some third party requesting that a seal or
3    protective order be lifted should remove a federal court's
     ability to monitor and modify its previous orders in exercise
4    of its "supervisory power over its own records and files."

5    Gambale v. Deutsche Bank AG, 377 F.3d 133, 141 (2d Cir. 2004) (citations

6    omitted).  If the court can sua sponte modify a protective order or lift

7    the seal on filed documents, it can certainly do so on motion of parties

8    who were involved in the judicial process all along and were parties to

9    the protective order, even if they have settled their claims.

10   2.   Merits

11       Debtor argues that the documents in dispute should continue to be

12   protected because the Archdiocese has already released a number of

13   documents from its files relating to accusations of child sexual abuse by

14   its clergy.  The Archdiocese's prior release of other documents is

15   irrelevant to whether, under the law, the documents produced in discovery

16   under the protective order or the documents filed with the court should

17   remain subject to the protective order.

18       A.   Documents from personnel files produced in discovery under
              protective order
19

20       All of the documents included in this category are taken from the

21   Archdiocese's clergy personnel files that it produced during discovery.

22   Pursuant to the protective order, the Archdiocese designated these

23   documents "confidential."

24       Documents relating to many of the clergy whose personnel files were

25   produced in discovery have previously been posted on the public website.

26   However, I understand that the particular documents at issue here have

Page 6 -  MEMORANDUM OPINION

1   not been posted.  Debtor opposes the release of clergy personnel files

2   for four groups of clergy.  Debtor does not make any argument for

3   continued protection of documents relating to its fifth group of clergy,

4   which it labels "Publicly Disclosed."  Thus, I will lift the protective

5   order for documents from the personnel files of Maurice Grammond, Joseph

6   Milkulich, James O'Flynn, Michael Raleigh, and Ronald Warren, subject

7   only to the general relevance and privacy protections discussed below.

8   Anthony Smith, who is also listed as publicly disclosed, is separately

9   represented by counsel and opposes release of documents relating to him.

10  I will address his arguments later in this memorandum.

11       Debtor and various affected clergy and former clergy oppose public

12  release of the remaining discovery documents, citing primarily their

13  privacy interest in the content of their personnel files.[3]

14       "It is well-established that the fruits of pretrial discovery are,

15  in the absence of a court order to the contrary, presumptively public."

16  San Jose Mercury News, Inc. v. U.S. Dist. Court, 187 F.3d 1096, 1103 (9th

17  Cir. 1999).  Thus, ordinarily the public should have access to

18  information produced during discovery and to documents used in

19  litigation.  Phillips ex rel. Estates of Byrd v. General Motors Corp.,

20  307 F.3d 1206, 1210 (9th Cir. 2002).

21

22       [3]    These documents and more were the subject of the arbitration
23  before Judge Hogan.  This decision involves the documents that remain in
    dispute after the arbitration decision that ordered the release of a
24  number of documents.  Judge Hogan has stayed the release of documents
    relating to allegations against three clergy who are individually
25  represented in this matter until my resolution of their objections.  He
    has also stayed release of documents relating to priests who are involved
26  in pending litigation, until that litigation is completed.

Page 7 -   MEMORANDUM OPINION

The presumption of public access may, however, be overcome where good cause is shown. <u>Id.</u> Fed. R. Civ. P. 26(c), made applicable to this case by Fed. R. Bankr. P. 9014(c), provides that the court, for good cause, may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The party seeking protection has the burden of showing specific prejudice or harm that will result if no protective order is entered. <u>Phillips</u>, 307 F.3d at 1210-11. "Good cause" is shown "when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995) (citations omitted).[4] If the "court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." <u>Phillips</u>, 307 F.3d at 1211.

The tort claimants' motion to unseal and opposition to continued protection of the documents[5] are, essentially, motions to modify the protective order with regard to certain documents that were produced in discovery. The parties dispute who has the burden of proof - whether the various tort claimants have the burden to show that the protection should

---

[4] "The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2035 at 484 (1994) (footnotes omitted).

[5] There are various motions relating to release of the documents. All raise the same issue: should the protection continue for the documents in dispute.

Page 8 - MEMORANDUM OPINION

be lifted or whether debtor and/or the opposing clergy have the burden to show that the protection should continue.

Because the 2005 protective order preventing disclosure was stipulated to by the parties,[6] and this court never made a finding that there was good cause for protecting these documents, the burden is on the party seeking to continue the protection. Phillips, 307 F.3d at 1211 & n.1 ("the burden of proof will remain with the party seeking protection when the protective order was a stipulated order and no party had made a 'good cause' showing."); Bromgard v. Montana, 2007 WL 2710379 at *6 (D. Mont. 2007).

Here, debtor and the opposing clergy must show good cause for continuing the protection of the information from public disclosure. That burden is especially appropriate where, as here, the Archdiocese agreed to produce documents under a protective order that did not require or contain a court finding of good cause, that allowed the Archdiocese to unilaterally designate documents as confidential, and that contained a provision allowing the tort claimants to challenge the designation of documents as confidential. Miles v. Boeing Co., 154 F.R.D. 112, 116 (E.D. Pa. 1994) (allowing "information to become presumptively confidential without affording [the other party] an opportunity to disagree with that designation and then to bear the burden of mounting a challenge would run afoul of the basic burden-shifting approach mandated by Rule 26(c)"). The agreed mechanism for challenging the "confidential"

---

[6]    The 2005 protective order does not state that it is stipulated. But it was negotiated among the interested parties and presented to the court for entry as an agreed order.

Page 9 -   MEMORANDUM OPINION

designation made clear that the mere fact that the Archdiocese designated a document as confidential did not mean that the document would retain that status indefinitely.

Opposition to release of the documents comes from two sources: (1) debtor, as successor to the Archdiocese, which produced the documents from its files in connection with this case and under the protection of the protective order; and (2) a number of the individual clergy and former clergy whose files were produced.  Although the interests of debtor and the clergy vary somewhat, their arguments largely overlap.

a.   <u>Personnel files</u>

Debtor argues that I should consider each clergy personnel file as a whole rather than consider whether particular items in individual personnel files should be released.  It argues that personnel files are confidential and subject to privacy interests of the employees as a matter of constitutional law, common law, and state statute.  According to debtor, absent a legitimate litigation reason, personnel files should remain protected.

As discussed above, debtor and the objecting clergy have the burden of showing good cause under Fed. R. Civ. P. 26(c) for continuing to keep the documents from disclosure to the public.  Thus, there need not be a "legitimate litigation reason" to justify disclosure; there must instead be good cause to prevent disclosure.

Debtor seeks to protect all of the documents at issue because they are personnel records.  Courts have certainly recognized that employees have privacy interests in information contained in personnel records, although it is not clear whether the source of that privacy interest is

Page 10 - MEMORANDUM OPINION

constitutional or common law.  Regardless of the source of an employee's privacy interest in his or her personnel files, that interest is recognized and given some protection by the law.  <u>See, e.g.</u>, <u>Detroit Edison Co. v. N.L.R.B.</u>, 440 U.S. 301, 318 n.16 (1979) (noting that a person's interest in keeping sensitive information contained in personnel files confidential has been recognized in various federal and state statutes dealing with public employees); <u>Blount v. Wake Elec. Membership Corp.</u>, 162 F.R.D. 102, 105-06 (E.D. N. Ca. 1993) (noting personal privacy interest in personnel files, but also recognizing that disclosure could be necessary in litigation where the information was relevant and not otherwise readily obtainable); <u>Miles</u>, 154 F.R.D. at 115.

An employee's privacy interest in personnel records has also been given some protection under Oregon statutes, although none of the statutes is applicable here.  <u>See, e.g.</u>, ORS 652.750 (allowing an employee the right to inspect her own personnel file);[7] ORS 646A.622 (requiring employers to protect information in employee personnel files that could be used to commit identity theft, such as the employee's social security number, driver's license number, and the like); ORS 659A.136 (limiting the use of medical examination information obtained by an employer in determining whether the employee has a disability that affects the employee's ability to perform job functions); ORS 192.502(2) (exempting personal information contained in public employees' personnel

_____

[7]    Notably, the definition of "personnel records" used in this statute excludes from its scope "records of an individual relating to the conviction, arrest or investigation of conduct constituting a violation of the criminal laws of this state . . . ."  ORS 652.750(1)(b).  Sexual abuse of a child is a crime.  <u>See</u> ORS chapter 163.

Page 11 - MEMORANDUM OPINION

files from disclosure under public records disclosure requirements,
unless certain requirements are met).

It is clear from these authorities that, although there is a level
of privacy protection for sensitive personal information contained in
personnel records, there is no blanket protection from disclosure of
information contained in personnel records, particularly where the
information involves allegations of serious wrongdoing that implicates
public safety.  <u>See</u> n.7, <u>supra</u>.  As applied in this case, I conclude that
there is good cause to prevent disclosure of private, personal
information such as the clergy/employee's address, social security number
or other identifying financial information, information about the
clergy's family, or other personal information not relevant to any of the
abuse litigation.  Release of such information could cause the clergy
embarrassment, annoyance, or undue burden.

Balancing the individual's privacy interest in information contained
in personnel files against the public interest in accessability to
information about allegations of priest sexual abuse of minors and the
Archdiocese's response to those allegations, debtor has not demonstrated
good cause for a blanket protection of the clergy from disclosure of
relevant information contained in the personnel files.[8]  This includes
information about allegations of abuse or the Archdiocese's knowledge of
or reaction to such allegations.  It also includes priest records showing

---

[8]    In reaching this conclusion, I recognize and have taken into
account the fact that information contained in personnel files relating
to allegations of child sexual abuse and the Archdiocese's response to
such allegations, including sending clergy to treatment and receiving
reports of the progress of treatment, is private, sensitive material.

where particular accused priests or clergy were assigned and when.[9]

I also conclude that, if medical or psychological information was contained in the personnel records and produced, good cause exists to protect it, except to the extent it is relevant to allegations of sexual abuse of minors and is not claimed and found to be privileged.  This type of information, although it is highly personal and its release could cause embarrassment, is relevant to how much the Archdiocese knew and when it knew about the allegations of serious misconduct that related to the clergy's fitness to work in certain Archdiocesan ministries.  On balance, there is no good cause to protect those relevant documents from disclosure.  However, any medical or psychological documents in the personnel files that are not relevant to claims of sexual abuse of minors or of the Archdiocese's response to such allegations should continue to be protected, in light of the employees' privacy interests in the information.

For those documents that I am ordering released, counsel must redact private information about the accused clergy, including home addresses, social security numbers, family information, and the like.  Counsel must also redact any information that could identify the victim or family member of a victim that could lead to identification of the victim.  I have attempted to note the need for redaction on the chart that is

---

[9]    If the documents at issue here do not show accusations of abuse or responses to accusations, but there is other information indicating that the priest was accused of child sexual abuse, I will order release of documents relating to where the priest served and when.

attached as Exhibit A.[10]  If, however, I have failed to note the need for redaction for a particular document that contains the sort of information outlined above, counsel must assure that the information is nonetheless redacted.

I will address below arguments of individual clergy who have appeared and seek to continue the confidentiality of information contained in their own personnel files.

      b.  <u>Debtor's arguments for protection for categories of clergy</u>

Debtor argues that protection should continue for documents relating to four categories of clergy: (1) priests against whom only one claim of abuse was made; (2) priests who are currently being sued by future claimants; (3) priests who are represented by counsel and have demanded that the Archdiocese not publish their personnel files; and (4) priests who were never accused of abuse but whose files were produced during discovery in this case.[11]

        i.  <u>Clergy against whom only one claim of child abuse was made</u>

Debtor argues that clergy against whom only one claim of child abuse was made should be protected from disclosure relating to that accusation.

---

[10]   Exhibit A will be kept under seal during the 30-day stay I am imposing on release of the documents.  If an appeal is filed and a party requests that the exhibit remain under seal pending appeal, I will consider whether to keep all or part of the exhibit sealed pending appeal.  If no appeal is filed, I will lift the seal on Exhibit A at the end of the 30 days.

[11]   The parties have stipulated to release of documents relating to John Goodrich.  At least some of the documents relating to him have already been released.  Those need not be released again.

Page 14 - MEMORANDUM OPINION

1   Its argument is primarily that these clergy could be irreparably harmed

2   by publication of false accusations.

3   The question is whether debtor has demonstrated good cause to

4   protect those accused clergy from annoyance, embarrassment, oppression,

5   or undue burden or expense.  Fed. R. Civ. P. 26(c).  This requires

6   specific demonstration of a clearly defined and serious injury.  Glenmede

7   Trust Co., 56 F.3d at 483.

8   Debtor states, without substantiation, that the clergy it lists in

9   this category are clergy for whom the Archdiocese paid a settlement as a

10  result of a single claim alleging child sexual abuse.

11  Although debtor argues that false allegations have been made, and

12  falsely accused clergy should be protected from the "stain of a public

13  accusation of child abuse," Reorganized Debtor's Supplemental Opposition

14  to Olson's Motion and Olson's Demand at 12, it does not provide any

15  evidence that would support a conclusion that these particular clergy

16  were falsely accused, nor that the accusations against them were

17  unsubstantiated.[12]  Its argument that clergy who have a single accusation

18  filed against them are likely innocent of the charges because pedophiles

19  are generally serial offenders is offset by the argument made by the tort

[12]   Debtor argues that the allegations against the individuals on this list are unsubstantiated.  It explains that, "[b]y unsubstantiated, the Archdiocese means that there is only one accuser whose testimony is the sole basis for the allegation; the accused denied the allegations or there is no admission; there are no contemporaneous or later documents disclosing the abuse prior to the legal claim; and there are no witnesses able to testify to the veracity of the accuser's allegations."  Reorganized Debtor's Supplemental Opposition to Olson's Motion and Olson's Demand at 13 n.6.  None of those circumstances necessarily indicates that the claims were false.

Page 15 - MEMORANDUM OPINION

1  claimants that child sexual abuse is under-reported, so a single

2  allegation could indicate that other unreported abuse had occurred.

3      It is debtor's burden to show that there is good cause to protect

4  these documents, that is, that lifting the protection would produce a

5  clearly defined and serious injury.  It has failed to make any

6  individualized showing.  Further, even if harm is shown, the court must

7  balance the harm of disclosure against the public interest.  Archbishop

8  Vlazny has publicly announced that, as part of the healing process, the

9  Archdiocese would release documents that would shed light on the issue of

10 child sexual abuse by its clergy.  The relevant documents relating to the

11 clergy who had a single incident of abuse reported (for which the

12 Archdiocese made a payment on the claim) relate to that issue.

13 Therefore, relevant documents from personnel files relating to the clergy

14 in this category shall be released, subject to the redactions for the

15 type of personal information discussed above.

16     The tort claimants have withdrawn the documents relating to two of

17 the clergy in this category.  I will redact their names from the chart

18 that will be attached as Exhibit A to this opinion.  I will include their

19 names on an Exhibit B, which I will have entered in the court record

20 under seal.  Exhibit B will list the names of any priests for whom I

21 determine documents should continue to be protected because the claimants

22 have withdrawn their request to release documents relating to those

23 priests, there are no relevant documents relating to the particular

24 priest, or good cause has been shown.

25          ii.  <u>Clergy who are currently in litigation</u>

26     Debtor argues that the protective order should continue for the

Page 16 - MEMORANDUM OPINION

1   files of two clergy, Fr. B and Thomas Laughlin, who are currently being

2   sued for abuse and whose cases are pending before the district court.

3   These clergy are separately represented by counsel.  I will discuss their

4   individual arguments below in a separate section.

5               iii.  <u>Clergy who are represented and have requested</u>
                      <u>continued protection</u>

6

7       Various clergy have their own counsel and have appeared to assert

8   their own rights.  Debtor does not make any specific arguments for this

9   category of clergy, but merely refers to the briefs filed by counsel for

10  the individuals.  I will discuss the arguments of each of those clergy

11  below.

12               iv.  <u>Clergy against whom no allegation has been made but</u>
                      <u>files were produced</u>

13

14      Finally, debtor argues that files were produced in this bankruptcy

15  case for certain clergy who were never accused or who had accusations

16  against them withdrawn.  According to debtor, those clergy should not

17  have their personnel files made public because they will then be

18  associated with clergy who have been accused of abuse.

19      I have reviewed the documents the tort claimants seek to release

20  from the protective order for priests in this category.  I will not lift

21  the protective order for documents relating to any clergy, including

22  clergy in this category, for whom I can find no indication of allegations

23  of child sexual abuse or of grooming for abuse while the victim was a

24  minor.  I do not consider allegations of sexual conduct with adults as

25  relevant to child sexual abuse.  Those clergy for whom I found no

26  relevant documents are identified in Exhibit B, which will be filed under

Page 17 - MEMORANDUM OPINION

seal.

v.   <u>Order priests</u>

Although debtor does not make any specific argument about documents relating to the clergy it lists in Exhibit 4 as "Order Priests," I gather that it opposes release of documents that were produced in this case that relate to clergy who were not Archdiocesan priests nor working in an Archdiocesan ministry at the time of the alleged abuse.  Of those listed by debtor, documents relating to only one are still at issue.

The documents at issue relating to that priest, JT, show that he was a Jesuit priest assigned to an Archdiocesan ministry.  Debtor has not provided any information to substantiate its claim that he was not working in an Archdiocesan ministry at the time the alleged conduct occurred.  Debtor has not shown good cause to continue the protection with regard to relevant documents relating to JT.

c.   <u>Arguments by individual clergy</u>

A number of clergy whose files are the subject of this dispute have appeared and made their own arguments against releasing documents from the protective order.

i.   <u>Fr. B, J, S, T, and W (represented by Cooney)</u>

These clergy first argue that they relied on the protective order in providing discovery,[13] therefore the order can be modified only if there is an extraordinary circumstance or compelling need to do so.  As I explained above, this order was stipulated to by the parties, and did not

---

[13]   It is unclear how they relied, in that I understand that all of the documents at issue came from the Archdiocese's files, and these clergy never produced any documents themselves.

Page 18 - MEMORANDUM OPINION

contain a judicial determination of good cause for protection.  Under
those circumstances, protection will continue only if the party opposing
disclosure shows good cause.

Next, they assert that there is good cause to continue protection
because of the confidential nature of their personnel files.  Release of
these documents, they argue, would constitute an invasion of their
privacy.

I have already discussed the privacy interests in personnel files,
and have taken those privacy interests into account in determining which
documents should be released and in ordering redaction of certain private
information.

Each of the individual priests represented by Mr. Cooney assert that
there is good cause to protect against release of their personnel files,
because the files contain information that would lead to annoyance,
embarrassment, oppression, and/or undue burden or expense if made public.
They argue that their interest in keeping personal information private
outweighs the public's interest in knowing private details of their
lives.

a.   <u>Fr. B</u>

Fr. B is a named defendant in two recent federal district court
cases in which the claimants allege that he sexually molested them.  In
his declaration, he adamantly denies the allegations.  He states that he
is recovering from surgery for cancer, and that the release of his
records would be personally humiliating, oppressive, burdensome, and
distressing.  He also questions his ability to get a fair trial if his
personnel file is released.

Page 19 - MEMORANDUM OPINION

1    Fr. B's general statements of potential harm are conclusory, and do

2 not specifically demonstrate that he will suffer a clearly defined and

3 serious injury.  See 8 Charles Alan Wright, Arthur R. Miller, and Richard

4 L. Marcus, Federal Practice and Procedure § 2035 (1994) (hereafter Wright

5 and Miller) (conclusory statements are not enough).  Fr. B is a publicly

6 named defendant in two lawsuits alleging child sexual abuse.  His

7 statements do not demonstrate a clearly defined harm apart from the other

8 publicity surrounding the allegations against him.  In light of the fact

9 that he is publicly named in litigation, any harm to him is outweighed by

10 the public interest in access to information about allegations of child

11 sexual abuse and the Archdiocese's response to such allegations.

12    Good cause has not been shown to continue protection of Fr. B's

13 records.  However, I will stay my order lifting the protective order for

14 documents with regard to Fr. B until the pending litigation against him

15 is resolved through settlement, dismissal, judgment, or otherwise.  This

16 is consistent with the stay of release of documents Judge Hogan provided

17 in his arbitration report, and will prevent any possible interference

18 with the district court trials.  The stay will expire with regard to Fr.

19 B's documents when all pending litigation against him is resolved.

20                       b.    Fr. J

21    Fr. J's declaration similarly contains only conclusory claims of

22 harm.  He does not describe any clearly defined serious injury that would

23 occur from the release of these particular documents.  Documents relating

24 to Fr. J have already been posted on the website,

25 www.archdiocesedocuments.org.  Although I recognize Fr. J's privacy

26 interest in sensitive information in his personnel file, Fr. J's name is

Page 20 - MEMORANDUM OPINION

already in the public arena in connection with these abuse cases, and the public interest will be served by disclosing both the allegations of sexual misconduct with minors and any Archdiocese response to the claims.

As for documents that I earlier ruled were confidential, those records were not produced during discovery and are not at issue here.

c.   <u>Fr. S</u>

Fr. S denies allegations of abuse that have been made against him. He has, nonetheless, already been publicly named as an abuser.  He was a defendant in three cases alleging abuse, two of which he lost after trial.  Although he says that he fears for his safety if the protective order is lifted, based on perceived telephone threats, Fr. S's identity is already public, and he has already been involved in three public trials alleging abuse.  The three pages that will be released from protection do not contain information that is likely to provoke further threats.  No information about Fr. S's whereabouts will be disclosed.

d.   <u>Fr. T</u>

Documents relating to Fr. T have been posted on the public website. Fr. T has not demonstrated a specific, identifiable injury from the release of the three pages of documents at issue here that would outweigh the public interest in the release.  He has not demonstrated good cause to continue the protection of relevant documents from his personnel files.

e.   <u>Fr. W</u>

Fr. W states that he is 90 years old, currently living in an assisted living home.  He says that the court dismissed the single claim of sexual abuse brought against him, which he has always denied.  He does

Page 21 - MEMORANDUM OPINION

1  not explain the basis for the dismissal.  He also states that he was not

2  at the school when and where some of the alleged abuse occurred.  He

3  states that releasing his personnel file will cause him embarrassment,

4  annoyance, and/or undue burden.

5      To my knowledge, Fr. W has never been publicly identified as an

6  accused abuser.  The documents the tort claimants seek to release from

7  the discovery documents relating to Fr. W include a short discussion of a

8  single claim of child sexual abuse, which Fr. W says was dismissed.

9  Naming him publicly for the first time would likely cause him

10  embarrassment, annoyance, or undue burden and, in light of the scant

11  information about the claim of abuse, his interest in protection

12  outweighs the public interest in disclosure.  I will continue the

13  protection on relevant documents relating to him.

14          ii.  <u>Defendant Smith and Fr. MM (represented by Smith)</u>

15      Defendant Smith argues, among other things, that documents from his

16  personnel records should remain protected based on the confidentiality

17  agreement that was part of the settlement of abuse allegations against

18  him.

19      Smith does not explain how an agreement that did not include the

20  tort claimants seeking to lift the protective order here should bind

21  them.  Further, documents naming Smith were posted on the public website

22  in June 2007.  Given the previous release of information, I conclude that

23  Smith has not shown that release of these documents relating to him would

24  result in a clearly defined and serious injury.

25      Fr. MM argues that releasing his personnel records would violate his

26  right to privacy and statutory protection of health records.  He also

Page 22 - MEMORANDUM OPINION

1   claims physician-patient and psychotherapist-patient privilege.

2       Fr. MM submitted a declaration, which had originally been filed in

3   connection with a different request for public disclosure.  He asserts

4   that he has never been sued, convicted, or found liable for sexual abuse.

5   He states that the documents at issue contain highly private information,

6   the release of which likely would result in social stigma.  He worries

7   for his safety.  Releasing documents relating to him, he argues, would

8   unfairly associate him with priests who have been convicted or found

9   liable.

10      These generalized concerns about embarrassment and harassment are

11  not sufficient to meet Fr. MM's burden to show a clearly defined and

12  serious injury that would support a finding of good cause for protection

13  that would outweigh the public interest in disclosure.  Fr. MM was named

14  in a document that is on the public docket in this case (Docket #2406) as

15  an accused priest for whom the Archdiocese paid a settlement.

16  Information about him is included in the portion of the deposition of Fr.

17  Lienert that is posted on the public website.  Fr. MM has not

18  demonstrated good cause to continue the protection for relevant,

19  unprivileged documents.

20      He has, however, established the some of the discovery documents are

21  subject to the psychotherapist-patient or physician-patient privileges.

22  The privileges protect from disclosure confidential communications made

23  for the purposes of diagnosis or treatment, and include communications to

24  those who are participating in the diagnosis or treatment.  OEC 504,

25  504-1.  In earlier rulings in this case, I have concluded that

26  communications between a treatment center or therapist and the

Archdiocese as the referring employer are communications with those
participating in the diagnosis or treatment, so long as the
communications relate to continuing treatment and not to employment
matters.  That means that communications that relate to personnel issues,
including return to ministry and placement of the priest, are not
privileged, but reports about the priest's treatment progress or matters
that the treatment facility or therapist learned through therapy are
privileged.  This is a broader view of the privilege than the tort
claimants' view, in that I include as privileged those communications
about Fr. MM with the Archdiocese that relate to his treatment.

I have applied this standard in reviewing the documents relating to
Fr. MM.  I have taken into consideration the supplemental declaration
filed by Fr. MM on June 10, 2009, and conclude that the document that is
the subject of that declaration is not privileged.  My decisions about
documents relating to Fr. MM that are reflected on Exhibit A resulted
from application of the legal standard to all of the documents that Fr.
MM claims are privileged.

iii. <u>Fr. Bucher (represented by Whittemore)</u>

Fr. Bucher argues that he did not consent to production of documents
relating to him in this bankruptcy case.  He also argues that the
Archdiocese, through the Archbishop, is not his agent, so any agreement
the Archbishop made to release documents to the public does not bind him.

I am not lifting the protective order for any documents because the
Archdiocese agreed to release them.  To the extent that I am lifting the
protective order, it is because the person seeking protection has not
established good cause, as required by Fed. R. Civ. P. 26(c).

1    Fr. Bucher has not met his burden to show good cause.  The fact that

2  he was accused of abuse is not a secret; he is the named party in the

3  leading Oregon Supreme Court case dealing with vicarious liability for

4  child sexual abuse.  Documents relating to Fr. Bucher are posted on the

5  public website.  Fr. Bucher's failure to consent to production of

6  documents from his personnel file maintained by the Archdiocese and his

7  desire to enjoy the peace he thought he had obtained through settlement

8  of the claims against him does not demonstrate a clearly defined and

9  specific injury.

10                    iv.   <u>Fr. M and Fr. D (represented by Merchant)</u>

11    These priests first argue that the protective order should remain in

12  place as to documents relating to them because they have never had any

13  claims of misconduct filed against them.  The tort claimants acknowledge

14  that no claims were filed against Fr. D or Fr. M in the bankruptcy case.

15  However, the documents counsel seeks to release show that there were

16  credible allegations of abuse made.  In the case of Fr. M, the

17  allegations were brought to the attention of the district attorney, who

18  did not prosecute because of the statute of limitations, not because the

19  allegations lacked credibility.  In the case of Fr. D, he admitted the

20  conduct to the Archbishop.  Saying they had no "claims" brought against

21  them is technically correct in the bankruptcy sense, but is misleading

22  because they both had credible allegations of sexual misconduct with

23  minors brought against them.

24    They also argue that releasing the documents relating to them will

25  ruin their lives by implicating them in a scandal "in which they are not

26  involved."  Again, the documents themselves show that there were credible

allegations that they were in fact involved.  Fr. M was named in an
Oregonian article that is posted on the public website for documents
relating to priest sexual abuse and allegations against him were included
in the posted portion of Fr. Lienert's deposition.  Fr. D's name is
included in the exhibit list for the excerpts of the deposition of
Archbishop Levada that is on the public website, which shows that the
exhibit was withdrawn.  The documents at issue show that Fr. D admitted
the allegation of abuse.

Fr. M's and Fr. D's desire to be protected from scandal does not
demonstrate a clearly defined and serious injury outweighing the public
interest necessary to establish good cause.[14]

        v.   <u>Mr. H and Thomas Laughlin (represented by O'Kasey)</u>

Mr. H and Thomas Laughlin oppose release of documents relating to
them, asserting their privacy interest in their personnel files.  As I
have said with regard to other clergy and former clergy, I recognize the
privacy interest in personal information contained in personnel files,
but also recognize that those privacy rights are not absolute,
particularly with regard to allegations of sexual misconduct with minors.

Contrary to these clergy's arguments, the tort claimants are not
seeking release of personnel files of an entire class of employees, but
only of documents relating to priests who have been accused of child
sexual abuse.  Further, information in the personnel files that relates
to such accusations and the Archdiocese's response to them was the proper

---

[14]    Contrary to their argument that the tort claimants need to show
a compelling need for disclosure, it is the priests who must establish
good cause.

subject of discovery, because it provided pattern and practice evidence
relevant to claims for punitive damages.

Also contrary to these clergy's arguments, the tort claimants need
not show that the value of the information outweighs the privacy
interests of the affected individuals.  Instead, those seeking to
continue the protection need to show particularized harm, which the court
then balances against the public interest.

I have reviewed the documents relating to Mr. H.  Because nothing in
the documents at issue here relates to allegations of sexual abuse of
minors, or of the Archdiocese's response to allegations of abuse,
documents relating to him will continue under the protection of the
protective order.

Thomas Laughlin has not shown good cause to continue the protection
of relevant documents relating to him and his conduct.  However, he is
currently engaged in litigation concerning allegations of child sexual
abuse against him.  As I did with documents relating to Fr. B, and for
the same reasons, I will stay the release of documents relating to
Laughlin until the pending litigation against him in district court is
resolved through settlement, dismissal, judgment, or otherwise.

B.    <u>Documents filed with the court under seal (Docket #4765 and
      4766)</u>

The various tort claimants seek an order unsealing a memorandum and
declaration with attached exhibits, which were filed with the court under
seal to support claims for punitive damages during the claims estimation
process.  Debtor and the opposing clergy oppose lifting the seal on these
documents.  These documents must be analyzed under a different legal

Page 27 - MEMORANDUM OPINION

standard than applies to those that were produced during discovery but never filed with the court.

Under the common law, there is a well-established presumption of public access to judicial documents.  See <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978).  This right of access is not absolute; courts have authority under the common law to deny access "where court files might have become a vehicle for improper purposes."  <u>Id.</u> at 598.  <u>See also</u> <u>In re Gitto Global Corp.</u>, 422 F.3d 1, 6 (1st Cir. 2005).

This public right of access is codified for bankruptcy cases in 11 U.S.C. § 107(a), which provides that all papers filed in a bankruptcy case are public records open to examination, except as specifically provided in the statute.  See <u>Gitto Global Corp.</u>, 422 F.3d at 6-7; <u>In re Crawford</u>, 194 F.3d 954, 960 (9th Cir. 1999); William T. Bodah and Michelle M. Morgan, "Protective Orders in the Bankruptcy Court: The Congressional Mandate of Bankruptcy Code Section 107 and its Constitutional Implications," 24 Hastings Const. L. Q. 67 (Fall 1996).  The statute provides for two exceptions to this broad right of public access: the court may (and, on motion of a party in interest, shall) (1) protect an entity with regard to certain commercial secrets and information, or (2) "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." § 107(b)(2).  The exceptions are "construed narrowly, in light of the general public policy that court records should be open for public inspection."  2 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 107.03[1][b] (15th ed. Rev. 2007).  <u>See also</u> <u>Crawford</u>, 194 F.3d at 960 n.8 (§ 107 exceptions to public access are narrowly construed).  "Because § 107

Page 28 - MEMORANDUM OPINION

speaks directly to the question of public access, . . . it supplants the
common law for purposes of determining public access to papers filed in a
bankruptcy case." <u>Gitto Global Corp.</u>, 422 F.3d at 8.  Any issues of
public disclosure of documents filed in a bankruptcy case must be
determined under the statute, not under the common law.  <u>Id.</u>

The parties opposing release of the documents argue that the
punitive damages documents contain defamatory or scandalous matter about
them and therefore they should be protected.  At bottom, their argument
is that information in the documents, including their names, would
unfairly associate them with the priest sexual abuse scandal and would
subject them to scorn or loss of reputation in the community.

The question then becomes what precisely is meant by "scandalous or
defamatory matter" that warrants protection.  The Code does not define
these terms.

In <u>Gitto Global Corp.</u>, the court considered the meaning of
"defamatory" in the context of § 107(b)(2).  It rejected the debtors'
argument that, to be defamatory, material in the court records need only
cause a reasonable person to alter his or her opinion of the debtor.  The
court noted that § 107 indicates a clear legislative intent that papers
filed in bankruptcy court be available to the public and that many
documents filed in a bankruptcy case will include material that is likely
to affect an individual's reputation in the community, including
allegations of mismanagement or fraud.  <u>Id.</u> at 8-9.  Reading the statute
to provide protection for "any material tending to harm a person's
reputation . . . would significantly curtail the public's access to these
records." <u>Id.</u> at 9.

Given the presumption of access to court records, and the fact that many documents filed in bankruptcy court could affect a person's reputation, the court concluded that a showing of more than a detrimental impact on a person's reputation is required. The court held

> that material that would cause a reasonable person to alter his opinion of an interested party triggers the protections of § 107(b)(2) based on a showing that either (1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end.

Id. at 14.

This reading is consistent with the common law, which denies public access to court files that "have become a vehicle for improper purposes." Nixon, 435 U.S. at 598. Accord In re Phar-Mor, Inc., 191 B.R. 675, 678-679 (Bankr. N.D. Ohio 1995) (noting historical authority of courts to protect persons from scandalous or defamatory material, as currently provided in Fed. R. Civ. P. 12(f), and that § 107 is a codification of Nixon's recognition of the common law presumption of public access, subject to exceptions only when court filings are used for improper purposes).

Examples of improper purposes include "gratifying public spite, promoting public scandal, and using court files as 'reservoirs of libelous statements for press consumption.'" Gitto Global Corp., 422 F.3d at 12 (quoting Nixon, 435 U.S. at 598). As the court noted, "[a]s is the case under [Fed. R. Civ. P.] 12(f), these bases for removing material from the public eye focus not just on the impact of the material on a person's reputation, but also on the role of the material in the court records." Id.

Page 30 – MEMORANDUM OPINION

1    The Eighth Circuit considered a claim that material in court records

2  was "scandalous" under § 107(b)(2), and reached a conclusion consistent

3  with the First Circuit in <u>Gitto Global Corp</u>.  A person seeking to prevent

4  public access to documents filed under seal in the bankruptcy court "must

5  show more than injury to reputation[.]"  <u>In re Neal</u>, 461 F.3d 1048, 1053

6  (8th Cir. 2006).  In addition,

7          the court must also look to the role of the material in the
           court records.  "[T]he purpose of including material in a paper
8          filed with the court should inform the inquiry into whether
           that material falls within the § 107(b)(2) exception."  The
9          question for the court then becomes "whether a reasonable
           person could alter their opinion of Defendants based on the
10         statements therein, taking those statements in the context in
           which they appear."

11

12  <u>Id.</u> at 1054-55 (citations omitted).

13    Matter is "scandalous" if it "improperly casts a derogatory light on

14  someone[.]"  5C Wright and Miller, § 1382 at 465 (discussing Fed. R. Civ.

15  P. 12(f), which allows the court to strike scandalous allegations from

16  pleadings).  "It is not enough that the matter offends the sensibilities

17  of the objecting party if the challenged allegations describe acts or

18  events that are relevant to the action."  <u>Id.</u> (footnote omitted).  Thus,

19  material that casts a derogatory light on someone is not kept out of the

20  public eye if it supports and is relevant to a claim for punitive

21  damages.  <u>Id.</u>

22    Therefore, in order to keep the court documents at issue in this

23  case sealed,[15] the parties seeking to prevent public access must show not

24

25         [15]   The cases do not apply a different standard for documents or
26  materials that were filed under seal than for those that were sought to
                                                          (continued...)

Page 31 - MEMORANDUM OPINION

only that the materials are likely to cause a reasonable person to alter his or her opinion of the person who is the subject of the materials, but also that they contain material that is either untrue, or potentially untrue and either irrelevant or included in the record for improper purposes.

Assuming for purposes of this analysis that documents that contain or relate to accusations of child sexual abuse have the potential to cause a reasonable person to alter his or her opinion of the accused clergy, the question is whether the use of the documents in the court record is improper.  That requires a determination of whether the information contained in the documents filed with the court has either been shown to be untrue or is "potentially untrue and irrelevant or included within a bankruptcy filing for an improper end[,]" Gitto Global Corp., 422 F.3d at 14, including "gratifying public spite, promoting public scandal, and using court files as 'reservoirs of libelous statements for press consumption.'"  Id. at 12 (quoting Nixon, 435 U.S. at 598).

I must first address the argument of a religious order, referred to as "the P," that documents it produced in earlier litigation relating to Fr. Perone, which are included as an exhibit to the document filed in

---

[15](...continued)
be sealed after the fact.  In Neal, the list of creditors at issue had originally been filed under seal.  Given the strong policy codified in § 107(a) of allowing public access to court records, and the fact that the protective order in this case was a stipulated blanket order that did not include a court finding of good cause for protection, I conclude that applying the standard set out in Gitto Global Corp. and Neal is appropriate.

bankruptcy court, should be protected.  Because the documents relating to
Fr. Perone in dispute here were filed in the court records, those
documents are not subject to the good cause standard for protection under
Fed. R. Civ. P. 26(c), but instead are subject to the same standard for
protection as other documents filed under seal.  The fact that they
originated with "the P" rather than with the Archdiocese is, in this
situation, irrelevant.

Turning to the question of whether to lift the seal on Docket #4765
and 4766, I first note that, of all the clergy discussed in Olson's
memorandum and for whom she attached exhibits to her declaration, all but
two have already had documents relating to them posted on or been named
on the public website.  Therefore, they have already been associated with
the priest child sexual abuse scandal.

The first question is whether the material filed with the court is
untrue.  There has been argument that some of the information contained
in documents filed under seal did not result in claims being filed
against the accused clergy, and that some of the clergy deny any
allegations of abuse contained in those documents.  However, there has
been no showing that the information in the exhibits filed under seal is
untrue.

Although it is possible that the accusations that appear in the
filed documents are untrue, there is no dispute that the accusations were
made.  Because the accusations themselves could potentially be untrue, I
need to determine whether the materials containing those accusations were
irrelevant or included in the filing for an improper purpose.  That
determination is made as of the time the documents were filed with the

Page 33 - MEMORANDUM OPINION

court, not some later date such as the date when claimants sought to make them public.  To hold otherwise would afford different treatment to motions to allow a document to be filed under seal and motions to unseal documents.  See n.15, supra.

The parties who oppose lifting the seal argue that the material was irrelevant because the particular clergy involved were not the subjects of claims in bankruptcy court.  But the purpose of the filing was to support an argument for punitive damages, to which the Archdiocese's past pattern and practice of response to allegations of child sexual abuse by clergy was relevant.  Thus, documents that relate to allegations of abuse and of the Archdiocese's response to those allegations are relevant.

With very limited exceptions, I conclude that the material included in the filed documents was relevant.  I discussed in Part 2.A. above what I consider to be relevant for purposes of this case, and what types of personal information I will require the tort claimants to redact from the documents produced in discovery.  To the extent that the same information is contained in the filed documents, the tort claimants shall redact that information before the filed documents are unsealed.

In particular, one of the exhibits to Olson's declaration, Exhibit 40A, is a list of accused priests that was compiled by counsel from a number of sources.  Some of the clergy named on that list have not previously been publicly identified.  The tort claimants shall redact from Exhibit 40A and any other place they appear in the filed documents the names of any priests who are listed on Exhibit B.

The parties opposing release of the seal also argue that the various tort claimants want the documents to be made public for improper

purposes, such as punishing the Archdiocese, spreading negative publicity about the clergy and the Archdiocese, or merely for marketing purposes.

I have reviewed the documents that were filed under seal.  They relate to the issue of punitive damages, which was before the district court judge who was estimating the claims for purposes of voting on the proposed plan of reorganization.  The Archdiocese's pattern and practice of responding to allegations of child sexual abuse was relevant to the punitive damages issue in the estimation.  I find no indication that the materials were included in the bankruptcy filing for any purpose other than to support the claims for punitive damages.  That purpose is not an improper end.  Therefore, I will order Docket #4765 and 4766 to be unsealed, subject to the redactions I discussed above.

Further, in order to be consistent with Judge Hogan's arbitration decision and to assure no interference with pending litigation, information relating to Fr. B and Thomas Laughlin contained in the filed documents shall not be released until the pending litigation against those two individuals is completed.

C.   Deposition transcripts

The various tort claimants also seek to make publicly available transcripts of depositions of Thomas Laughlin, Archbishop Levada, Auxiliary Bishop Steiner, Fr. Leinert, and Fr. Peri.  It does not appear that these deposition transcripts are covered by the protective order. If they are, no party has stated an opposition to their release to the public, or shown good cause to continue any protection if it exists.  I conclude that, if the deposition transcripts are covered by the protective order, the protective order is lifted with regard to them.

If, however, there are references in the transcripts to persons listed on Exhibit B, those references shall be redacted.

There may be a dispute about exhibits used in the depositions of Archbishop Levada, Fr. Leinert, and Fr. Peri. I have reviewed the exhibits, which I assume were produced subject to the protective order. The question is whether there is good cause to continue to protect them from public view.

There is no good cause shown to protect the exhibits used in the deposition of Archbishop Levada. They may be released. As for the exhibits used in the deposition of Fr. Leinert, they may be released, with the requirement that the names and addresses of Fr. Perone's family members contained in the two pages of Exhibit 3 that are at issue be redacted. There were no exhibits at issue with regard to Auxiliary Bishop Steiner.

I have also reviewed the exhibits connected with the deposition of Fr. Peri. The portions of Exhibits 1 and 9 that were provided to the court may be released. The portions of Exhibit 3 that were provided were never referred to in the deposition, and they include some material that is irrelevant to allegations of child sexual abuse and some that is of a private nature, such as psychological reports on a priest. The portions of Exhibit 3 provided to the court shall not be released.

Release of the deposition of Thomas Laughlin will be stayed until the pending litigation against him in district court is resolved.

CONCLUSION

To the extent relevant and with redactions of certain personal information, I will lift the protective order on most of the documents

Page 36 - MEMORANDUM OPINION

the tort claimants seek to release.  Attached to this opinion is Exhibit A,[16] which shows my decision with regard to each of the disputed discovery documents.  The parties shall redact the indicated irrelevant and private information before releasing any of the documents to the public.  Exhibit B, filed under seal, includes the names of the clergy for whom I will not lift the protection.  The protective order shall continue for all documents relating to Fr. B and Thomas Laughlin until the pending district court litigation against them is resolved, at which point the protective order will be lifted and the documents indicated for release on Exhibit A may be released.

The tort claimants may release the deposition transcripts and exhibits listed above, subject to the redactions I have indicated. Release of the transcript of Thomas Laughlin's deposition shall be stayed until the pending district court litigation against him is resolved.

I will lift the seal on Docket #4765 and 4766, subject to the redactions discussed above.

My order lifting the protective order, lifting the seal on the filed documents, and allowing the release of the deposition transcripts and exhibits shall be stayed 30 days from the date of entry of the order in this matter, to allow the parties time to file any notice of appeal and to seek a stay of document release pending appeal.

Counsel for the tort claimants should submit the order.

### ###

---

[16]   As I explained above, Exhibit A will be filed under seal for at least 30 days to allow an appeal and any motion for stay pending appeal to be filed and resolved.